# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC.,<br><br>Defendants. | Civil Action No. 11-736 (FSH) (PS)<br><br><br><br><br><br><br><br>**Motion Returnable:  June 20, 2011**<br>**Oral Argument Requested** |

---

## MEMORANDUM IN SUPPORT OF DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

---

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Robert N. Eccles (*pro hac vice* pending)
Gary S. Tell (*pro hac vice* pending)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
(202) 383-5300

*Attorneys for Defendants*
*Transamerica Life Insurance Company,*
*Transamerica Investment Management, LLC,*
*and Transamerica Asset Management, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND .................................................................................3

ARGUMENT......................................................................................12

I.      STANDARD OF REVIEW ......................................................12

II.     PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED...................13

      A.      Counts I and II Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation..........................18

      B.      Count III Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Receipt of Revenue Sharing Payments ........................................................................22

      C.      Counts IV and VII Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To The Selection of Affiliates Who Advise Its Separate Account Products...............................................23

      D.      Count V Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Select The Cheapest Share Class Available In The Mutual Funds In The Separate Account Investment Options .........................................................................26

      E.      Count VI Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Negotiate Lower Sub-Advisory Fees For The Plan Investments In Collective Trusts And Separate Accounts ........................................................................27

III.    COUNTS VIII AND IX SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE VALID CLAIMS UNDER THE INVESTMENT ADVISERS ACT ..........................................................27

      A.      TLIC Has Not Provided Investment Advice to "Others" Within the Meaning of the IAA ...................................................29

      B.      Count IX Fails For The Additional Reason That Plaintiffs Do Not State a Proper Derivative Claim ...............................................31

CONCLUSION ..................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................................................13

*Baraka v. McGreevey,*
    481 F.3d 187 (3d Cir. 2007) ...........................................................................12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................12, 21

*Campo v. Oxford Health Plans, Inc.,*
    No. 06-4332, 2007 U.S. Dist. LEXIS 45804 (D.N.J. June 26, 2007) ...............13

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.,*
    No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) .................20

*Ellis v. Rycenga Homes, Inc.,*
    484 F. Supp. 2d 694 (W.D. Mich. 2007).........................................................24

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009) ...........................................................................21

*Gelman v. State Farm Mut. Auto. Ins. Co.,*
    583 F.3d 187 (3d Cir. 2009) ...........................................................................12

*Goldstein v. SEC,*
    451 F.3d 873 (D.C. Cir. 2006)........................................................................30

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009) ...................................................................*passim*

*Hozier v. Midwest Fasteners, Inc.,*
    908 F.2d 1155 (3d Cir. 1990) .........................................................................14

*Lum v. Bank of Am.,*
    361 F.3d 217 n.3 (3d Cir. 2004) .....................................................................13

*Mack Boring and Parts v. Meeker,*
    930 F.2d 267 (3rd Cir. 1991)..........................................................................32

*Marks v. Independence Blue Cross,*
    71 F. Supp. 2d 432 (E.D. Pa. 1999) .................................................15, 17, 19, 22

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010) ...............................................................12

*Miller v. Fortis Benefits Ins. Co.*,
    363 F. Supp. 2d 700 (D.N.J. 2005) ....................................................13

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ...................................................................14, 15

*Renfro v. Unisys Corp.*,
    No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010), *appeal docketed*, No.
    10-2447 (3d Cir. May 27, 2010) ........................................................20

*Schulist v. Blue Cross of Iowa*,
    717 F.2d 1127 (7th Cir. 1983) ..............................................17, 19, 23

*SEC v. Northshore Asset Mgmt.*,
    No. 05-2192, 2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008)................30

*Tibble v. Edison Int'l*,
    639 F. Supp. 2d 1122 (C.D. Cal. 2009) ...............................................24

*Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*,
    783 F. Supp. 899 (D.N.J. 1992) ........................................................32

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ..........................................................24

*Zang v. Paychex Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) ...............................................25

**Statutes**

15 U.S.C. § 80b, *et seq.*..................................................................... 1

15 U.S.C. § 80b-2(11).................................................................28, 29

15 U.S.C. § 80b-3(b)(2) .....................................................................30

ERISA § 3(17), 29 U.S.C. § 1002(17)......................................5, 29, 31

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(a)...........................14, 21, 25

ERISA § 3(34), 29 U.S.C. § 1002(34)...................................................... 6

ERISA § 406, 29 U.S.C. § 1106................................................10, 23

## TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .........................................................10

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .........................................................14

ERISA § 502(d), 29 U.S.C. § 1132(d)....................................................................32

Iowa Code § 508A.1(5)..........................................................................................32

**Regulations**

29 C.F.R. § 2509.96-1(d)(3).....................................................................................16

29 C.F.R. § 2550.408b-2(c)(2) ................................................................................25

**Other Authorities**

75 Fed. Reg. 65263, 65277 .....................................................................................17

DOL Advisory Op. 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997)...................20

DOL Advisory Op. 97-15A, 1997 ERISA LEXIS 18 (May 22, 1997)...................23

# INTRODUCTION

Plaintiffs' employers purchased a package of retirement plan services from Transamerica Life Insurance Company ("TLIC").  The Complaint challenges those decisions, alleging the fees charged in connection with Plaintiffs' plans are "excessive."  But rather than seeking to hold their employers accountable for their decisions, Plaintiffs instead level a 111-page, multi-count class action complaint against TLIC.[1]  If Plaintiffs, as beneficiaries of those plan services, wish to second guess the merits of the vendor selection choices, they should take up those disputes with their employers, not with TLIC. In any event, the allegations in the Complaint fail to state a claim under ERISA[2] or the Investment Advisers Act ("IAA").[3]

The Complaint alleges that TLIC breached fiduciary duties under ERISA by charging "excessive" fees on the separate account investment products in Plaintiffs' plans.  The Complaint further alleges that TLIC's retirement plan product runs afoul of the Investment Advisers Act because TLIC acts as an unregistered investment advisor.  At core, these claims challenge TLIC's ability to design and offer a

---

[1]    The Complaint also names Transamerica Asset Management, Inc. ("TAM") and Transamerica Investment Management, LLC ("TIM") as defendants with respect to Counts IV and VII.  TAM and TIM have filed a separate motion to dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6).

[2]    Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

[3]    15  U.S.C. § 80b, *et seq.*

bundled retirement benefits product in the marketplace for a fee.  As developed below, none of those claims has merit.

As a threshold matter, the allegations fail to establish that TLIC had relevant ERISA fiduciary status with respect to the conduct alleged.  The gravamen of Plaintiffs' ERISA attack is that the group annuity contract through which TLIC offers plan sponsors a menu of investment options generates excessive fees regardless of the actual investment options selected by plan sponsors or participants.  That theory is fatally deficient because it is the plan sponsor, who selects the plan structure and therefore the plan's fees.  TLIC fully discloses the total expense ratio of the separate account investment options to plan sponsors at the time of contracting, and it is well-settled that plan service providers are not fiduciaries for purposes of negotiating the terms of their own retention.  Plaintiffs' remaining theories of fiduciary status are similarly flawed.

Moreover, although Plaintiffs contend that TLIC had fiduciary authority to control its own compensation through unilateral modifications to the group annuity contract or the revenue sharing rates associated with the underlying investments in TLIC separate account products, the Complaint does not allege that TLIC actually exercised such authority.  There are likewise no allegations that TLIC caused the plans to engage in any particular "transactions" in violation of ERISA's "prohibited transaction" provision § 406(b)(3).  Here again, the lack of any

-2-

allegations identifying conduct by TLIC with respect to the specific retirement plans at issue in this case only underscores that Plaintiffs' attack is targeted at TLIC's retirement product as a whole, rather than the prudence of any particular investment option offered to the plans.

Plaintiffs' claims under the IAA are similarly defective.  Plaintiffs allege that TLIC violated the IAA by providing investment "advice" to certain of the investment vehicles available in the retirement plans, without having registered as an investment adviser with the Securities and Exchange Commission.  But TLIC's management of its own investment product options is not advice *to others*, as required for coverage under the IAA.  Nor would Plaintiffs have an IAA claim even if TLIC were "advising" the investment vehicles.  The Plaintiffs themselves are not the direct beneficiaries of the advice.  And they cannot bring a derivative claim on behalf of the insurance accounts at issue, because those accounts are neither corporations nor associations under Federal Rule 23.1, which governs derivative suits.

Therefore, under Fed. R. Civ. P. 12(b)(6), the Court should grant TLIC's motion to dismiss.

## BACKGROUND

TLIC sells a retirement plan product consisting of a bundle of administrative services and investment options.  The product is sold by TLIC through a network

of independent financial advisors to small and medium sized employers who wish to offer retirement plan benefits to their employees.  (Compl. ¶ 62.) [4]  TLIC's 401(k) plan product enables participants to select from a menu of investment options, transfer amounts in their plan accounts between investment options, and receive periodic reporting on their investments

Because the product is offered by an insurance company, the contractual relationship between TLC, the plan sponsor and the plan are governed by a group annuity contract and services agreement administrative arrangements through which plan services are delivered are somewhat different from other types of 401(k) plans.  TLIC provides plan administrative services pursuant to the terms of an initial application and agreement with the plan sponsor.[5]  TLIC also makes available a range of investment options from which plan sponsors can select the investment lineup to be offered to participants in their particular plan through a

_____

[4]     *See also* QualCare Plan Commission Disclosure (attached at Declaration of Darcy Hatton ("Hatton Decl.") Ex. F); Gain Plan Commission Disclosures (attached at Hatton Decl. Ex. G).

[5]     *See, e.g.*, Application and Agreement for Services between TLIC and Gain Capital Group, LLC (dated April 14, 2009) ("Gain Plan 2009 Services Agreement") at § 1.1 (Description of Services) (attached at Hatton Decl. Ex. A); Application and Agreement for Services between TLIC and Gain Capital Group, LLC (dated Dec. 24, 2007) ("Gain Plan 2007 Services Agreement") (attached at Hatton Decl. Ex. B) at §§ 1.1 (Description of Services), 1.7 (Optional Services); (collectively, the "Gain Plan Services Agreements"); Application and Agreement for Services between TLIC and QualCare Alliance Networks, Inc. (dated Dec. 6, 2004) ("QualCare Plan Services Agreement") (attached at Hatton Decl. Ex. C) (collectively, the "Services Agreements") at § 1.1 (Description of Services).

-4-

group annuity contract between TLIC and the plan.  (Compl. ¶¶ 12-13.)[6]  Under the

terms of the group annuity contract, each investment option selected by the plan

sponsor is structured as a "separate account."[7]  (Compl. ¶¶ 19-20.)  The separate

accounts contain different types of underlying investments, including mutual

funds, collective trusts and directly-advised accounts. (*Id.* ¶¶  214-217.)

    ***Plaintiffs and the Plaintiff Plans***.  Plaintiffs Jaclyn Santomenno, Karen

Poley and Barbara Poley (collectively, the "Plaintiff Participants") are participants

in retirement plans to which TLIC provided administrative services and investment

options through an administrative services agreement and group annuity contract.

(Compl. ¶¶ 54-57.)  Until December 2010, Santomenno was a participant in the

Gain Capital Group, LLC 401(k) Plan (the "Gain Plan," a "Plaintiff Plan").  (*Id.* ¶

5.)  Karen Poley and Barbara Poley are participants in the QualCare Alliance

Networks, Inc. Retirement Plan, formerly known as the Scibal Associates, Inc.

401(k) Plan (the "QualCare Plan," a "Plaintiff Plan").  (*Id.* ¶ 4.)  The Plaintiff Plans

---

[6]    *See* Application and Group Annuity Contract (dated Dec. 24, 2007)
(attached at Hatton Decl. Ex. D.1); Application and Group Annuity Contract (dated
Feb. 7, 2008) (attached at Hatton Decl. Ex. D.2); Application and Group Annuity
Contract (dated Jan. 1, 2005) ("QualCare Plan Contract") (collectively, the "Group
Annuity Contracts") (attached at Hatton Decl. Ex. E).

[7]    A "separate account" is defined under ERISA § 3(17), 29 U.S.C. § 1002(17)
as "an account established or maintained by an insurance company under which
income, gains, and losses, whether or not realized, from assets allocated to such
account, are, in accordance with the applicable contract, credited to or charged
against such account without regard to other income, gains, or losses of the
insurance company."

-5-

are "defined contribution" plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (*Id.* ¶¶ 2, 70.) Gain Capital Group, LLC, a foreign exchange and asset management company, is the plan sponsor and plan administrator of the Gain Plan.[8] QualCare Alliance Networks, Inc., New Jersey's largest provider-sponsored, managed care company, is the plan sponsor and plan administrator of the QualCare Plan.[9]

Under the terms of the Services Agreements, TLIC agreed to provide certain services to the Plaintiff Plans, including recordkeeping and administrative services.[10] In addition to the core services, the Gain Plan Agreement lists a number of optional services available to a plan and plan sponsor including, *inter alia*, the offering of AdviceSolutions, "an interactive online retirement and investment planning tool provided by an outside vendor."[11] The stated fees are guaranteed for one year from the effective date of the Services Agreements, after which time TLIC reserved the right to change fees upon 30 days' written notice to the plan

---

[8]    *See* Gain Plan Services Agreements at 1; *see also* https://www.gaincapital.com (last visited May 10, 2011).

[9]    *See* QualCare Plan Services Agreement at 1; *see also* https://www.qualcareinc.com (last visited May 10, 2011).

[10]    *See* Gain Plan 2007 Services Agreement; Gain Plan 2009 Services Agreement; QualCare Plan Services Agreement.

[11]    *See* Gain Plan 2009 Services Agreement at § 1.7.F.

-6-

administrator.[12]  The Services Agreements terminate upon termination of the

Group Annuity Contracts or upon 30-days written notice by either party.[13]

Under the terms of the Group Annuity Contracts, the Plan sponsors selected

the investments to offer Plan participants from a menu of investment options

provided by TLIC.  (Compl. ¶¶ 12-13.)  The Group Annuity Contracts were sold to

the Gain Capital and QualCare Plans through financial advisors who were paid a

commission in connection with the sale, following disclosure to and acceptance by

the plan sponsors.[14]  Approximately 170 investment options were made available

by TLIC for Plaintiffs' plan sponsors which, as noted above, are an asset

management firm and a large managed healthcare company.  (*Id.* ¶ 241.)  The Gain

Plan selected 46 investment options.  (*Id.* ¶¶ 17, 206, 208.)  The QualCare Plan

selected 36 investment options.  (*Id.* ¶¶ 16, 206-207.)

The total fees charged in connection with the separate account investment

options offered to plan sponsors vary depending on the nature of the underlying

investment option.  As the Complaint alleges, for separate account investment

options invested in mutual funds, the Administrative and Investment Management

---

[12]    *See* Gain Plan 2009 Services Agreement at 1; QualCare Plan Services
Agreement at 1.

[13]    *See* Gain Plan Services Agreements at § 1.5; QualCare Plan Services
Agreement at §1.5.

[14]    *See* Gain Plan Commission Disclosures (attached at Hatton Decl. Ex. G);
QualCare Plan Commission Disclosure (attached at Hatton Decl. Ex. F).

-7-

fees total approximately 75 basis points, or 0.75% of Plan assets invested in those options.  (*Id.* ¶ 271.)  These fees, along with the expense ratio on the underlying mutual fund, comprise the maximum fees charged in connection with separate account investment options invested in mutual funds.  (*Id.* ¶¶ 275-76.)  However, for certain separate account investment options, TLIC receives fee reimbursements or revenue sharing from the underlying mutual fund.  (*Id.* ¶¶ 281-284.)  The Complaint alleges that these revenue sharing payments were used to reduce the total fees under the Group Annuity Contracts, including Administrative and Investment Management fees.[15]  (*Id.* ¶ 288.)  For each separate account investment option invested in collective trusts or "traditional" separate accounts, TLIC charges a comprehensive fee ranging from 79 basis points to 150 basis points.  (*Id.* ¶¶ 331, 333-334.)  TLIC reserved the right to change the Administrative or Investment Management fees upon 30 days' advance written notice to the Plan sponsor.[16]

---

[15]     *See* Gain Plan Contract, Schedule of Separate Accounts, Investment Management Charges and Administrative Charges ("For some Separate Accounts, we receive fee reimbursements from the underlying investment.  The fees reimbursed to us are applied to adjust the Contract Asset Charges, and/or the Investment Management Charge and/or the Administrative Charge."); QualCare Plan Contract (same).

[16]     *See, e.g.,* Gain Plan Contract ¶ B.08 ("We reserve the right to change the Investment Management Charge or the Administrative Charge upon advance written notice to the Contractholder of at least 30 days."); QualCare Plan Contract ¶ B.08 (same).

In addition to the fees disclosed in the Services Agreements and Group Annuity Contracts, TLIC provides plan sponsors with Investment Fact Sheets which include information regarding the investment strategy, expense ratios, share class, and performance (including performance against benchmarks) of the investments held in the approximately 170 separate account investment options offered to plan sponsors.  (Compl. ¶¶ 227-244.)[17]  Where applicable, the Investment Fact Sheets also disclose that revenue sharing payments made by the underlying fund company will be used to reduce the Investment and Administrative Charges under the Group Annuity Contract.[18]

*Plaintiffs' Complaint*.  In their Complaint, purportedly brought on behalf of all defined contribution plans to which TLIC provided investment options through one of its group annuity contracts (Compl. ¶ 54), Plaintiffs allege that TLIC breached its fiduciary duties under ERISA because the Group Annuity Contracts sold to the Plaintiffs' employers resulted in "unreasonable and excessive" fees being charged to plaintiffs and plaintiff plans.  (*Id*. ¶ 139.)  Plaintiffs, on

---

[17]     *See* Investment Fact Sheets (attached at Hatton Decl. Ex. H)

[18]     *See*, *e.g.*, Investment Fact Sheet, First American Mid Cap Growth Opportunities Ret Opt. ("The Investment Management and Administrative Charges (IM and Admin Charges) are 0.75%, reduced by the 0.25% fee income received from the underlying mutual fund company."); Investment Fact Sheet, Loomis Sayles Investment Grade Bond Ret Opt ("The IM and Admin Charges are 0.75%, reduced by the 0.15% net income received from the underlying fund company.").

-9-

information and belief, contend that the alleged impermissible fee practices "apply to all, or most" of the investment options TLIC offers to plan sponsors. (*Id*. ¶ 18.)

Plaintiffs bring seven claims under ERISA and two claims under the IAA. Counts I-III are asserted under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and allege that TLIC engaged in prohibited transactions or otherwise breached fiduciary duties by charging Administrative and Investment Management fees in connection with TLIC separate accounts containing underlying mutual fund investments and by receiving revenue sharing payments from these mutual funds. Counts IV and VII allege that, by allowing the Plans to choose to invest in, and pay set investment management, investment advisory or other fees to, TLIC-affiliated funds, TLIC "caused" the Plans to engage in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106. Counts V and VI are asserted under ERISA § 502(a)(2). 29 U.S.C. § 1132(a)(2) and allege, respectively, that TLIC breached fiduciary duties by not selecting the cheapest share class available for the mutual funds included in its separate account investment options and by failing to use its size to negotiate lower expenses for collective trusts and traditional separate accounts.

Counts VIII and IX assert essentially identical claims under Section 215(b) of the Investment Advisers Act. Count VIII alleges that TLIC violated the IAA by providing investment advice, without having registered as an investment adviser,

-10-

to the separate account products to which Plaintiffs allocated their accounts through the plans' purchase of variable annuities from TLIC.  (*See, e.g.,* Compl. ¶¶ 13, 349-52.)  Count IX recasts Count VIII as a derivative claim on behalf of the various separate accounts, of which Plaintiffs claim to be "security holders."

# **ARGUMENT**

## I.    STANDARD OF REVIEW

Dismissal is proper under Rule 12(b)(6) if plaintiffs cannot prove a set of facts that would entitle them to their requested relief.  *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).  While the Court must accept plaintiffs' well-pleaded facts as true, the Court is not compelled to accept "unsupported conclusions and unwarranted inferences" or "legal conclusions couched as factual allegations."  *Id*. Further, a motion to dismiss should be granted if the facts set forth in the complaint undermine plaintiffs' own claims.  *Id*.  As the Supreme Court held, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  In order to withstand a motion to dismiss after *Twombly*, "a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).  The pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief.  *See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

-12-

misconduct alleged.'"  *Id.* at 190 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider the allegations in the complaint and documents that form the basis of the claims.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *Miller v. Fortis Benefits Ins. Co.*, 363 F. Supp. 2d 700, 704-05 & n.4 (D.N.J. 2005) (dismissing claims based on plain meaning of plan terms, where plan document was attached to the motion to dismiss).  A document forms "the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'"  *See Lum*, 361 F.3d at 222 n. 3; *see also Campo v. Oxford Health Plans, Inc.*, No. 06-4332, 2007 U.S. Dist. LEXIS 45804, at *10-13 (D.N.J. June 26, 2007) (holding that governing plan document was "integral" to claims where the Court needed it to determine "who among the parties is responsible for which portions of the plan").  Without such a rule, plaintiffs with legally insufficient claims could escape dismissal by failing to attach key documents to their pleadings.  *Lum,* 361 F.3d at 222 n.3.

## II.    PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED.

Counts I-VII assert that TLIC breached fiduciary duties under ERISA §§ 404(a) and 406(b) by causing the Plaintiffs and Plaintiff Plans to incur excessive

-13-

costs for administrative services and investment options.[19]  These counts lack merit

because, although TLIC has certain fiduciary responsibilities with respect to the

Plans, it does not act as a fiduciary with respect to the conduct alleged—it is the

plan sponsors, not TLIC, who caused the Plans to purchase TLIC's services.

> ERISA provides that a person is a plan fiduciary:
>
> *to the extent* (i) he exercises any discretionary authority or
> discretionary control respecting management of such plan or exercises
> any authority or control respecting management . . .  or disposition of
> its assets, (ii) he renders investment advice for a fee or other
> compensation, direct or indirect, with respect to any moneys or
> property of such plan, or has any authority or responsibility to do so,
> or (iii) he has any discretionary authority or discretionary
> responsibility in the administration of such plan.

ERISA § 3(21)(A) (emphasis added); 29 U.S.C. § 1002(21)(a).

Because ERISA makes a person a fiduciary only "to the extent" that the

person performs fiduciary functions, *see Pegram v. Herdrich*, 530 U.S. 211, 225-

26 (2000), a plan fiduciary as to one function is not necessarily a fiduciary with

respect to other plan functions.  *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155,

1158 (3d Cir. 1990) ("Fiduciary duties under ERISA attach not just to particular

persons, but to particular persons performing particular functions.").  Accordingly,

---

[19]    All of Plaintiffs' claims against TLIC are based on TLIC's alleged fiduciary
status.  To the extent Plaintiffs purport to assert claims against TLIC as a non-
fiduciary under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(2), those claims fail for
the same reasons as they fail against non-fiduciary co-defendants TIM and TAM as
addressed in a separate motion to dismiss pursuant filed by those defendants.

-14-

"[i]n every case charging breach of ERISA fiduciary duty . . . the threshold

question is … whether [the defendant] was acting as a fiduciary (that is, was

performing a fiduciary function) when taking the action subject to complaint."

*Pegram*, 530 U.S. at 226.  Thus, to hold TLIC liable as a fiduciary, the Court

would have to conclude—which it cannot—that TLIC was acting as a fiduciary to

the plan in undertaking the conduct at issue in the Complaint.[20]

Although Plaintiffs seek to establish TLIC's fiduciary status for purposes of

this action under several different theories (*see* Compl. V.A.-J. ¶¶ 148-205), those

arguments are either facially erroneous or have nothing to do with any of

Plaintiffs' actual theories of liability.  For example, a number of Plaintiffs'

fiduciary status arguments attempt to establish that TLIC controlled or influenced

(1) how plan sponsors selected a plan's investment options from among the range

of TLIC separate accounts; or (2) how participants invested their accounts among

the TLIC separate accounts offered through their respective plans.[21]  (*See* Compl. §

---

[20]     *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA
fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting
as a fiduciary (that is, was performing a fiduciary function) when taking the action
subject to complaint."); *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432,
436 (E.D. Pa. 1999) ("Even assuming that IBC exercised discretion over certain of
the plan's administrative functions, it does not become liable as an ERISA
fiduciary unless there is a nexus between the alleged breach and the discretionary
authority exercised.").

[21]     Although not relevant to any specific claim, Plaintiffs allege that TLIC is a
fiduciary because it rendered investment advice through "AdviceSolutions."

-15-

V.C, H, I, ¶¶ 155-163, 180-184, 185-202 .)  Such fiduciary status theories have no

relevance where, as here, Plaintiffs not only assert that the entire range of

investment options on TLIC's platform is imprudent but also seek to certify a

multiple-plan class on that basis.  (*See, e.g.,* Compl. ¶¶ 8, 10, 23, 142, 374.)

Under this broad-based attack, Plaintiffs do not assert that they were harmed

through the selection of any particular investment option over another for inclusion

in their Plan investment lineup.  Rather, Plaintiffs' core contention is that it was

improper for the Plans to use the TLIC platform ***at all***.  But the threshold decision

to select TLIC to provide administrative services and investment options to the

Plaintiff Plans was squarely and solely in the hands of the relevant plan sponsors,

and not within the scope of TLIC's fiduciary obligations.  It is well-settled that a

party does not act as an ERISA fiduciary in setting the terms of its own retention,

even if it is being retained to serve in a fiduciary capacity.  *See Hecker v. Deere &*

*Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (party "does not act as a fiduciary with

respect to the terms in the service agreement if it does not control the named

---

(Compl. ¶¶ 185-202.)  Plaintiffs are wrong.  As an initial matter, the Complaint
does not identify any actual investment advice that TLIC provided to the Plaintiffs.
Moreover, the alleged functionality of "AdviceSolutions" (*id*. ¶¶ 195-197)
comports with the Department of Labor's 1996 Interpretive Bulletin Pertaining to
Participant Investment Education.  *See* 29 C.F.R. § 2509.96-1(d)(3) (explaining
that certain investment-related information and materials provided to plan
participants including, *inter alia*, asset allocation models, do not constitute
"investment advice" under ERISA § 3(21)(A)(ii).

-16-

fiduciary's negotiation and approval of those terms"); *Marks*, 71 F. Supp. 2d 436 (agreeing with other circuits that "a person negotiating a contract with a . . . plan . . . is not an ERISA fiduciary with respect to the terms of the agreement for his compensation."); *accord Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983).[22]

To be clear, TLIC does have limited fiduciary responsibilities for monitoring the investment performance within its separate account investment products.[23]  But for the reasons stated above, Plaintiffs' broad scale attack on TLIC's retirement service product does not target those responsibilities.  The flaws in Plaintiffs' remaining fiduciary status arguments become evident in reviewing their individual claims, as described below.

---

[22]    *See also* Definition of the Term "Fiduciary," 75 Fed. Reg. 65263, 65277 (proposed Oct. 22, 2010) (the Department of Labor proposing to exempt from definition of "fiduciary" under 29 C.F.R. 2510.3-21 vendors who merely offer a platform from which plan fiduciaries may offer investment options to plan participants).

[23]    Plaintiffs allege that TLIC is a fiduciary by virtue of the "Fiduciary Warranty" it offers to plan sponsors.  (*See* Compl. § V.C ¶¶ 155-163.)  This "warranty" is not an admission of fiduciary status but merely represents an indemnification of the plan sponsor fiduciaries by TLIC in the event that claims are asserted against the fiduciaries in connection with certain aspects of the selection or performance of plan investment options.  (*See* Hatton Decl. Ex. I.)  Moreover, consistent with TLIC's narrow fiduciary responsibilities, the "warranty" pertains only to investment performance; it expressly excludes claims, such as those asserted here, challenging whether the "fees paid directly or indirectly by the plan are reasonable."  (*Id.*)

-17-

**A.    Counts I and II Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation.**

Plaintiffs allege in Counts I and II that TLIC engaged in prohibited transactions or otherwise breached fiduciary duties by charging Administrative and Investment Management fees in connection with Transamerica separate accounts containing underlying mutual fund investments.  Consistent with the central premise of the Complaint that the plans paid too much for the product provided by TLIC, Plaintiffs contend that *any* fee charged by TLIC in addition to the expense ratios of the underlying investments in the separate accounts is inherently excessive.  (*See, e.g.*, Compl. ¶¶ 140-141, 147, 257, 260.)  Counts I and II must be dismissed for the straightforward reason that TLIC was not a fiduciary with respect to the Administrative and Investment Management fees it set when offering the separate account investment options to Plan sponsors.

As a threshold matter, Plaintiffs' argument entirely ignores the myriad services that TLIC provides to the Plans, including recordkeeping and administrative services.[24]  In its contracts with the sponsors of the Plaintiff Plans, TLIC disclosed that the revenues received from the investment options (including Administrative and Investment Management Fees) would effectively defray TLIC's costs of providing those services to the Plans, and that the services contract

---

[24]    *See* Gain Plan Services Agreements at § 1.1; QualCare Plan Services Agreement at § 1.1.

-18-

would terminate with the termination or discontinuance of the Group Annuity

Contracts.[25]  Even if TLIC's Administrative and Investment Management fees

could be deemed "excessive," TLIC was not the fiduciary responsible for the

Plans' decision to pay those fees.  Those fees were fully disclosed to Plan

sponsors,[26] and the Plan sponsors thus made the fiduciary decision to cause their

Plans to incur such fees when they selected the investment options to be included

in their Plan investment lineups.  *See Hecker*, 556 F.3d at 583; *Marks*, 71 F. Supp.

2d at 436; *Schulist*, 717 F.2d at 1132.

Plaintiffs nonetheless attempt to establish that TLIC has relevant fiduciary

status by alleging that TLIC has the ability to "unilaterally" remove investment

options from the range of options available to the plans and to alter its fees.

(Compl. §§ V.B, E ¶¶ 152-154, 169-170.)  This is a red herring.  The contract

documents provide that TLIC may make such changes upon six-months advance

notice to the plan sponsor.[27]  If the plan sponsor refuses to consent to such changes,

---

[25]    *See* Gain Plan 2009 Services Agreement at § 1.5; QualCare Plan Services
Agreement at § 1.5.

[26]    *See* Gain Plan Contract, Schedule of Separate Accounts, Investment
Management Charges and Administrative Charges; QualCare Plan Contract
(same).

[27]    *See, e.g.,* Gain Plan Contract ¶ 2.02 ("We may establish new Contract
Account(s) from time to time, which may be added to this Contract at the election
of the Contractholder.  With at least a 6-month notification period, we reserve the
right to delete any Contract Account maintained under this Contract."); QualCare
Plan Contract ¶ 2.02 (same).

the plan sponsor remains free to terminate its relationship with TLIC and place the plan's assets with a different service provider.  Thus, the Plans each had a meaningful opportunity to avoid any announced change in the investment menu by terminating TLIC's appointment.[28] Accordingly, as in *Hecker*, the plan sponsor, not TLIC, had "final authority" over any changes to the plans' investment lineup. *Hecker*, 556 F.3d at 584; *see* DOL Advisory Op. 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997);[29] *Renfro v. Unisys Corp.*, No. 07-2098, 2010 WL 1688540, at *4-*5 (E.D. Pa. Apr. 26, 2010), *appeal docketed*, No. 10-2447 (3d Cir. May 27, 2010) (granting service provider's motion to dismiss ERISA claims alleging excessive administrative and investment management fees on grounds that defendants lacked discretionary control over funds offered in the plan and thus were not fiduciaries as a matter of law); *Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, No. 07-11344-GAO, 2008 WL 4457861, at *2-5 (D. Mass. Sept. 30, 2008) (granting motion to dismiss in favor of service provider to ERISA plan where employer/plan sponsor claimed that provider breached fiduciary duty and committed prohibited

---

[28]    *See, e.g.,* Gain Plan Contract ¶ 8.04 ("By giving us written notice, the Contractholder may affect either a total discontinuance or a partial discontinuance of the Contract."); QualCare Plan Contract ¶ 8.04 (same).

[29]    In the scenario addressed by the Department of Labor's opinion, the recordkeeper (a unit of Aetna) identified the funds eligible to be included in a plan lineup, giving the sponsor notice and time to terminate Aetna as recordkeeper if the sponsor objected to the new lineup.  The Department of Labor advised that Aetna was not a fiduciary, because the sponsor itself had the final say over its plan's investment options, through its power to terminate Aetna.

-20-

transactions by receiving revenue sharing payments from affiliate's mutual funds offered as investment options in plan). TLIC therefore was not a fiduciary with respect to the selection of investment options.

Finally, Plaintiffs' assertions that TLIC is a fiduciary for purposes of managing the underlying investments in the separate accounts (Compl. §§ V.A, D, F, J ¶¶ ) are immaterial to these counts, as Plaintiffs do not, and cannot, allege that TLIC controlled the rates of its Administrative and Investment Management fees through the manner in which it managed the underlying investments.[30] Stated differently, the Complaint alleges that the Administrative and Investment Management fees are set by contract, and there is no allegation that these fees are

---

[30]   Plaintiffs also allege that TLIC has relevant fiduciary status because it can unilaterally change the share class of the mutual fund investments held in the separate accounts. (Compl. ¶¶ 152-154; 169-170.) But here too, the ability to change the share class on investments held by the separate accounts is irrelevant to TLIC's ability to set or collect its own fees from the plans, which were fully disclosed to and agreed up by the relevant plan sponsors. (*See* Section I. A, *supra*.) Moreover, there are no allegations that TLIC ever *exercised* its authority to unilaterally change its fees, or alter the investment options in the Plans. ERISA § 3(21)(A); 29 U.S.C. § 1002(21)(A). There are likewise no allegations that TLIC exercised any authority to unilaterally change share classes of the underlying mutual funds. In short, the Complaint is devoid of any specific allegations that would permit the Court to draw a plausible inference that TLIC unilaterally altered the investment lineup or its underlying fees. *Twombly*, 550 U.S. at 555; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.") (citation omitted).

-21-

determined by TLIC's selection of a particular mutual fund within a particular

separate account.  (*Id*. ¶ 275.)

**B.    Count III Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Receipt of Revenue Sharing Payments.**

In Count III, plaintiffs allege that TLIC committed prohibited transactions and

otherwise breached fiduciary duties by receiving revenue sharing payments from

mutual funds contained in the plan's separate account investment options.  (Compl.

§ V.G, ¶¶ 178-179.)  Yet Plaintiffs do not dispute that any revenue sharing payments

TLIC receives are applied to reduce the amounts of TLIC's Administrative and

Investment Management charges.[31]  (Compl. ¶¶ 288, 295.)  Rather, Plaintiffs

contend that the reduction of those charges benefitted TLIC, and not the plans,

because the charges themselves were illegitimate.  (Count III, ¶¶ 3-4.)

That logic merely renders Count III a crude recasting of Plaintiffs' first two

counts, which attack the Administrative and Investment Management charges as

excessive.  The decision to commit the Plaintiff Plans to TLIC's Investment

---

[31]    *See* Gain Plan Contract, Schedule of Separate Accounts, Investment Management Charges and Administrative Charges at 4 ("For some Separate Accounts, we receive fee reimbursements from the underlying investment.  The fees reimbursed to us are applied to adjust the Contract Asset Charges, and/or the Investment Management Charge and/or the Administrative Charge."); QualCare Plan Contract (same); *see also* Investment Fact Sheets at First American Mid Cap Growth Opportunities Ret Opt. and Loomis Sayles Investment Grade Bond Ret Opt.

-22-

Management and Administrative charges was the result of the fiduciary decisions of the Plan sponsors. *See Hecker*, 556 F.3d at 583; *Marks*, 71 F. Supp. 2d at 436; *Schulist*, 717 F.2d at 1132. As the Complaint alleges, once those sponsors made their decisions, TLIC's use of revenue sharing payments to offset the Investment Management and Administrative charges. (Compl. ¶ 288.) Those payments redounded to the benefit of the Plans, and did not increase TLIC's own compensation. *Cf.* DOL Advisory Op. 97-15A, 1997 ERISA LEXIS 18, (May 22, 1997) (concluding that a trustee's receipt of fees from one or more mutual funds in connection with an ERISA plan's investment in such funds did not violate ERISA Section 406(b)(3) where the funds were used to reduce the plan's obligation to the trustee).

**C.   Counts IV and VII Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To The Selection of Affiliates Who Advise Its Separate Account Products.**

Counts IV and VII allege that, by allowing the Plans to invest in, and pay investment management, investment advisory or other fees to, TLIC-affiliated funds, TLIC "caused" the Plans to engage in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106. Those claims fail for two independent reasons. As a threshold matter, any prohibited transaction claim against TLIC must fail because the Complaint does not identify any specific "transaction" that would trigger liability under ERISA § 406. Courts routinely have dismissed prohibited

transaction claims where, as here, the complaint fails to identify any specific "transaction" by the alleged fiduciary for its own account and involving plan assets. *See, e.g., Wright v. Or. Metallurgical Corp*., 360 F.3d 1090, 1101 (9th Cir. 2004) (affirming dismissal of prohibited transactions claim where the plaintiffs failed to identify any "transaction" within § 1106); *see also Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. 2009) (dismissing prohibited transaction claims where plaintiff failed to allege any conduct by the defendants "dealing with" plan assets for defendant's own interest).

Indeed, the only "transaction" involving Plan assets identified in the Complaint is the selection of the original Plan investment lineup.  (Compl. ¶¶ 12-13.)  But TLIC played no fiduciary role in the selection of the investment lineup and therefore cannot be said to have "caused" the selection of particular Plan investments that may have resulted in the payment of fees to TLIC affiliates.  (*See* Section I.A., *supra*.)  Although TLIC offered separate accounts containing TAM and TIM-advised funds or trusts, it was the employer/plan sponsors – not TLIC – who chose to include those options in their respective plans.  To accept Plaintiffs' theory, then, the Court would have to hold that TLIC "caused" the Plans to engage in transactions even though it played no role in allocating the Plans' assets to TLIC-affiliated funds.  This interpretation of ERISA § 406 cannot be squared with judicial authorities or Department of Labor regulations.  *See, e.g., Ellis v. Rycenga*

-24-

*Homes, Inc.*, 484 F. Supp. 2d 694, 711-12 (W.D. Mich. 2007) (holding that defendant could not be liable under ERISA § 406(a) because defendant did not actively participate in challenged transactions but merely failed to prevent them); 29 C.F.R. § 2550.408b-2(c)(2) ("A fiduciary does not engage in an act described in section 406(b)(1) of the Act if the fiduciary does not use any of the authority, control or responsibility which makes such person a fiduciary to cause a plan to pay additional fees for a service furnished by such fiduciary . . . .").

Moreover, there are no allegations that TLIC ever exercised discretion to change the underlying investments in the separate accounts from non-affiliated to affiliated funds.  Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), an entity is a fiduciary if it *exercises* "discretionary authority or discretionary control respecting *management of such plan or ... disposition of its assets*," *id.* § 1002(21)(A)(i) (emphasis added), or if it *possesses* "discretionary authority or discretionary responsibility in the *administration* of such plan."  *Id.* § 1002(21)(A)(iii) (emphasis added).  In other words, mere *possession* of discretionary authority over plan *administration* suffices for fiduciary status.  But for plan *management* or *disposition of assets*, the actual *exercise* of control must be shown.  And investment selection plainly involves plan management and disposition of plan assets.  *See Zang v. Paychex Inc.*, 728 F. Supp. 2d 261, 269 (W.D.N.Y. 2010) (granting service provider's motion to dismiss breach of fiduciary duty claims for

-25-

lack of fiduciary status on grounds that, under ERISA § 1002(21)(A)(i), an individual must *exercise* "authority or control respecting management or disposition" of plan assets to be classified as a fiduciary, rather than merely having authority or control over the plan).  Accordingly, because Plaintiffs do not allege that TLIC ever *exercised* any discretion over the selection of Plan investment options, TLIC did not function as a fiduciary as to investment selections.

Because the Complaint fails to identify any "transaction" by TLIC involving Plan assets, the prohibited transaction claims in Counts IV and VII must fail.

**D.      Count V Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Select The Cheapest Share Class Available In The Mutual Funds In The Separate Account Investment Options.**

In Count V Plaintiffs allege that TLIC breached fiduciary duties by not selecting the cheapest share class available for the mutual funds included in its separate account investment options.  But the expenses associated with the share class of any particular mutual fund included within one of TLIC's separate account are merely a component of the total disclosed expense ratio for that separate account.  (Compl. ¶¶ 227-233.)[32]  It is the plan sponsor, not TLIC, who makes the fiduciary decision to then offer the separate account as a plan investment option, subject to the total disclosed expense ratio on that investment option.  As

---

[32]      *See also* Investment Fact Sheets.

-26-

discussed, the decision to retain TLIC and to include particular separate accounts in the Plan investment lineup is made by plan sponsors with the assistance of their financial advisors.  TLIC had no fiduciary status or obligation with respect to that decision.  (*See* Section I.A, *supra*.)

> **E.     Count VI Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Negotiate Lower Sub-Advisory Fees For The Plan Investments In Collective Trusts And Separate Accounts.**

In Count VI, Plaintiffs allege that TLIC breached fiduciary duties by failing to use its size to negotiate lower expenses for collective trusts and "traditional separate accounts."  For reasons previously discussed, that claim must fail because it challenges the retention of TLIC at rates that were fully disclosed to the plan sponsor.  The Complaint itself alleges that the expenses for the underlying collective trusts and separate accounts held in certain separate account investment options were included in the total expense ratios that TLIC disclosed to plan sponsors.  (Compl. ¶¶ 330-334.)  And it was the plan sponsors who made the fiduciary decisions to include the separate accounts in their plans at those disclosed rates.  (*See* Section I.A, *supra*.)

**III.     COUNTS VIII AND IX SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE VALID CLAIMS UNDER THE INVESTMENT ADVISERS ACT.**

Counts VIII and IX assert essentially identical claims under Section 215(b) of the Investment Advisers Act of 1940 ("IAA").  Under the IAA, an investment

adviser is one who, among other requirements, "engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities" for compensation.  15 U.S.C. § 80b-2(11).  Count VIII alleges that TLIC violated the IAA by providing investment advice, without having registered as an investment adviser, to the separate account products to which Plaintiffs allocated their accounts through the plans' purchase of variable annuities from TLIC.  (*See, e.g.,* Compl. ¶¶ 13, 104, 349-52.)  Count IX recasts Count VIII as a derivative claim on behalf of the various separate accounts, of which Plaintiffs claim to be "security holders."[33]

Each of these counts should be dismissed for failure to allege sufficient facts to state a plausible claim for relief.  Count IX should be dismissed for the additional reason that it is impermissible as a derivative action under Fed. R. Civ. P. 23.1.

---

[33]   Although other sections of the Complaint make general allegations concerning the on-line "AdviceSolutions" feature (Compl. ¶¶ 185-202), Plaintiffs make no reference to it in connection with their IAA allegations.  Nor are there any allegations that any of the named Plaintiffs or any of the members of the putative IAA "Plaintiff Purchasers Class" ever used the AdviceSolutions feature.

A.    **TLIC Has Not Provided Investment Advice to "Others" Within the Meaning of the IAA.**

The IAA applies to companies that "engage[] in the business of advising ***others***" with respect to their investments.  15 U.S.C. § 80b-2(11) (emphasis added).  It does not apply to a company's investment decisions or advice respecting the management of its own accounts or investment products.  Only the latter is at issue here.  The separate accounts to which Plaintiffs allocated their accounts through the plans' purchase of TLIC variable annuity products are part of TLIC itself, established by TLIC as a means of offering mutual funds or other investment products to retirement plan clients. (*See, e.g.*, Compl. ¶¶ 128-29 (TLIC itself establishes separate accounts to "overlay" other investment options); ¶ 174 (TLIC offers each of the investment options as a "separate account").)  Plaintiffs do not allege that the separate accounts are separate entities with their own boards or other management.  (*See, e.g.*, *id.* ¶ 50 (separate accounts are not "registered" entities with their own boards of directors).)[34]  TLIC's decision making with respect to its own separate account products does not constitute providing investment advice to "others" for IAA purposes.

---

[34]    Plaintiffs' description is consistent with ERISA's definition, which provides that a separate account is "an account"—not a subsidiary or independent entity— that is separate in the sense that it is credited with gains and losses based on the performance of specific investments, not that it is a separate entity that could contract with the insurance company for investment advice.  *See* ERISA § 3(17), 29 U.S.C. § 1002(17).

-29-

Even if the separate accounts were deemed to have a separate existence from TLIC itself for purposes of the IAA, it would not matter.  This is because investment advisers whose only clients are insurance companies are exempt from registration under the Act.  15 U.S.C. § 80b-3(b)(2).  Under Plaintiffs' allegations, the separate accounts to which they have allocated their 401(k) balances—the recipients of TLIC's "advice" in Plaintiffs' make-believe world—are TLIC's own insurance products.  (*See, e.g.*, Compl. ¶¶ 125-26, 140.)

Plaintiffs appear to contend that, having allocated their variable annuity accounts among TLIC's separate account products, they formed "contracts" with TLIC "pursuant to which TLIC rendered investment advice and acted as an investment adviser/manager[.]"  (*See, e.g.*, Compl. ¶ 351.)  For the reasons just explained, this suggestion is baseless.  Indeed, courts have flatly rejected this leap, reasoning in similar contexts that although investors in an investment fund may benefit or suffer from the fund manager's advice, the manager is providing advice ***to the fund***, not to the investors.  *See Goldstein v. SEC*, 451 F.3d 873, 879-80 (D.C. Cir. 2006) ("The adviser [to the fund] does not tell the investor how to spend his money; the investor made that decision when he invested in the fund."); *see also SEC v. Northshore Asset Mgmt.*, No. 05-2192, 2008 U.S. Dist. LEXIS 36160, at *19 (S.D.N.Y. May 5, 2008) (reasoning that the SEC could not maintain an IAA claim

-30-

against a hedge fund adviser for alleged misrepresentations to the investors in the

funds, because the funds themselves, not the investors, were the adviser's clients).

### B.    Count IX Fails For The Additional Reason That Plaintiffs Do Not State a Proper Derivative Claim.

In Count IX, Plaintiffs attempt to restyle their IAA allegations as derivative

claims on behalf of the investment options in which they invested.  (*See, e.g.,*

Compl. ¶¶ 363-64.)[35]  Fed R. Civ. P. 23.1 does not permit such suits.

Corporate shareholders or members of unincorporated associations may

bring derivative suits to enforce the legal rights of a corporation or association,

provided certain conditions are met.  Fed. R. Civ. P. 23.1.  Plaintiffs do not show

that the insurance "separate accounts" at issue here are legal entities with personal

rights that Plaintiffs can assert under Rule 23.1.  Indeed, they cannot make this

showing.  In the retirement plan context, a "separate account" simply denotes "an

account established or maintained by an insurance company" that is increased or

decreased based on the performance of specific assets, not the performance of the

insurance company itself.  ERISA §3(17), 29 U.S.C. § 1002(17).

---

[35]    Plaintiffs allege that but for the Transamerica Stable Value Option, all of the investment options in the plans are separate accounts.  (Compl. ¶ 135.)  The Complaint alleges that TLIC provided advice to specific investment options in which the named plaintiffs invested, and, more generally, to "some of the other investment options" in which other participants may have invested (*see, e.g., id.* at Count VIII ¶14), but does not reference the Transamerica Stable Value Option.

-31-

Even if the separate accounts were legal entities with enforceable rights, Plaintiffs have not adequately alleged that they have an "ownership" interest in those accounts.  Rather, where, as here, a retirement plan invests in insurance company separate accounts, assets in the separate accounts are assets of ***the plan***. *See Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co*., 783 F. Supp. 899, 904 (D.N.J. 1992) (observing that funds invested in separate accounts are categorized as plan assets); *see also Mack Boring and Parts v. Meeker*, 930 F.2d 267, 275 (3rd Cir. 1991) (summarizing legislative history regarding the status of funds in insurance company separate accounts as plan assets).  And ERISA expressly provides that, similar to corporations, benefit plans are distinct legal entities, distinct from their participants and beneficiaries.  ERISA § 502(d), 29 U.S.C. § 1132(d).  In sum, it is the ***plans***, not the participants, who are as "security holder[s]" in those separate accounts.  (*See*. *e.g*., Compl. ¶¶ 362-63.)[36]

Because Plaintiffs have failed to show that the separate accounts are legal entities whose rights could be asserted derivatively under Rule 23.1, and likewise failed to show that they themselves possess an adequate interest in those accounts to assert such derivative claims, Count IX should be dismissed.

---

[36]    The result would be the same under insurance law, which dictates that the insurance company, not policy holders or, in this case, plan participants, has ownership of the assets in separate accounts.  *See* Iowa Code § 508A.1(5).  Neither ERISA nor insurance law provides that the individual participants have "security holder" rights to bring a derivative suit for violations of the IAA.

-32-

## **CONCLUSION**

For the foregoing reasons, TLIC respectfully requests that the Class Action Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

Dated: May 16, 2011                              Respectfully submitted,

*s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Telephone:   (973) 292-1700
Facsimile:    (973) 292-1767

Robert N. Eccles (*Pro Hac Vice* pending)
Gary S. Tell (*Pro Hac Vice* pending)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Telephone:   (202) 383-5300
Facsimile:    (202) 383-5414

*Attorneys for Defendants*
*Transamerica Life Insurance Company,*
*Transamerica Investment Management,*
*LLC, and Transamerica Asset*
*Management, Inc.*

-33-