# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al., | : : : : : | Civil Action No. 11-736 (FSH) (PS) |
| Plaintiffs, | : : : | |
| v. | : : : | |
| TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC., | : : : : : : : | **Motion Returnable:  June 20, 2011 Oral Argument Requested** |
| Defendants. | : : : | |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER OF VENUE

---

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Robert N. Eccles (*pro hac vice* pending)
Gary S. Tell (*pro hac vice* pending)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
(202) 383-5300

*Attorneys for Defendants*
*Transamerica Life Insurance Company,*
*Transamerica Investment Management, LLC*
*and Transamerica Asset Management, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................1

II.    STATEMENT OF RELEVANT FACTS .....................................................2

    A.    Plaintiffs' Complaint....................................................3

    B.    TLIC Provides Plan Sponsors with Menu of Bundled Services..........4

    C.    TLIC's Retirement Plan Nerve Center Is in Los Angeles.................6

    D.    The Development and Management of TLIC's Retirement Plan
        Services and Investment Product Platforms Occur in Los
        Angeles ...............................................................6

    E.    Plans Engaging TLIC's Retirement Plan Services and
        Investment Product Platforms, and the Financial Advisors
        Selling TLIC's Services, Are Located Around the Country. ............11

III.   STANDARD OF REVIEW ......................................................12

IV.    TRANSFER OF VENUE IS APPROPRIATE IN THIS CASE ...............12

    A.    This Case Could Have Originally Been Brought in the Central
        District of California................................................13

    B.    Private Considerations, Such As the Convenience of Parties and
        Witnesses, Favors Transfer to the Central District of California ......13

        1.    The Convenience of the Witnesses Favors Transfer...............14

        2.    The Convenience of the Parties Favors Transfer ....................17

        3.    The Claims Arise in the Central District of California. ..........19

        4.    The Relevant Documentary Evidence is Located in the
            Central District of California................................................20

    C.    The Public Factors are Neutral as Between the United States
        District Court for the Central District of California and this
        Court...................................................................21

V.     CONCLUSION ...........................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Days Inn Worldwide, Inc. v. Ram Lodging, LLC,*  No. 09-2275
(SDW), 2010 WL 1540926 (D.N.J. Apr. 14, 2010)........................................19

*Hardaway Constructors, Inc. v. Conesco Indus., Ltd.*,
583 F. Supp. 617 (D.N.J. 1983) .......................................................19

*Hotel Constructors, Inc. v. Seagrave Corp.*,
543 F. Supp. 1048 (N.D. Ill. 1982).................................................16

*Job Haines Home for the Aged v. Young,*
936 F. Supp. 223 (D.N.J. 1996) .......................................................18

*Johnson v. Nextel Comms., Inc.*,
No. 06-CV-5547 (DMC), 2007 WL 2814649 (D.N.J. Sept. 21,
2007) .....................................................................................18

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3rd Cir. 1995) ........................................... 14, 19, 20, 21

*NPR, Inc. v. Am. Int'l Ins. Co. of P.R.*,  No. CIV. 00-0242(WGB)
2001 WL 294077 (D.N.J. Mar. 28, 2001) ...................................1, 12

*Ricoh Co., Ltd., v. Honeywell, Inc.*,
817 F. Supp. 473 (D.N.J. 1993) .......................................................18

*Sandvik, Inc. v. Continental Ins. Co.*,
724 F. Supp. 303 (D.N.J. 1989) .......................................................12

*Solomon v. Continental Am. Life Ins. Co.*,
472 F.2d 1043 (3d Cir. 1973)...................................................16, 19

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).....................................................................12

*Thorlabs, Inc. v. Townsend Comms., L.L.C.*, No. Civ. A. 03-
4550(JCL), 2004 WL 1630488 (D.N.J. June 30, 2004)...................20

## TABLE OF AUTHORITIES
### (continued)

**Page**

### STATUTES

15 U.S.C. §§ 80b, *et seq.* ........................................................................1

28 U.S.C. § 1404(a) .........................................................................passim

29 U.S.C. § 1002(17) ...............................................................................3

29 U.S.C. § 1132(e)(2) ...........................................................................13

29 U.S.C. §§ 1001-1461 ...........................................................................1

### OTHER AUTHORITIES

15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3851 (2d ed. 1986).....................................14

Table C, Cases Commenced, Terminated, and Pending 2009-2010, http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/ June2010.aspx.................................................................22

Table C-5, Time Intervals From Filing to Disposition of Civil Cases, Terminated, by District and Method of Disposition, http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/ June2010.aspx.................................................................22

### RULES

Fed. R. Civ. P. 45(e)(1)...........................................................................16

## I.    INTRODUCTION.

This expansive putative class action and derivative suit does not belong in New Jersey.  Plaintiffs, participants in two employee benefit plans, target products and services provided by Defendant Transamerica Life Insurance Company ("TLIC") to at least 7,763 different employee benefit plans scattered across the United States.  (Declaration of Darcy Hatton ¶ 8 ("Hatton Decl.," filed concurrently herewith).)  The Complaint asserts that TLIC's products and services were overpriced and therefore violated various provisions of ERISA[1] and the Investment Advisers Act of 1940 ("IAA").[2]

As a judge of this Court has noted, the outcome of motions to transfer venue "turns on whether New Jersey is the 'center of gravity' of this matter."  *NPR, Inc. v. Am. Int'l Ins. Co. of P.R.*, No. CIV. 00-0242(WGB), 2001 WL 294077, at *4 (D.N.J. Mar. 28, 2001).  Here, Los Angeles, California constitutes the center of gravity for the parties, witnesses and documentary evidence that are swept up by Plaintiffs' 111-page Complaint.   Plaintiffs have sued two defendants that reside or can be found in Los Angeles.   Plaintiffs' claims arose principally in Los Angeles. The most likely witnesses — the officers, employees and former employees

---

[1] Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461.

[2] 15 U.S.C. §§ 80b, *et seq.*

responsible for assembling, marketing and administering TLIC's administrative services and investment options — would find Los Angeles to be a more convenient forum than this District.  And, finally, by suing on behalf of a geographically dispersed nationwide class of plans and participants, Plaintiffs have further undercut their choice of New Jersey as the venue for this case.  For these reasons, Defendants respectfully urge this Court to exercise its discretion and transfer this case to United States District Court for the Central District of California ("Central District of California") pursuant to 28 U.S.C. § 1404(a).

## II.   STATEMENT OF RELEVANT FACTS.

TLIC offers a menu of potential administrative services and investment options.  (Hatton Decl. ¶¶ 17, 19.)[3]  Employers, who enter into TLIC service agreements, are referred to as "plan sponsors," and the employees who enroll in the plans are referred to as "plan participants."  (*Id*. ¶ 7.)  TLIC's products and services are sold nationally to plan sponsors through a network of independent financial advisors.  (*Id*. ¶ 8.)

TLIC offers, among other things, a 401(k) plan product that enables participants to select from a menu of investment options, transfer amounts in their

---

[3] TLIC has business units and affiliates that perform services for retirement plans, including Transamerica Retirement Services, an unincorporated business unit of TLIC.  (Hatton Decl. ¶ 1; Compl. ¶ 98.)

plan accounts between investment options, and receive information regarding their investments. (*Id.* ¶ 19; Compl. ¶ 187.)

TLIC provides plan administrative services pursuant to the terms of the initial application and agreement with the plan sponsor. (Hatton Decl. ¶ 18.) TLIC also makes available a range of investment options from which plan sponsors can select the investment line up to be offered to participants in their particular plan through a group annuity contract, which TLIC issues to the plan. (*Id.* ¶¶ 8, 17, 19; Compl. ¶¶ 6, 13.) Under the terms of the group annuity contract, each investment option selected by the plan sponsor is structured as a "separate account."[4] (Compl. ¶¶ 19-20.) The separate accounts contain different types of underlying investments, including mutual funds, collective trusts and directly-advised accounts. (*Id.* ¶¶ 214-217.)

### A.   Plaintiffs' Complaint.

Plaintiffs, who are or were participants in two plans that contracted with TLIC, contend that TLIC's investment options charge excessive fees, and that these fees violated various ERISA provisions, including ERISA's duties of loyalty and prudence, as well as certain ERISA "prohibited transaction" provisions. (*See*

---

[4] A "separate account" is defined under ERISA § 3(17), 29 U.S.C. § 1002(17) as "an account established or maintained by an insurance company under which income, gains, and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account without regard to other income, gains, or losses of the insurance company."

*id.* ¶¶ 4-5, Counts I-VII.)  Plaintiffs also assert that TLIC's affiliates, Defendants

Transamerica Investment Management ("TIM") and Transamerica Asset

Management ("TAM") received excessive fees in violation of ERISA.  (*See id.*

Counts IV & VII.)  Finally, Plaintiffs contend that TLIC's product runs afoul of the

IAA.  (*See id.* Counts VIII & IX.)  The Complaint is purportedly brought on behalf

of ***all*** defined contribution plans to which TLIC provided investment options

through one of its group annuity contracts.  (*Id.* ¶ 54.)  Plaintiffs demand

declaratory and other equitable relief, and monetary damages.

### B.    TLIC Provides Plan Sponsors with Menu of Bundled Services.

Plaintiffs are participants in two defined contribution plans: the Gain Capital

Group LLC 401(k) Profit Sharing Plan and the QualCare Alliance Networks, Inc.

Retirement Plan (the "Gain Capital Plan" and the "QualCare Plan," respectively).

(*Id.* ¶¶ 4-5.)  Named Plaintiff Jaclyn Santomenno was a participant in the Gain

Capital Plan.  (*Id.* ¶ 5.)  Named Plaintiffs Karen Poley and Barbara Poley are

participants in the QualCare Plan.  (*Id.* ¶ 4.)

A defined contribution plan maintains participant-level accounts that track a

participant's contributions to the plan, as well as earnings and plan sponsor

contributions attributable to that participant's account, if applicable.  (Hatton Decl.

¶ 16.)  TLIC offers a menu of potential services (including recordkeeping and

administrative services) to defined contribution plan sponsors, and plan sponsors

then select the services needed to best manage their plans.  (*Id.* ¶ 17.)  TLIC enters into written agreements with plan sponsors, and it issues group annuity contracts to the plans for the performance of services.  (*Id.* ¶¶ 8, 17, 18, 24.)  These agreements establish the terms and conditions of TLIC's services, as well as the fees for those services.  (*Id.* ¶¶ 17, 18.)

To illustrate, Darcy Hatton, a Senior Vice President of TLIC, signed the Application and Agreement for Services entered into between TLIC and the Plaintiffs' two plan sponsors — Gain Capital Group, LLC for the Gain Capital Plan and QualCare Alliance Networks, Inc. for the QualCare Plan.  (*Id.* ¶¶ 1, 18.) She executed those agreements in TLIC's administrative office in Los Angeles.  (*Id.*)

In addition to recordkeeping and administrative services, TLIC offers several platforms or groups of investment options to plan sponsors.  (*Id.* ¶ 19.) Plan sponsors, such as Gain Capital and QualCare, choose the investment options they wish to include in their respective plan from the investment option platforms.  (*Id.*)  Only those investment options selected by the plan sponsor are made available to the plan participants for investment.  (*Id.*)  TLIC provides plan sponsors with Investment Fact Sheets which include, among other things, information regarding investment strategy, expense ratios, share class, and performance (including performance against benchmarks) of the investments held

5

in the approximately 170 separate account investment options offered to plan sponsors. (Compl. ¶¶ 227-244.) Fiduciaries of the Gain Capital Plan selected 46 investment options for their plan line up. (*Id.* ¶¶ 17, 206, 208.) Fiduciaries of the QualCare Plan included 36 investment options in their plan. (*Id.* ¶¶ 16, 206-207.)

**C.    TLIC's Retirement Plan Nerve Center Is in Los Angeles.**

TLIC's retirement plan business and TIM are located in Los Angeles, California. (Hatton Decl. ¶¶ 2,5.)[5] TLIC employs 342 individuals dedicated to its retirement plan business in Los Angeles, including the vast majority of that business' managers and executives. (*Id.* ¶ 12.) TLIC's largest office is at the 1150 South Olive Street location. (*Id.*) The primary conduct at issue in this matter occurred at TLIC's nerve center in Los Angeles, including, among other things, product development, construction of investment platforms, pricing, marketing, supervision of plan document development, and new client implementation. (*Id.* ¶¶ 11, 29, 31.)

**D.    The Development and Management of TLIC's Retirement Plan Services and Investment Product Platforms Occur in Los Angeles.**

Plaintiffs' claims principally target the investment options offered to plan sponsors, such as Gain Capital and QualCare, for selection for their plans' investment line up. (*See, e.g.,* Compl. ¶¶ 138-147.) Specifically, Plaintiffs contend TLIC's product violated ERISA because "[e]xcessive fees are charged to

---

[5] Defendant TAM is based in St. Petersburg, Florida. (Hatton Decl. ¶ 6.)

Plaintiff Participants' accounts, on their investments, both individually and in the aggregate by TLIC." (*Id*. ¶ 146.)  Plaintiffs also assert that TLIC rendered investment advice in connection with its retirement plan products and received compensation without registering under the IAA and sold unregistered investment options. (*Id*. ¶¶ 343-369.)

TLIC's Investment Committee[6] selects the investment options to be included in the product platforms offered to plan sponsors and issued to the plans through group annuity contracts. (Hatton Decl. ¶ 20; Compl. ¶ 6.)  The members of the Investment Committee meet in Los Angeles, and most members reside in the Los Angeles area. (Hatton Decl. ¶¶ 21-22.)  Currently, Diana Geraci chairs the Investment Committee. (*Id*. ¶ 22.)  Ms. Geraci resides in the Los Angeles area. (*Id*.)  Other Investment Committee members include Stig Nybo, Roy Chong-Kit, Jason Crane, Marc Cahn, Eric King, Robert Rude, John Chen, Beverly Sanchez, and Tracy Long. (*Id*.)  None of the current members works or lives in New Jersey, and all but three members live and work in the Los Angeles area. (*Id*.)

Similarly, former Investment Committee members participated in Investment Committee meetings in Los Angeles, and most continue to reside in the Los Angeles area. (*Id*. ¶ 23.)  For example, Hristo Stefanov (a former Vice

---

[6] The Investment Committee is comprised of high-level executives and managers of TLIC. (Hatton Decl. ¶ 22.)

President of TLIC), Suzanne Carroll (a former General Counsel of TLIC), Kent Callahan, Catherine Collinson, John DeMasi, and Peter Welsh formerly served on the Investment Committee at some time since early 2005.  (*Id.*)[7]  Mr. Stefanov, Ms. Carroll, and Ms. Collinson currently live in the Los Angeles area.  (*Id.*)  Mr. Callahan lives near Atlanta, Georgia, Mr. DeMasi lives in the Philadelphia, Pennsylvania area, and Mr. Welsh lives in Chicago, Illinois.  (*Id.*)  No former Investment Committee members live in New Jersey.  (*Id.*)

TLIC's Product Development Group (the "PDG") supports the Investment Committee's construction of TLIC's investment product platforms by recommending the investment management and administrative fees appropriate for each investment option.  (*Id.* ¶ 27.)  Such information is used to inform the Investment Committee's decision whether to include an investment option in the product platforms.  (*Id.*)  The PDG also manages TLIC's relationships with mutual fund complexes by negotiating and executing agreements (including revenue-sharing agreements) with mutual funds and their advisors.  (*Id.*)  Moreover, the PDG aids in the construction of TLIC's investment product platforms by reviewing investment option performance and providing performance review reports to the Investment Committee.  (*Id.*)  All PDG managers reside in the Los Angeles area,

---

[7] Ms. Collinson and Mr. Callahan are still employed by TLIC, but they previously served on the Investment Committee.

including Diana Geraci, Robert Rude, Alon Dotich, Ya-Li Chen, Eric King and Beverly Sanchez, and the PDG houses its records in TLIC's Los Angeles office. (*Id.* ¶ 28.)[8]

TLIC's Marketing Department designs marketing strategies, and drafts and distributes marketing materials describing its various services available to plan sponsors. (*Id.* ¶ 25.) The Marketing Department, including all senior marketing managers, is based in Los Angeles. (*Id.*) Approximately 90% of TLIC's marketing materials are drafted in Los Angeles, and all such materials are reviewed and approved in Los Angeles. (*Id.*) The remaining 10% of marketing materials are initially drafted in states other than New Jersey. (*Id.*) The marketing materials drafted, reviewed, and approved in Los Angeles comprise documents describing the plan sponsor's fiduciary responsibilities associated with the plans. (*Id.* ¶ 26.) These include the description of several products referenced in Plaintiffs' Complaint. For example, descriptions of TLIC's Fiduciary Warranty Program, and the AdviceSolutions participant education feature on the TLIC website were developed and approved in Los Angeles. (*Id.*) Copies of all marketing materials are stored in Los Angeles; Dave Shute, Vice President, Director of Marketing for

---

[8] Some managers in the PDG are also members of the TLIC Investment Committee. (*Id.* ¶¶ 22, 28.)

TLIC, and Julie Quinlan, Vice President, Director of Communication for TLIC,
work and live in the Los Angeles area.  (*Id*.)

The Retirement Product Pricing Department of TLIC is responsible for
establishing TLIC general pricing guidelines, recordkeeping fees for plan sponsors
pursuant to individual services agreements, and contract asset charges and other
fees associated with the TLIC group annuity contracts that are issued to the plans.
(*Id*. ¶ 24.)  Juan Rico, a Vice President of TLIC, is head of the Retirement Product
Pricing Department, which is located in Los Angeles.  (*Id*.)  Mr. Rico and
Hristo Stefanov were involved in the pricing of the QualCare and Gain Capital
Plans, and they performed that work in Los Angeles.  (*Id*.)  Finally, records
regarding pricing decisions are maintained in Los Angeles, and all Retirement
Product Pricing Department employees reside in the Los Angeles area.  (*Id*.)

In addition to the construction and management of TLIC's product
platforms, TLIC also provides support services to plan sponsors and participants.
For example, TLIC's Plan Compliance Department assists plan sponsors by
supervising the drafting plan documents and summary plan descriptions.  (*Id*.
¶ 29.)  Moreover, the Document Operations Department distributes group annuity
contracts and related documentation to plan sponsors.  (*Id*.)  Emily Urbano, former
Vice President of PCD, Jeffrey Barber, current Vice President of Document
Operations and Plan Compliance, Alison Cohen, PCD ERISA Specialist, Ruth

10

Chan, Compliance Analyst for the QualCare Plan, and Robert Jacoy, Compliance Analyst for the Gain Capital Plan, all live in the Los Angeles area.  (*Id*. ¶ 30.)

Finally, TLIC's information technology operations, plan installation services, plan and participant call centers, and participant enrollment services are managed and coordinated in TLIC's office in Los Angeles.  (*Id*. ¶ 31.)  Most of the senior management for these support services, such as Leecea Johnson, who heads Operations Solutions, and Denise Basey, who heads Installation Services, reside in the Los Angeles area.  (*Id*.)

### E. Plans Engaging TLIC's Retirement Plan Services and Investment Product Platforms, and the Financial Advisors Selling TLIC's Services, Are Located Around the Country.

TLIC services 7,763 retirement plans, and each plan is based where the respective plan sponsor is located.  (*Id.* ¶ 8.)  Accordingly, TLIC provides services or investment platforms to plans located nationwide plus Puerto Rico and the U.S. Virgin Islands.  (*Id*.)  By a wide margin, more of the plans (and their sponsors) are based in California — approximately 1,364 plans — than in any other state, including New Jersey, where 469 plans are located.  (*Id*.)  Moreover, TLIC sells its services through a network of independent financial advisors.  (*Id*.)  These financial advisors are dispersed throughout the United States, and they are located in higher numbers in the largest states, such as California.  (*Id*.)  The participants in the plans at issue are spread across the country.  (*Id*.)

11

## III.    STANDARD OF REVIEW.

The Court has discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citations omitted).   "Because a motion to transfer an action to a more convenient forum does not result in dismissal of the case, the defendant is required to make 'a lesser showing of inconvenience' than would be required for a dismissal at common law. Accordingly, federal courts have broader discretion to transfer an action under section 1404(a) than to dismiss under the doctrine of forum non conveniens." *Sandvik, Inc. v. Continental Ins. Co.*, 724 F. Supp. 303, 307 (D.N.J. 1989).

## IV.    TRANSFER OF VENUE IS APPROPRIATE IN THIS CASE.

A district court may transfer a civil action to another district if (1) the transferee district is one where the case could have been brought originally, and (2) the movant shows that such a transfer would benefit "the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a).  As noted above, transfer under Section 1404(a) is appropriate when the case finds its "center of gravity" in a forum other than that originally selected.  *NPR, Inc. v. Am. Int'l Ins. Co. of P.R.*, No. CIV. 00-0242(WGB), 2001 WL 294077, at *4 (D.N.J. Mar. 28, 2001) ("The outcome of Defendant's transfer motion turns on whether New Jersey is the 'center of gravity' of this matter.").  The "center of gravity" in this

12

matter lies in Los Angeles — where TLIC's product platforms and services were

constructed and managed — not in New Jersey.  (Hatton Decl. ¶¶ 10-11.)

### A.    This Case Could Have Originally Been Brought in the Central District of California.

This suit could have been brought originally in the Central District of

California.  ERISA's venue provision, § 502(e)(2), 29 U.S.C. § 1132(e)(2),

provides that venue is appropriate, or a case can be filed, in a judicial district

where: (1) the plan is administered, (2) the breach took place, or (3) a defendant

resides or may be found.  The Central District of California is an appropriate forum

under ERISA, and a venue where this matter could have originally been brought

because the conduct at issue (i.e., TLIC's construction, pricing and management of

its products and services) occurred in Los Angeles.  (Hatton Decl. ¶¶ 10-11.)

Further, two of three named Defendants, TIM and the TLIC, reside or may be

found in Los Angeles.  (*Id.* ¶¶ 2, 5.)  Accordingly, the requirement for transfer

listed in Section 1404(a) — that the transferee district is one where the case could

have been brought originally — has been satisfied.

### B.    Private Considerations, Such As the Convenience of Parties and Witnesses, Favors Transfer to the Central District of California.

In assessing the convenience of the parties and witnesses under 28 U.S.C.

§ 1404(a), the Third Circuit has held that a number of private considerations bear

on whether transfer to an alternative forum is appropriate.  The private

considerations include: (1) the plaintiff's venue choice (i.e., the original venue selection); (2) defendant's venue preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of witnesses; and (6) the location of books and records. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995). These private considerations support transfer of this case to the Central District of California.

       1.    <u>The Convenience of the Witnesses Favors Transfer.</u>

The convenience of the witnesses is often the most important private interest factor for purposes of venue. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851 (2d ed. 1986). Here, the convenience of the witnesses strongly favors transfer to the Central District of California because the likely central witnesses in the case, TLIC's current and former employees, reside in Los Angeles.

At its heart, the Complaint alleges that TLIC violated ERISA by offering a retirement plan product that charged excessive fees for its investment options or was structured in a manner that ran afoul of the Investment Advisers Act. The central witnesses on these topics will consist of TLIC's Investment Committee members, and managers and employees in TLIC's Product Development Group, Retirement Product Pricing Department, and Marketing Department, who had

14

direct knowledge of the construction and pricing of TLIC's products and services. These TLIC officers and employees selected the investment options to be included in TLIC's product platforms, and/or priced, marketed, and managed TLIC's retirement plan services. (Hatton Decl. ¶¶ 20, 24-27, 29, 31.)

Ms. Hatton, a Senior Vice President of TLIC, identified 23 current TLIC employees with personal knowledge of how TLIC designed, marketed and managed its product platforms and services. (*Id*. ¶¶ 1, 22-24, 26, 28, 30-31.) Nineteen of these individuals reside in the Los Angeles area. (*Id*.) Four reside elsewhere. (*Id*. ¶¶ 22-23)[9] None of these potential witnesses live in this District. (*Id*.) Ms. Hatton further testified that most of TLIC's West Coast-based personnel do not regularly travel for business. (*Id*. ¶ 14.) If multiple TLIC managers were required to travel to New Jersey for trial, the extensive travel time, coupled with the uncertainties of trial scheduling, would be highly disruptive to TLIC's retirement plan business. (*Id*.) It would be far easier for TLIC to manage its day-to-day operations if a trial in this matter occurred in Los Angeles.

Ms. Hatton also named five former TLIC employees with knowledge of the central facts in this dispute. (*Id*. ¶¶ 23, 30.)[10] Three of these potential witnesses

---

[9] The four current TLIC employees residing outside the Los Angeles area are Marc Cahn, Stig Nybo, Jason Crane and Kent Callahan. (*Id*. ¶¶ 22-23.)

[10] The five former TLIC employees include Hristo Stefanov, Suzanne Carroll, Emily Urbano, Peter Welsh and John DeMasi. (*Id*. ¶¶ 23, 30.)

live in the Los Angeles area, and two reside elsewhere.  (*Id.*)[11]  None of these

potential non-party witnesses reside in New Jersey.  (*Id.*)  Hence, three former

employee witnesses could be compelled to testify in Los Angeles, but, as non-

parties, they are beyond the subpoena power of this Court.  Courts weigh heavily

the location of non-party witnesses who could be compelled to testify in the

transferee court in determining whether a transfer of venue is appropriate.

*See Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973)

(noting that "the amenability of at least seven crucial witnesses to compulsory

process in North Carolina and not in New Jersey" weighed in favor of transfer);

Fed. R. Civ. P. 45(e)(1) (non-party may not be held in contempt for failure to obey

subpoena requiring non-party to travel to a place more than 100 miles from the

place he or she resides).[12]  In sum, Defendants have identified 28 TLIC employees

and former employees who may testify at trial.  The vast majority of these

_____

[11] Hristo Stefanov, Suzanne Carroll, and Emily Urbano currently reside in the Los
Angeles area.  Peter Welsh and John DeMasi are former TLIC employees residing
outside of the Los Angeles area.  (*Id.*)

[12]  Although videotape testimony of third party witnesses, who could not be
compelled to testify in this District, is a potential solution, fact-finding via live
testimony is available in Central District of California and the superior option.  *See
Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F. Supp. 1048, 1051 (N.D. Ill.
1982) (stating that "trier of fact should not be forced to rely on deposition evidence
when the deponent's live testimony can be procured").

individuals call Los Angeles home.  Their convenience supports the transfer of this

suit to the Central District of California.[13]

Other possible witnesses in the case may consist of plan participants,

representatives of plan sponsors, and possibly the plan sponsors' financial

advisors, who brought TLIC as a potential service provider to the attention of the

plan sponsors.   Since this suit is styled as a putative class action, these witnesses

will likely be distributed throughout the United States.  In fact, a plurality of

TLIC's plan sponsor customer base resides in California, not New Jersey.  (Hatton

Decl. ¶ 8.)  Similarly, the plan sponsors' financial advisors are geographically

dispersed.  (*Id.*)  Hence, while the convenience of participants, plan sponsors, and

plan sponsors' financial advisors does not favor either forum, the convenience of

TLIC's witnesses, who are located in Los Angeles, points to the Central District of

California as the most appropriate venue for this case.

    2.    The Convenience of the Parties Favors Transfer.

Defendant TIM is based in Los Angeles.  (*Id.* ¶ 5.)  TLIC's retirement

business is housed in Los Angeles, and, as noted above, the majority of the key

---

[13] Witnesses from TIM and TAM are unlikely to play a major role at trial.
Plaintiffs have not leveled Investment Advisers Act claims against TIM and TAM,
and the Complaint does not allege that these entities constitute fiduciaries under
ERISA.  (*See* Memorandum of Points and Authorities in Support of TIM's and
TAM's Motion to Dismiss.)  To the extent TIM and TAM witnesses are called at
trial, their convenience favors Los Angeles over New Jersey since TIM is located
there and TAM is located in Florida.

witnesses for Defendants TLIC reside in the Central District of California.  (*Id.* ¶¶ 10-12.)   The convenience of Defendant TAM, based in Florida, does not favor this District or the Central District of California, since both locations are distant from its base of operations.  (*Id.* ¶ 6.)

On the other hand, Plaintiffs reside in New Jersey.  (Compl. at 2.)  A judge of this Court has observed that "a plaintiff's choice of forum is neither dispositive of the transfer analysis nor is it the only factor to be considered.  The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right."  *Ricoh Co., Ltd., v. Honeywell, Inc.*, 817 F. Supp. 473, 840 (D.N.J. 1993) (quotation marks and citations omitted).  To the extent courts afford deference to Plaintiffs' choice of venue, that deference is reduced when they have filed suit on behalf of a nationwide class.  *See, e.g., Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 231 (D.N.J. 1996).   Further, the class includes plans and plan participants scattered across the United States, with a plurality of them in California.  (Hatton Decl. ¶ 8 (noting that 1,364 active plan sponsors are based in California, 537 active plan sponsors are based in Illinois, 469 active plan sponsors are based in New Jersey, and the rest of the plan sponsors are spread nationwide plus the U.S. Virgin Islands and Puerto Rico).)  This geographic dispersion does not favor this District over any other jurisdiction in which members of the putative nationwide class reside.  *Job Haines Home*, 936 F. Supp. at 231; *see also Johnson*

18

*v. Nextel Comms., Inc.*, No. 06-CV-5547 (DMC), 2007 WL 2814649, at *4 (D.N.J. Sept. 21, 2007) (noting that "this is a putative class action[,] and where there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight," particularly since "Plaintiffs constitute only six of the 587" putative class members) (quotation marks omitted).

Because most of the Defendants reside or are located outside of this District, principally in Los Angeles, and because the putative class members are located throughout the United States, the District of New Jersey is not more convenient for either party, while Los Angeles is a much more convenient forum for Defendants. (Hatton Decl. ¶¶ 5, 10, 11.)  Accordingly, the convenience-of-the-parties factor favors transfer to the Central District of California.[14]

3.    The Claims Arise in the Central District of California.

"The third private factor, where the claims arose, is the most critical to the Court's analysis.  The inquiry turns on which forum contains the center of gravity of the dispute, its events, and transactions." *Days Inn Worldwide, Inc. v. Ram Lodging, LLC*, No. 09-2275 (SDW), 2010 WL 1540926, at *6 (D.N.J. Apr. 14, 2010); *see also Jumara*, 55 F.3d at 879.  As noted above, Plaintiffs assert ERISA

---

[14] The convenience of Plaintiffs' counsel, two of whom have offices in New Jersey and the other in New York, is immaterial.  *Hardaway Constructors, Inc. v. Conesco Indus., Ltd*., 583 F. Supp. 617, 621 (D.N.J. 1983) ("It should be noted that the convenience of counsel has been held *not* to bear upon the decision to transfer.") (citing *Solomon v. Continental Life Ins. Co*., 472 F.2d 1043, 1047 (3d Cir. 1973)).

and IAA violations based on the construction and delivery of TLIC's retirement plan products and services.  All of the work involved in developing, pricing, marketing and managing these products and services, including the investment platforms, which lie at the center of this case, occurred in Los Angeles.  (Hatton Decl. ¶¶ 10-11.)  This factor tips the scales in favor of transferring the case to the Central District of California, and provides an additional reason to disregard Plaintiffs' choice of forum.  "When the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight . . . . Here, New Jersey has little connection to the operative facts of the lawsuit, which significantly limits the deference normally accorded to plaintiff's choice of forum."  *Thorlabs, Inc. v. Townsend Comms., LLC*, No. Civ. A. 03-4550(JCL), 2004 WL 1630488, at *3-*4 (D.N.J. June 30, 2004).

> 4.   The Relevant Documentary Evidence is Located in the Central District of California.

The ease of access to documentary evidence, the sixth private consideration listed in *Jumara*, also favors the Central District of California as the venue for this case.  Documents relating to the design and pricing of TLIC's investment product platforms and retirement plan services, and the plan sponsors' purchase of such products, will be a significant source of discovery.  Most of these documents including, among other things, plan pricing records, documents pertaining separate account charges and fees, plan documents, summary plan descriptions, group

annuity contracts, and Investment Committee meeting minutes and agendas, are created and stored at TLIC's Los Angeles office.  (Hatton Decl. ¶¶ 21, 24, 26-29.) It is anticipated that Plaintiffs, by contrast, will contribute very little documentary evidence regarding the conduct at issue.  Los Angeles, therefore, houses a much greater volume of discoverable evidence than New Jersey or any other location. Accordingly, the location of documentary evidence weighs in favor of transfer of venue to the Central District of California.

### C.     The Public Factors are Neutral as Between the United States District Court for the Central District of California and this Court.

In addition to the six private considerations discussed above, the Third Circuit considers several public facts when undergoing a change of venue analysis under 29 U.S.C. § 1404(a): (1) the enforceability of the judgment; (2) the practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879.

These public factors do not favor either forum.  For example, the statistics from the Federal Judicial Center show that judges in both courts manage very full dockets.  The most recently available statistics indicate that dockets in the Central

21

District of California are slightly more congested.  There, judges handled an average 395 cases in 2010 as compared to 327 cases per judge in 2010 in the District of New Jersey.[15]  But, publicly available data also show that the median time to trial is considerably faster in the Central District of California (18.5 months) than this District (31.6 months).[16]

Other public factors also appear neutral.  Both the Central District of California and the District of New Jersey will be able to enforce a potential judgment, the case arises exclusively under federal law, obviating local law concerns, and the practical considerations do not determine that trial in either venue could be easier or less expensive.  Ultimately, consideration of the public factors does not add meaningfully to the private considerations, which drive the analysis towards transferring this suit to the Central District of California.

---

[15] Table C, Cases Commenced, Terminated, and Pending 2009-2010, http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/June2010.aspx.

[16] Table C-5, Time Intervals From Filing to Disposition of Civil Cases, Terminated, by District and Method of Disposition, http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/June2010.aspx.

## V.   CONCLUSION

For the reasons stated above, Defendants request that the Court transfer the

case to the United States District Court for the Central District of California in

accordance with 28 U.S.C. § 1404(a).


Dated: May 16, 2011                     Respectfully submitted,

                                        *s/ Thomas R. Curtin*
                                        Thomas R. Curtin
                                        George C. Jones
                                        GRAHAM CURTIN
                                        A Professional Association
                                        4 Headquarters Plaza
                                        P.O. Box 1991
                                        Morristown, New Jersey 07962-1991
                                        Telephone:   (973) 292-1700
                                        Facsimile:   (973) 292-1767

                                        Robert N. Eccles (*Pro Hac Vice* pending)
                                        Gary S. Tell (*Pro Hac Vice* pending)
                                        O'MELVENY & MYERS LLP
                                        1625 Eye Street, NW
                                        Washington, D.C.  20006-4001
                                        Telephone:   (202) 383-5300
                                        Facsimile:   (202) 383-5414

                                        *Attorneys for Defendants*
                                        *Transamerica Life Insurance Company,*
                                        *Transamerica Investment Management,*
                                        *LLC, and Transamerica Asset*
                                        *Management, Inc.*