## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JACLYN SANTOMENNO, KAREN
POLEY, AND BARBARA POLEY, ET AL.

      PLAINTIFFS,

VS.

TRANSAMERICA LIFE INSURANCE
COMPANY, TRANSAMERICA
INVESTMENT MANAGEMENT, LLC,
AND TRANSAMERICA ASSET
MANAGEMENT, INC.,

      DEFENDANTS.

**Civ. A. No. 2:11-cv-736 (ES)(CLW)**

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS

---

SZAFERMAN, LAKIND
 BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Tel: (609) 275-0400
Fax: (609) 275-4511
Attorneys for Plaintiffs

LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Tel: (212) 605-6200
Fax: (212) 605-6290

Robert L. Lakind, Esquire
Arnold C. Lakind, Esquire
Moshe Maimon, Esquire
Danielle Disporto, Esquire
    On the Brief

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The Investment Option Selection Process . . . . . . . . . . . . . . . . . . . . . 2

    B.   The Fees Charged to Participants and Sponsors . . . . . . . . . . . . . . . . 2

    C.   TLIC's Continuing Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.   Overview of ERISA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    E.   Overview of IAA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        BY VIRTUE OF MAINTAINING PLAN ASSETS IN A
        SEPARATE ACCOUNT, PROVIDING INVESTMENT
        ADVICE, AND EXERCISING DISCRETION TO ALTER
        ITS COMPENSATION, TLIC IS AN ERISA FIDUCIARY
        WITH REGARD TO ITS COMPENSATION

        A.   Fiduciary Status Should Not Be Decided
            on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.   Plaintiffs' Complaint Plausibly Asserts
            That TLIC is an ERISA Fiduciary . . . . . . . . . . . . . . . . . . . . . 9

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    TLIC VIOLATED ITS ERISA DUTIES TO PLAINTIFFS

    A.    TLIC Violated its ERISA Duties of
          Prudence and Loyalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    B.    The Defendants Committed Prohibited
          Transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    C.    A Pre-Suit Demand Is Not Required
          Under ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

POINT III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    PLAINTIFFS HAVE PLED PLAUSIBLE
    CLAIMS UNDER THE IAA

    A.    TLIC Advised "Others" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    B.    TLIC Cannot Avail Itself of the
          Insurance Company Exemption . . . . . . . . . . . . . . . . . . . . . . 38

    C.    Plaintiffs Are The Recipients of
          TLIC's Advice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# TABLE OF AUTHORITIES

**Page**

Abrahamson v. Fleschner, 568 F.2d 862 (2d.Cir. 1977) . . . . . . . . . . 36, 37, 43, 44

Adkins v. John Hancock Mut. Life Ins. Co.,
    957 F. Supp. 211 (M.D. Fl. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 34

Bd. of Trs. Of Bricklayers v. Wettlin Assoc. Inc.,
    237 F.3d 270 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 14, 21

Beye v. Horizon BC/BS of N.J.,
    568 F. Supp. 2d 556 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Boeckman v. A.G. Edwards, Inc.,
    461 F. Supp. 2d 801 (S.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Braden v. Walmart Stores, Inc.,
    588 F.3d 585 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 9, 26, 27, 28, 33, 35

Brink v. DaLesio,
    667 F.2d 420 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Charters v. John Hancock Life Ins. Co.,
    583 F. Supp. 2d 189 (D.Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . . 11, 21, 25

Charters Plus, Inc. v. Hartford Finance Svs. Group Inc.,
    No. 3:06-cv-01835, 2007 WL 3124733 (D.Conn. Oct. 23, 2007) . . . . . . . 25

Coan v. Kaufman,
    457 F.3d 250 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

Diduck v. Kaszycki & Sons Contractors, Inc.,
    874 F.2d 912 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Ed Miniat, Inc. v. Global Life Ins. Group, Inc.,
    805 F.2d 732 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20, 21, 25

F.H. Krear & Co. v. Nineteen Named Trustees,
    810 F.2d 1250 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Goldenberg v. Indel, Inc.,
    741 F. Supp. 2d 618 (D.N.J. 2010) . . . . . . . . . . . . . . . . . . . . . 27, 29, 32, 44

Goldstein v. SEC,
    451 F.3d 873 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42, 43

Great West Life v. Knudson,
    534 U.S. 204 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Haddock v. Nationwide Fin. Servs., Inc.,
    262 F.R.D. 97 (D.Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Haddock v. Nationwide Fin. Servs., Inc.,
    419 F.Supp. 2d. 156 (D.Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,
    530 U.S. 238 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Hecker v. Deere & Co.,
    556 F.3d 575 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 32

In re AEP ERISA Litig.,
    327 F.Supp.2d 812 (S.D. Ohio 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

In re Regions Morgan Keegan ERISA Litig.,
    692 F. Supp. 2d 944 (W.D. Tenn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Udell,
    454 F.3d 180 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,
    579 F.3d 220 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,
    57 F.3d 1255 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Unisys Savs. Plan Litig.,
    74 F.3d 420 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IT Corp. V. Gen. Am. Life Ins. Co.,
    107 F.3d 1415 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Jama v. Immigration & Customs Enforcement,
    543 U.S. 335 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.,
    534 U.S. 124 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

John Hancock Mut. Life Ins. Co. v. Harris Trust and Savs. Bank,
    510 U.S. 86 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Jones v. ABN Amro Mortg. Group, Inc.,
    606 F.3d 119 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kayes v. Pacific Lumber Co.,
    51 F.3d 1449 (9th 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Mack Boring & Parts v. Meeker,
    930 F.2d 267 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Marks v. Indep. Blue Cross,
    71 F. Supp. 2d 432 (E.D. Pa. 199) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Midwest Cmty Health Serv., Inc. v. Am. United Life Ins. Co.,
    255 F.3d 374 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25

Moeckel v. Caremark Rx. Inc.,
    385 F. Supp. 2d 668 (M.D. Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . 36

Pension Fund Mid Jersey Trucking Indus. Local 701 v. Omni
    Funding Group, 731 F. Supp. 161 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . 23

Pension Fund v. Nationwide Life Insurance Co.
    783 F.Supp. 899 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Procacci v. Drexel Burnham Lambert, Inc.,
    C.A. No. 89-0555, 1989 WL 121984
    (E.D. Pa., Oct. 16, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Prudential Life Ins. Co. of Am. v. SEC,
    326 F.2d 383 (3d Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 38, 41, 43

Reich v. Compton,
    57 F.3d 270 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Renfro v. Unisys Corp.,
    No. 07-2098, 2010 WL 1688540
    (E.D. Pa. Apr. 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Santomenno v. John Hancock Life Ins. Co.,
    Civ. A. No. 1655, 2011 WL 2038769
    (D.N.J. May 23, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 35, 36

Schulist v. Blue Cross of Iowa,
    717 F.2d 1127 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Seaway Food Town, Inc. v. Med. Mut. of Ohio
    347 F.3d 610 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

SEC v. Capital Gains Research Bureau, Inc.,
    375 U.S. 180 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

SEC v. Variable Annuity Life Ins. Co. of Am.,
    359 U.S. 65 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

S.E.C. v. Wash. Inv. Network,
    475 F.3d 392 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 43

Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983) . . . . . . . . . . . 24, 25

Sereboff v. Mid Atlantic Medical Serv.,
    547 U.S. 356 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Stanton v. Shearson Lehman/ Am. Express,
    631 F. Supp. 100 (N.D. Ga. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Struble v. NJ Brewery Employees' Welfare Trust Fund,
    732 F.2d 325 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Thomas, Head & Greisen Employees Trust v.l Buster,
    24 F.3d 1114 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tibble v. Edison Int'l,
    Civ. A. No. 07-5359, 2010 WL 2757153
    (C.D. Cal. Jul. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Tr. of Laborers Local No. 72 Pension Fund v. Nationwide Life Ins. Co.,
    783 F. Supp. 899 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Varity Corp. v. Howe,
    516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Woods v. S. Co.,
    396 F. Supp. 2d 1351 (N.D. Ga. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wright v. Or. Metallurgical Corp.,
    360 F.3d 1099 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Statutes**

ERISA §3(21) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ERISA §401(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ERISA §404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ERISA §404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

ERISA §406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ERISA §406(b)(1) and (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

ERISA §502(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IAA §202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 39

IAA §203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38, 41

IAA §208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

### Federal Rules of Civil Procedure

Fed.R.Civ.P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

### Code of Federal Regulations

29 C.F.R. §2509.96-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

29 C.F.R. §2510.3-21(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 C.F.R. §2510.3-101(h)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R. §2550.401c-1(d)(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R §2550.408(b)-2(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### Other Authorities

40 Fed. Reg. 50842 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

75 Fed. Reg. 65268 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

DOL Adv. Op. 94-35A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

DOL Adv. Op. 2005-22A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Conf. Rep. 93-1280 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Rep. 11-686(I),
    111th Cong. 2d Sess., 13 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

SEC No. Action Letter PALIO (Jan. 3, 1971) . . . . . . . . . . . . . . . . . . . . . . . . 39

SEC No Action Letter Zenkyoren Asset Mgmt. of Am. Inc.,
    (June 30, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Plaintiffs, Jaclyn Santomenno (Santomenno), Karen Poley (K. Poley) and Barbara Poley (B. Poley),  in response to the motions of Defendants, Transamerica Life Insurance Company (TLIC), and its affiliates, Transamerica Investment Management, LLC (TIM) and Transamerica Asset Management, Inc. (TAM), to dismiss Plaintiffs' Complaint.

Counts I to VII of Plaintiffs' nine count complaint arise under the Employee Retirement Income Security Act of 1974 (ERISA) and allege the Defendants extracted impermissible fees from group annuity contracts (GAC) issued by TLIC to small and medium sized businesses in connection with employee retirement plans. Counts VIII and IX arise under the Investment Advisers Act of 1940 (IAA) and allege that TLIC rendered investment advice without registering with the Securities and Exchange Commission (SEC).

## STATEMENT OF FACTS

TLIC  operates small and medium size 401(k) plans (Plaintiff Plans)  through GACs (C¶94).[1]  K. and B. Poley are participants in one of these plans, the QualCare Alliance Networks Inc., Retirement Plan (Qualcare Plan)(C¶4). Santomenno, until December of 2010, was a participant in another Plaintiff Plan, the Gain Capital Group, LLC 401(k) Plan (Gain Plan) (C¶5).  As participants in these Plans, Plaintiffs

---

[1] "C" refers to Plaintiffs' Complaint.

acquired interests in "investment options" offered by TLIC and administered by TLIC and in some cases, its affiliates, TAM and TIM.

## A.  The Investment Option Selection Process

The first step in the investment selection process is the construction of an investment menu by TLIC. This menu, which TLIC calls its Partner Series III Menu, consists of 170 investment options (C¶¶12-13; 240-2). From this menu, a smaller menu of investment options is selected for each Plaintiff Plan (C ¶242).

TLIC advises each sponsor on how best to construct the smaller menu by providing its "Transamerica Investment Monitor (TIM)," which it describes as "our [TLIC] proprietary comprehensive due diligence process for selecting...the investment choices offered for your retirement plan" (C ¶181). In addition, TLIC encourages employers to select certain portfolios of investment options, known as "Transamerica's models" (C¶157, DecRL¶2Ex A).[2] Those employers who select one of these model portfolios receive a "Fiduciary Warranty" (C ¶158).

## B.  The Fees Charged to Participants and Sponsors

TLIC refers to each investment option it offers to Plaintiffs as a "separate account" investment option (C¶19). Each account has its own "Expense Ratio," which is used to compute the fees which participants pay for investing in a particular

---

[2] "DecRL" refers to the Declaration of Robert Lakind

investment option (C¶229). Plaintiffs' claims are limited to the fees they were charged on investments into the TLIC investment options. Each Plan pays additional fees, including, among others, an annual contract asset charge (Defense Exhibits pp. (DE)[3] 1187, 1225, 1306, 1323, DecRL¶3, Ex.B p.2), record keeping, distribution, enrollment, consulting, de-conversion (i.e., termination) fees (DE 1181-82; 1186-87) and contract discontinuance fees (1226, DecRL¶3, Ex.B p2).

### C.    TLIC's Continuing Responsibilities

Once a Plan's investment menu is established, TLIC collects participant deposits and places them in a "separate account." Thereafter, TLIC provides investment advice to participants, monitors investment performance for the benefit of participants, and exercises its discretion to alter its own compensation.

### D.    Overview of ERISA Claims

**Counts I and II:** One of the categories of separate account investment options, which represent the majority of the investment options, consist of pass-through vehicles: These separate accounts invest solely in an underlying mutual fund (C¶21). TLIC acknowledges that the performance of each separate account mimics that of the underlying mutual fund:

---

[3] The Defendants did not number their exhibit pages. All page references are to the page numbers inserted by the ECF system on the top right corner.

The separate account...invest[s] in another underlying fund to make up your investment. Therefore the units of the separate account function and perform in the same way shares would in a mutual fund (C¶253 ).

The "Expense Ratio" for this pass-through category equals the sum of the fees of the "underlying mutual fund" plus, for the majority of the investment options, an additional fee of "approximately 75 basis points ["bps"]..." (Db8; C¶272).   For example, for the separate account investment option entitled the "Vanguard Total Stock Market Index Ret Opt," TLIC discloses the "Expense Ratio" as being  93bps (C ¶246).  The mutual fund that underlies this investment option charges the  public a fee of 18bps (C ¶246).  TLIC generally does not separately disclose the fees charged by the underlying mutual fund. Thus, the investor is unaware that TLIC's charge is four times that of the underlying fund.

Since Plaintiffs only receive an investment in a mutual fund, their fee should not exceed the fee charged by that fund (C¶260).  As stated by the SEC:

> [T]he Division and other entities have questioned whether variable annuity issuers [insurance companies] should be permitted to deduct asset based charges...on a basis different from that required of mutual funds (C ¶258).

Count II differs from Count I only insofar as Count II is addressed to the subset of investment options in Count I for which TLIC identifies the portion of the separate account's fee that is in excess of the fees charged by the underlying mutual fund as its "Investment Management Charge" (C¶266).

Since (i) TLIC is not a registered investment adviser, (ii) the underlying mutual funds' advisers   (who register with the SEC) render all of the necessary investment advice to the mutual fund (Plaintiffs' also pay for these services) and (iii) Plaintiffs' investments only result in an investment in a mutual fund, the investment management services TLIC renders at the separate account level are unnecessary (C¶¶266-80).

**Count III:** TLIC requires the mutual funds, that are independent of TLIC, to remit a portion of each participant's investment back to TLIC.  These "Revenue Sharing Payments" (C¶¶281-85) must, as a matter of law, be used for the benefit of Plan participants.  In order to "satisfy" that obligation, TLIC has manufactured an illusory "Investment Management and Administrative Charge" (C¶¶281-94), which it claims to defray by retention of the Revenue Sharing Payments. Since investment management is handled by the advisor to the underlying mutual fund, TLIC provides no investment management services and the Investment Management fee component is illusory (C¶¶274-76).

The Administrative Charge is excessive.  As noted above, the sponsors pay a number of fees characterized as administrative.  Participants also pay the underlying mutual funds fees, which include an "Other Expense"[4] charge, which covers all of the

---

[4]  According to the SEC the "Other Expense" fee of a mutual fund pays for "shareholder service expenses...; custodial expenses; legal expenses; accounting

fees for the provision of administrative services for the mutual fund. Since the sole

benefit of an investment in the separate account is an investment in a mutual fund, the

underlying fund's "Other Expense" covers all of the necessary administrative services

needed on account of that investment (C¶291).

Thus, the "Investment Management and Administrative Charges" are

unnecessary and fictitious. They are assessed to create the impression that

participants are receiving a reduced fee on account of TLIC's receipt of the Revenue

Sharing Payments. Since the Revenue Sharing Payments did not benefit Plan

participants, their retention by TLIC violates ERISA §§404(a) and 406(b).

**Count IV:** Several of the funds underlying the separate accounts are affiliated

with TLIC and employ TIM or TAM as their adviser (TLIC affiliates) (C¶¶296-97).

By paying advisory fees to these affiliated entities, TLIC committed a prohibited

transaction and violated ERISA §§406(b)(1) and (3).

**Count V:** Mutual funds have several share classes. Each share class charges

a different amount of fees, but invests in the same pool of securities (C¶¶302-05).

Thus, the share class with the lowest fees (generally referred to as the institutional

share class) provides the largest return (C¶305). TLIC has the ability to access, on

investors' behalf, the lowest priced share class of the mutual funds that underlie a

_____

expenses; ...and other administrative expenses" (DecRL¶4ExC p5).

separate account, but does not do so (C¶¶302-19). Instead, TLIC purchases more expensive share classes which facilitate its receipt of Revenue Sharing Payments, supposedly used to offset the illusory Investment Management and Administrative Charges. This conduct is alleged to violate ERISA §404.

**Counts VI and VII:** While most of the separate account investment options invest in mutual funds, some are used as pass through vehicles to invest in collective investment trusts (C¶321). Other separate accounts function as the ultimate investment (i.e., the separate account acts like a mutual fund)(C¶323), and are called "Traditional Separate Accounts" (C¶¶322-3). Collective investment trusts and Traditional Separate Accounts generally charge lower fees than the institutional share class of comparable mutual funds (C¶326). However, for its collective investment trusts and Traditional Separate Accounts, TLIC charged fees that exceeded the institutional share class of comparable mutual funds.(C¶¶330-35).

Counts VI and VII contend that TLIC either (i) failed to use its economic leverage (C¶¶ 318 and 335) to obtain  fees that are typical in the open market for these investment products or (ii) TLIC did in fact obtain these lower fees from the advisers to these investment products, but failed to pass these savings along to Plan participants. Thus, TLIC violated ERISA §§404 and 406 (C ¶¶338-40).

**E.    Overview of IAA Claims**

TLIC entered into a contract with Plaintiffs pursuant to which it  provided

investment advice to Plaintiffs and charged them an "Investment Management Charge" for these advisory services  (C¶353; see supra at pp 4-6).  (For an example of how TLIC disclosed this fee/service see DecRL Ex.¶5 Ex D (see "Notes" section in lower left hand corner of exhibit pages)).  Counts VIII and IX allege that TLIC violated the IAA because it rendered investment advice and charged fees for that advice without registering with the SEC.

**ARGUMENT**

**Point I**

**BY VIRTUE OF MAINTAINING PLAN ASSETS IN A SEPARATE ACCOUNT, PROVIDING INVESTMENT ADVICE, AND EXERCISING DISCRETION TO ALTER ITS COMPENSATION, TLIC IS AN ERISA FIDUCIARY WITH REGARD TO ITS COMPENSATION**

**A.     Fiduciary Status Should Not Be Decided on a Motion to Dismiss**

TLIC alleges that Plaintiffs' claims should be dismissed because it is not an ERISA fiduciary (Db14 to Db27).  However, a determination of fiduciary status should await the completion of discovery because, when assessing fiduciary status, courts employ a functional test that examines whether the entity has performed the tasks listed in ERISA §3(21)(A). As noted in In re Unisys Corp. Retiree Medical Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009). Further:

> [T]he determination of whether a party is an ERISA fiduciary is a 'functional one', the determination will not typically be resolved at the motion to dismiss

stage . . . [but rather], the Court will be able to undertake the fiduciary duty inquiry only after full discovery.

Beye v. Horizon BC/BS of N.J., 568 F. Supp. 2d 556, 576 (D.N.J. 2008). See also, cases collected at Woods v. S. Co., 396 F. Supp. 2d 1351, 1365 (N.D. Ga. 2005).

Unless the Court can conclude as a matter of law that TLIC is not an ERISA fiduciary, this motion should be denied. Bd. of Trs. of Bricklayers v. Wettlin Assoc. Inc., 237 F.3d 270, 273 (3d Cir. 2001).

The reluctance to determine fiduciary status at the pleading stage derives from the recognition that public information only reveals some of those tasks performed by a claimed fiduciary. Since, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," Braden v. Walmart Stores Inc., 588 F.3d 585, 598 (8th Cir. 2009), resolution of fiduciary status should not be made prior to discovery.

### B. Plaintiffs' Complaint Plausibly Asserts That TLIC is an ERISA Fiduciary

#### 1. Introduction

An assessment of fiduciary status should be informed by the Supreme Court's recognition of Congress' desire to impose "fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive." John Hancock Mut. Life Ins. Co. v. Harris Trust and Savs. Bank, 510 U.S. 86, 96 (1993). To fulfill this goal, the term "fiduciary" is to be broadly construed. In re Unisys Corp.

Retiree Medical Ben. ERISA Litig. 57 F.3d 1255, 1261 fn 10 (3d Cir. 1995).

TLIC essentially advances three arguments in support of its effort to dismiss Plaintiffs' Complaint. The first argument is inapposite; the second is based upon a misapprehension of fact; and the third misconstrues the law.

First, TLIC argues that it has no fiduciary responsibilities with regard to aspects of its compensation which were disclosed and negotiated with Plan sponsors (Db2; Db13 to Db22; Db26 to Db27). First, TLIC ignores the fact that it provided investment advice in the construction of the Plans' investment menus. Second, once TLIC placed participant investments in "separate accounts," it assumed fiduciary responsibilities over those investments. Third, after its retention, TLIC provided investment advice and, on that basis, is a fiduciary. Thus as the services TLIC provided gave it TLIC authority/control over factors that affect its compensation, TLIC was a fiduciary with regard to that compensation:

> [A]fter a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.

F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2[d] 1987). See also Charters v. John Hancock Life Ins. Co., 583 F.Supp. 2d 189, 197 (D. Mass. 2008) and Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F2d 732, 737 (7th Cir. 1986) (insurer a fiduciary because contract grants the insurer discretionary authority

to effect its compensation ).

Second, TLIC argues that it " played no fiduciary role in the selection of the investment lineup" (Db24).   This argument ignores TLIC's admission that it provides its "proprietary...process for selecting...the investment choices offered for your retirement plan" (C¶181) and its promise that a TLIC "financial advisor can help...select the investments...that meet the client's specific needs..." (DecRL¶6Ex.E). Further, Plan sponsors, desiring the protection of TLIC's fiduciary warranty, were required to select from one of the "Transamerica models" (C¶157) to serve as the Plan's investment menu. TLIC promised that these menu/models satisfied ERISA's requirements (DE1373).  Defendants do not, in their brief, argue that these are not fiduciary functions; they simply ignore them. Moreover, for numerous reasons, irrespective of TLIC's involvement in the selection process, it is a fiduciary to the Plaintiff Plans.

Third, Defendants maintain that they cannot be a fiduciary with regard to participant expenses unless they are alleged to have exercised the discretion to increase those expenses.  That is precisely what TLIC has done. It has exercised its discretion to increase participant expenses.  Moreover, this is but one alternative basis, in addition to placing Plan assets in separate accounts and providing investment advice on which to base TLIC's fiduciary status.

Thus, on any one of three independent grounds, TLIC is an ERISA fiduciary.

First, when an insurance company holds Plan assets in separate accounts, it is a fiduciary for those assets. Second, when a party provides investment advice, it assumes fiduciary status. Third, when a party exercises discretion to adjust its compensation earned on Plan assets, that party "becomes an ERISA fiduciary with respect to that compensation." F.H. Krear & Co., 810 F.2d at 1259.

## 2. ERISA §3(21)(A) - the Definition of "Fiduciary"

Under ERISA §3(21)(A), a person may be an ERISA fiduciary if:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or **exercises any authority or control respecting management or disposition of its assets**, (ii) he **renders investment advice for a fee**..., direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he **has any discretionary authority** or discretionary responsibility **in the administration of such plan**. (Emphasis added).

TLIC improperly circumscribes the test for fiduciary status when it asserts that "because Plaintiffs do not allege that TLIC...exercised any discretion over the selection of...investment options, TLIC did not function as a fiduciary..."(Db25-6).

Under ERISA §3(21)(a)(i), one may be a fiduciary either by exercising discretion or more broadly, "exercising any authority or control":

A significant difference between the two clauses [of ERISA 3(21)(A)(i)] is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word "discretionary" is conspicuously absent when the text refers to assets. This distinction is not accidental-it reflects the high standard of care trust law imposes upon those who handle money or assets on behalf of another.

Bd. of Trs. of Bricklayers, 237 F.3d at 273 (internal citations omitted).  In that case, the defendant entered into a contract to be the repository for the union's retirement plan's assets.  That contract provided for the payment of repository fees which defendant kept when the union terminated its services.  Plaintiff sued to recoup those fees and the defendant responded (like TLIC) that "it was not a fiduciary because it acted in a ministerial capacity, exercised no discretion...."  Id at 273.  The Court of Appeals held the defendant could be a fiduciary if it "exercised any authority or control respecting management or disposition of [Plan] assets", noting the "statute treats control over the cash differently...."  Id. at 274 (internal quotations omitted).

In addition, under ERISA §3(21)(a)(ii), one who renders investment advice is a fiduciary, and under ERISA §3(21)(a)(iii), the retention of discretion to administer a plan, confers fiduciary status.

### 3.   TLIC is an ERISA Fiduciary With Regard to its Compensation Because the Plaintiffs' Plans' Assets Are Held In Separate Accounts

TLIC is a fiduciary with respect to the fees which it charges on Plaintiffs' investments because TLIC holds Plaintiffs' assets in separate accounts (C¶149-51).  (See ERISA §401(c)(5) and 29 C.F.R. §2550.401c-1(d)(2)(c)).  When it enacted ERISA, Congress mandated that "insurance companies are to be responsible under the general fiduciary rules with respect to assets held under separate account[s]...and the assets of these contracts are to be considered as plan assets."  H.R. Conf. Rep.

93-1280, 5077 (Appendix ("App.") A). See John Hancock Mut. Life Ins. Co. 510 U.S. at 96 (1993) (insurer was a fiduciary for funds in GACs contracts because it retained the authority to set prices and the participant bore the risk of fluctuations in value) and Tr. of Laborers Local No. 72 Pension Fund v. Nationwide Life Ins. Co., 783 F.Supp. 899, 905 (D. N.J. 1992) (Plan funds deposited in separate account are subject to ERISA fiduciary duty) (Mack Boring & Parts v. Meeker, 930 F.2d 267, 275 (3rd Cir. 1991); Adkins v. John Hancock Mut. Life Ins. Co., 957 F.Supp. 211, 214-15 (M.D.Fl. 1997); Midwest Cmty Health Serv., Inc. v. Am. United Life Ins. Co. 255 F.3d 375, 377-78 (7th Cir.); 29 C.F.R. 2510.3-101(h)(iii)(assets in insurer's separate account are plan assets); and Department of Labor ("DOL") Advisory Opinion (DOL Adv. Op.) 2005-22A (App. B). Cf Bd. of Trs. of Bricklayers, 237 F.3d at 274.

Once Participants' funds were deposited into separate accounts, TLIC became a fiduciary with regard to the use of those funds and was responsible for ensuring that the fees paid from those funds did not violate ERISA §§404 or 406. See H.R. Conf. Rep. 93-1280, 5077(App. A) and Mack Boring 930 F.2d at 275 (insurance company is responsible under "general fiduciary rules with respect to assets held under separate account"). The fact that the magnitude of those fees may have been set at the outset of TLIC's retention is irrelevant. Once deposits were made into a separate account, TLIC assumed fiduciary duties with regard to those deposits and it was required to discharge those duties prudently and for the exclusive benefit of Plan participants.

By charging excessive fees and engaging in prohibited transactions, TLIC failed to fulfill its fiduciary responsibilities with respect to Plan assets entrusted to it.

### 4.   TLIC Is a Fiduciary Because of It Provides Investment Advice

TLIC ignores the significance of its investment advice, relegating it to a single reference in a footnote (Db15 fn21). Under ERISA §3(21)(A)(ii), an entity is a fiduciary if it "renders investment advice for a fee..., direct or indirect..."   TLIC's disclosures state:

> **Investment Choice Review and Selection Process**
> Transamerica considers reviewing performance a critical component of the selection and monitoring process....   TIM [the TLIC Investment Monitor] examines six different criteria: ...
>
> ●   Fees & Expenses... (C¶181)

TLIC's calls its monitoring program the "Fiduciary Management Program." (A copy of this program is attached to the DecRL ¶7 Ex F).

Using this program, TLIC renders investment advice, regarding a plan's investment options, for a fee.[5]   It does so by assigning a numerical score to six attributes of the investment option and then assigning an overall score. Id at 2.   A criteria's "Quantitative Analysis Score," can range from 1 to 5, with 5 being the

---

[5]   See 29 C.F.R. 2509.96–1, Interpretive Bulletin; fn. 3 (App. C) (fees "should...include all fees or other compensation incident to the transaction...."); see also 40 Fed. Reg. 50842 (App. D) (the fees may "include, for example, brokerage commissions, mutual fund sales commissions, and insurance sales commissions").

highest score. Id. at 2,17.  One of the attributes evaluated by TLIC is the separate account investment option's "Fees & Expense." Id This evaluation entails comparing investment option fees to the " total operating expenses of the separate account and respective peer group..." Id at 19.  Thus, TLIC evaluates its own fees.[6]

By way of example, TLIC awarded the fees and expenses charged by its Vanguard Total Stock Market Index Ret Opt, separate account investment option  a top score of "5", id at 7, even though an investment in the Vanguard Total Stock Market Index Ret Opt separate account results in a participant charge of 93bps.  The identical underlying mutual fund charges the public a fee of 18bps (C¶246).

TLIC also renders investment advice to Plaintiffs through its "AdviceSolutions" program (C¶¶185-202). Once logged into this website, a participant inputs specific data, including whether the participant smokes, their expected retirement age and salary (C¶¶186-91). The program processes the data and advises the participant which TLIC investment options to choose and the amount that should be invested in each (C¶¶195-98).

TLIC does not dispute that  this program constitutes the rendering of investment advice for a fee, which makes it a fiduciary under ERISA §3(21)(A)(ii).

---

[6]  TLIC performs this service quarterly and, for every investment option on a Plaintiff Plan's menu. TLIC communicates the results to each Plaintiff Plan in an "Investment Scorecard." This service commences, **after** TLIC is retained by a plan.  DecRL ¶7 Ex F.

Rather it claims that the program is exempt under 29 C.F.R. §2509.96-1(d)(3) (Db 15 fn. 21). TLIC errs. 29 C.F.R. §2509.96-1(d)(3) states:

> Asset Allocation Models. Information and materials (e.g. pie charts, graphs) that provide a participant...of asset allocation models of **hypothetical individuals...**where [the regulation then lists four requirements a program must satisfy to be exempt from ERISA 3(21)(A)(ii).]

TLIC is not providing graphs and charts of asset models of hypothetical individuals. TLIC's interactive program advises the specific investments a participant should make, in light of their needs. The regulation goes on to list other requirements, which implicate factual inquiries (the presence of certain disclosures, etc.), none of which TLIC claims to have satisfied.

The ERISA regulation on investment advice, 29 C.F.R. 2510.3-21(c), states:

> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii)....

> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities...and;

> (ii) Such person either directly or indirectly...
>            *      *      *      *
> (B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition.

TLIC meets this test. A party is a fiduciary if

he provided information to the Trustees as to the value of various deed
of trust notes by virtue of yield calculations, mortgage analyses, **and
price information . . . .** (Emphasis added).

Thomas, Head & Greisen Employees Trust v. Buster, 24 F.3d 1114, 1120 (9th Cir.

1994).

The Department of Labor affords an exemption to those who provide

investment advice only if certain criteria are satisfied:

[T]he provision of certain information and data to assist a plan fiduciary's
selection or **monitoring** of such plan investment alternatives will not be treated
as rendering investment advice [i.e., a fiduciary under ERISA 3(21)(A)(ii)] **if
the person providing such information or data discloses in writing to the
plan fiduciary that the person is not undertaking to provide impartial
investment advice.**

        \*             \*            \*

In some cases, consultants receive compensation from the investment
companies whose products they recommend to the plan, which could lead them
to steer plans towards products for which they receive additional
compensation. These arrangements can be harmful to...participants, because
the plan may pay excessive fees for the...services which could lower returns.
Participants in...401(k) plans are especially vulnerable ....(Emphasis added)

75 Fed. Reg. 65268, 65270-271 (App. E).

There is no suggestion that TLIC made the required written disclosure to a plan

fiduciary.   TLIC's fiduciary program is "not undertaking to provide impartial

investment advice." It provides "comprehensive ... process for ... monitoring the

investment choices offered for your...plan," (C¶181), upon which Plaintiffs can rely

("our expertise enables you to focus on your business") (C¶96).

Most telling, TLIC charges an Investment Management Charge (DecRL ¶¶5 and 7, Ex. D and F; C¶¶266-80).   Investment managers are fiduciaries, ERISA §3(21)(A)(ii); TLIC is a fiduciary.

### 5.    TLIC is an ERISA Fiduciary Because it Exercised its Authority in Ways That Increased Its Compensation

TLIC argues that it is not a fiduciary because "the plan sponsors, not TLIC . . . caused the Plans to purchase TLIC's services " (Db13).  Plaintiffs do not contend that TLIC is a fiduciary simply because its services were purchased. Rather, Plaintiffs argue that the terms of that retention afforded TLIC  authority over factors which affected its compensation and, therefore, it assumed fiduciary status with regard to that compensation:

> When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him. Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation.
>
> *          *          *
>
> On the other hand, after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.

F.H. Krear & Co., 810 F.2d at 1259.   Accord Ed Miniat, Inc. v. Global Life Ins. Group, Inc., 805 F2d 732, 737 (7th Cir. 1986) ("when a contract, however, grants an

insurer discretionary authority, even though the contract itself is the product an arms length bargain, the insurer may be a fiduciary").

Here, TLIC used its discretion to adjust the fees charged on the investment options, to monitor and report on all aspects of the investment options, including fees, and to determine the amount and disposition of Revenue Sharing Payments.   The exercise of this authority, singly or in combination, which impacted compensation conferred fiduciary status on TLIC with regard to compensation.

### a.    TLIC's Authority to Adjust Fees

It is undisputed that TLIC has the authority to change the fees on investment options:

> We reserve the right to change the Investment Management Charge or the Administrative Charge, upon...at least 30 days [notice]. (DE 1270, 1320)

> ...Transamerica reserves the right to:..Assessing a transfer fee or redemption fee for a particular Contract Account [i.e. investment option].... (DE 1282)

If an agreement gives an insurance company control over factors that determine its compensation, it is an ERISA fiduciary with respect to adjustments in that compensation. F.H. Krear & Co., 810 F.2d at 1259; Seaway Food Town, Inc. v. Med Mut. of Ohio, 347 F.3d 610, 619 (6th Cir. 2003) and Ed Miniat, Inc., 805 F.2d at 737. By retaining the authority to change the fees that it charged to Plaintiffs, TLIC is a

fiduciary. <u>See</u> <u>e.g.</u> <u>Charters</u>, 583 F. Supp. 2d at 198:[7]

> it is undisputed that Hancock retained sole discretion to change the maximum administrative maintenance charge at any time upon three-months prior written notice to Charters. That discretion was sufficient to make Hancock an ERISA fiduciary.

As alleged in the Complaint, TLIC had and exercised its discretion to alter its fees and is, with regard to the exercise of that discretion, a fiduciary (C¶169). Further, even without the benefit of discovery, Plaintiffs have evidence of TLIC altering its fees (DecRL¶8Ex.G).

### b.   TLIC's Monitoring Activities

By undertaking the responsibility to monitor the investment options and to render investment advice on all of their attributes, including fees, TLIC became a fiduciary with regard to those fees (C¶¶180-84) <u>see</u> <u>e.g.</u> <u>In re Regions Morgan Keegan ERISA Litig.</u> 692 F.Supp.2d 944, 957 (W.D.Tenn., 2010)(monitoring fees is a fiduciary responsibility, and fiduciary could be liable for excessive fees).

### c.   TLIC's Authority Over Revenue Sharing Payments

TLIC is also a fiduciary because it effected its compensation by retaining

---

[7] In <u>Charters</u>, the Court declined to rule on the issue of whether insurance companies are fiduciaries with respect to assets held in a separate account because it found defendant to be a fiduciary on other grounds and noted that "discretion [is] the touchstone of fiduciary status." <u>Id.</u> at 197. In the Third Circuit, proof of discretion is not required under the second clause of ERISA 3(21)(A)(i). <u>Bd. of Trs. of Bricklayers</u>, 237 F.3d at 273. Further, in <u>Charters</u>, the Court did not address the other authorities cited by Plaintiffs in this case. <u>See</u> <u>supra</u> at 14-15.

Revenue Sharing Payments on the pretext that these payments defrayed Investment Management and Administrative Charges, – – charges that were illusory. Insurance companies (like TLIC) that "pool...billions of dollar of retirement assets" and "leverage its position as...gatekeeper to those funds to extract revenue sharing payments...in exchange for giving the mutual funds the opportunity to be investment choices..." are fiduciaries. Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 107 (D. Conn. 2009) ("Haddock II"). See IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421(9th Cir. 1997) ("'Any' control over disposition of plan money makes the person who has the control a fiduciary....").

### d. TLIC's Investment Selection Process

TLIC is a fiduciary because it participates in the initial investment selection process and by providing a "fiduciary warranty." At the selection stage, TLIC provides advice on the relative merits of the investment options using the Transamerica Investment Monitor (TIM), which it describes as its "proprietary, comprehensive due diligence process for selecting and monitoring the investment choices offered for **your** retirement plan (C¶18)." It promises to assist sponsors in fulfilling their duty to select investment choices for each individual plan that will perform well. TLIC promises to "seek to identify managers and organizations that have the resources, processes and potential to deliver consistent performance over time." (C¶181). It represents that it "maintains the highest standards in selecting and

continually monitoring the investment choices offered for your retirement plan line-up." (C¶181). By providing particularized advice on investment selection, TLIC is a fiduciary. 75 Fed. Reg. 65268, 65270-271 (App. E)

It is also a fiduciary because it supplies a fiduciary warranty. In order to receive the fiduciary warranty, a plan sponsor:

> [M]ust select from Transamerica's models or...the investment choices [selected]...must at a minimum and at all times include at least one investment choice from each of the following....(DecRL¶2, Ex.A; C¶157)

An employer has an overwhelming incentive to obtain the protection offered by the warranty and include the TLIC models, irrespective of whether they are superior to other funds. TLIC's recommendations, with regard to which funds should be offered to participants are therefore rubber stamped by employers and, for that additional reason, TLIC is a fiduciary. See e.g.. Pension Fund Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group, 731 F.Supp. 161 (D.N.J. 1990); Stanton  v. Shearson Lehman/ Am. Express, 631 F.Supp. 100 (N.D. Ga. 1986) and Procacci v. Drexel Burnham Lambert, Inc., No. 89-0555, 1989 WL 121984 (E.D. Pa. Oct. 16, 1989) (App. F).[8]

---

[8] Under the warranty, TLIC "warrants...the Transamerica investment line-up...will meet the prudence requirement of section 404(a)(1)(B) of ERISA...."(DE 1373). Charging 401(k) participants excessive fees on their investments, violates this provision, e.g. In re Regions Morgan Keegan ERISA Litig, 692 F.Supp.2d at 956, and as TLIC represented its investment lineup satisfied ERISA §404(a)(1)(B), it is a fiduciary for the fees Plaintiffs are charged.

### e. TLIC's Cases are Distinguishable

TLIC advances several arguments to dispute its fiduciary status. Relying on Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009), it argues that it is not a fiduciary with respect to the terms of its retention, and because plan sponsors retained authority to reject Plan changes (Db16, Db19 and Db22). These arguments are irrelevant to the bases asserted here for fiduciary status. First, Plaintiffs do not assert that TLIC had fiduciary responsibilities with regard to the terms of its retention; they do assert that TLIC has fiduciary responsibilities because it held assets in a separate account, provided investment advice, and exercised delegated discretion to increase its compensation. F.H. Krear & Co. 810 F.2d at 1259.

As TLIC notes, both Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983), and Marks v. Indep. Blue Cross, 71 F.Supp.2d 432 (E.D.Pa 199), like Hecker, hold that a party does not act as a fiduciary when setting the terms of its retention (Db16). However, that assertion has nothing to do with the arguments Plaintiffs advance here. In none of those cases did the defendant employ a separate account, provide investment advice, or exercise authority to alter its fees. The Second Circuit, in F.H. Krear & Co. and the Seventh Circuit, which decided Schulist and Hecker, has repeatedly held that the retention of discretionary control after being hired confers fiduciary status. See Midwest Cmty Health Serv. Inc., 255 F.3d at 376 ("[w]e have twice held that an insurer's discretionary authority or control over group insurance

contracts purchased by employee benefit plans subjects the insurer to ERISA fiduciary standards") and Ed Miniat, Inc., 805 F.2d at 738 (insurer is an ERISA fiduciary because it could increase premium rates and thus "[t]he power exercised by...[it] does not appear to be qualitatively different from the ability to choose investments").  See also Charters, 583 F.Supp.2d at 197 (Schulist inapplicable due to power to change fee).  In none of the cases relied upon by Defendants did the claimed fiduciary have the authority retained by TLIC here.

Nor is Renfro v. Unisys Corp., No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) app. docketed No. 10-2447 (Db20), inconsistent with Charters, Plus Inc. v. Hartford Fin. Svs. Group, Inc., No.3:06-cv-01835, 2007 WL 3124733 *2-6 (D.Conn. Oct. 23, 2007) ("Hartford") (App.O) and Haddock. Renfro, rejected a claim of ERISA fiduciary status, alleged only under ERISA §3(21)(A)(iii), based on plaintiff's assertion that Fidelity could veto proposed changes to the investment lineup.  The Court found there was no effective veto power because the employer offered an alternative trust which afforded plaintiffs other investment options without Fidelity's approval.  Id at 4. Moreover, the power to veto a proposed change is less significant than the authority to unilaterally delete an investment option which contains participants' contributions, or the power to change fees and to share revenue.  Nor did that case involve a separate account or implicate investment advice.

TLIC also argues that Plaintiffs are required to plead that TLIC actually

exercised its authority.   By placing assets in a separate account, TLIC has the requisite control over those assets to be considered a fiduciary and it was incumbent upon TLIC to manage these assets prudently.   Moreover, Plaintiffs do allege that TLIC provided investment advice and that it altered its fees and diverted Revenue Sharing Payments.   Discovery will likely reveal other exercises of authority.   See Braden, 588 F.3d at 598 ("ERISA plaintiffs...lack the inside information necessary to make...their claims...unless...discovery commences").[9]

In another argument, TLIC claims, that because it provides thirty days notice of changes to its Investment Management and Administrative Charges, it is not a fiduciary (Db9).   Charters, involved a contract with a three month advance notice provision, and the Court still found the insurer to be a fiduciary. Id at 198. Furthermore, here, if TLIC elected to change the transfer or redemption fees which it charged, no advance notice was required (DE1233,1282,1297).   TLIC also fails to note that, if Plaintiffs reject a change and opts out of the TLIC plan, they are assessed a termination fee(DE 1226 and DecRL ¶3 Ex.Bp.2).   Thus, Plaintiffs are compelled to pay either the increased fee or the termination fee when TLIC changes its fee structure.

6.   **Summary**

---

[9]At this early stage, Plaintiffs have evidence TLIC amended its fees (DE 1289; DecRL ¶8 Ex G).  Discovery will likely reveal other changes.

In sum, TLIC placed Plan assets in separate accounts and therefore assumed fiduciary responsibilities with regard to those assets.  TLIC provided investment advice and, as such, is a fiduciary.  TLIC exercised its discretion to alter fees, report upon the performance of investment options, and divert Revenue Sharing Payments. TLIC provided a Fiduciary Warranty and operated the plans with its Fiduciary Management Program.  TLIC is a fiduciary.  It may not know disclaim liability for its actions.  "It is one thing to say 'we promise to act as a fiduciary, but we shall not be subject to the liabilities of fiduciaries to beneficiaries.'  That generally cannot be done."  IT Corp. v. General Am. Life Ins. Co. 107 F.3d 1415, 1419 (9th 1997)

## POINT II

### TLIC VIOLATED ITS ERISA DUTIES TO  PLAINTIFFS

#### A.    TLIC Violated its ERISA Duties of Prudence and Loyalty

ERISA's purpose, "to protect...employees, to enforce strict fiduciary standards," In re Unisys Savs. Plan Litig., 74 F.3d 420, 434 (3d Cir. 1996), are achieved by the imposition of duties of loyalty and prudence, ERISA §§ 404(a)(1)(A) and (B), and the preclusion of prohibited transactions. ERISA §406. Fiduciaries must act "solely in the interest of...participants," as ERISA fiduciary obligations "are the highest known to the law." Braden, 588 F.3d at 595 and 598.

As discussed in Plaintiffs' Statement of Facts, Counts I, II, IV, V and VI of the Complaint allege that TLIC breached its fiduciary duties by charging Plaintiffs

excessive fees on their investments into the TLIC investment options (Db13).
Excessive fee claims are actionable under ERISA §404(a). See e.g, In re Regions
Morgan Keegan ERISA Litig, 692 F. Supp. at 956; Braden, 588 F.3d at 595
("retirement plans of such size...have the ability to obtain institutional class shares of
mutual funds [cheapest share class]");   Boeckman v. A.G. Edwards, Inc., 461
F.Supp.2d 801,811 (S. D. Ill. 2006); Goldenberg v Indel Inc., 741 F.Supp.2d 618, 635
(D.N.J. 2010) ("Two funds could be identical....this would not justify the use of
one...inferior fund."); and Tibble v. Edison Int'l., 07-5359, 2010 WL 2757153,*30;
(C. D. Cal. Jul. 9, 2010) (App. P).

The claim in Count III, that alleges that TLIC's receipt of revenue sharing
payments violated ERISA §404(a), states a claim. See  Hartford, at *5 and Haddock
v. Nationwide Fin. Svs. Inc., ("Haddock I") 419 F.Supp. 2d. 156, 162  (D.Conn.
2006):

> Although Nationwide contends that it contracted with the mutual funds to
> provide services to the funds, a fact finder...could conclude...the contracts,
> were a guise for making payments to Nationwide or that Nationwide provided
> only nominal services....

Passing from their legal argument, TLIC raises a number of factual defenses
to Plaintiffs' claims, none of which should be resolved on a motion to dismiss.  For
example, TLIC contends that the Investment Management and Administrative charges
were not excessive because "Plaintiffs argument entirely ignores the myriad of

services that TLIC provides...." (Db18). In addition to the separate account Investment Management and Administrative charges, the Complaint alleges TLIC charges Contract Asset Charges and other fees which are duplicative.

TLIC's defense to receiving Revenue Sharing Payments also raises a factual issue. According to TLIC, "it used revenue sharing payments to offset the Investment Management....Charges. Those payments redounded to the...Plans...." (Db22). Even if this assertion were appropriate for consideration on a motion to dismiss, Plaintiffs allege that both charges were unnecessary or fictions created by TLIC so that it appeared to the Plaintiffs that they received a benefit on account of the receipt of the Revenue Sharing Payments (C¶¶266-77;281-95). Finally, the disclosure of an unlawful Revenue Sharing Payment (Db9) does not absolve Defendants of liability. See Haddock I, 419 F.Supp.2d at 163 and Hartford.

## B.    The Defendants Committed Prohibited Transactions

"Section 406(b) prohibits a plan fiduciary from engaging in... self -dealing." Reich v. Compton, 57 F.3d 270, 287 (3rd Cir. 1995). ERISA requires that 406(b) be "broadly construed and...liability be imposed even where there is no taint of scandal, no hint of self-dealing...." Id. at 288 (internal quotations omitted).

Counts I, II, III, IV, VI and VII, allege that TLIC committed prohibited transactions ("PT") under ERISA §§406(b)(1) and (3), by receiving fees from TLIC separate account investment options. Counts IV and VII are brought against TIM and

TAM, and arise under the same general theory.

The DOL and Courts have held that when assets of a plan are invested in investment vehicles, and a plan fiduciary (or an affiliate) receives fees from those investment vehicles, the fiduciary has committed a PT under ERISA §§406(b)(1) and (3). See Goldenberg, 741 F.Supp.2d at 633; and In Re Regions Morgan Keegan ERISA Litig., 692 F.Supp.2d at 959-60. See also, Prohibited Transaction Exemption ("PTE") 77-4 (App. G) (unless waived, payment of "investment management ...fee" to investment manager of a mutual fund, where the advisor to the fund is a plan fiduciary, is a PT.); DOL Adv. Op. 94-35A (App. H) (PTE 77-4 only applied (i) where plan was given a credit for fees it would otherwise pay in an amount equal to the fund's investment management fee and (ii) disclosures, not provided here, made); and DOL. Adv. Op. 93-13A (App. I ). Count III, which alleges TLIC's receipt of Revenue Sharing Payments was a PT, states a claim under ERISA §406(b)(1) and (3). Haddock I, 419 F.Supp.2d at 171; and Hartford *2-5.

TLIC first argues that Plaintiffs have failed to identify a "specific" transaction that is a PT (Db23). Clearly, the payment of fees from Plan assets to TLIC affiliates, TAM and TIM, is a specific transaction. Further, since the investment options offered by TLIC are considered independent of TLIC (See Prudential Life Ins. Co. v. SEC, 326 F.2d 383, 387 (3ᵈ Cir.1964) ("the fund is separable from the insurance company"), a prohibited transaction occurs when TLIC charges fees to the investment

options.  As the authorities cited above hold, when a plan fiduciary charges fees to funds that hold plan assets, it violates ERISA §406(b)(3).

Wright v Or. Metallurgical Corp., 360 F.3d 1099, (9th Cir. 2004), on which TLIC relies, is distinguishable. There, plaintiffs alleged a PT occurred in a plan established to hold company stock because the fiduciary, following the law, did not sell the plan's company stock Id at 1101.  Thus, no transaction occurred.  Here transactions occurred when TLIC charged fees to Plaintiffs.

Next TLIC argues that it had no fiduciary responsibilities because the Plan sponsors constructed the investment menu.  However, TLIC offered investment options that, if chosen, precipitated a PT.  Second, TLIC was a fiduciary by virtue of placing assets in a separate account and providing investment advice in the selection process and thereafter;  and it was a fiduciary by virtue of the breadth of authority which it retained.  It was incumbent upon TLIC to use that authority to prevent abuse of the plan assets by allowing a PT.  Even if payments to TIM and TAM were authorized, ERISA explicitly provides that

> any provision in an agreement or instrument which purports to relieve a
> fiduciary from responsibility or liability for any responsibility, obligation or
> duty under [ERISA] shall be void against public policy.

29 U.S.C. §1110(a).  Finally, knowledge is not an element of a PT claim.

Relying on, 29 C.F.R. §2550.408b-2(c)(2), TLIC claims it did not commit a PT under ERISA §406(b)(1), because it did not use any of the authority or responsibility

which made it a fiduciary to commit a PT (Db24 to Db5). In making this argument, TLIC ignores the fact that it is a fiduciary under ERISA §3(21)(A), with regard to assets in its separate account and on account of rendering investment advice (i.e., Fiduciary Management Program, Fiduciary Warranty, AdviceSolutions).

TIM and TAM argue that Plaintiffs claims fail under ERISA §401(b)(1) because the Defendants received their fees from mutual funds (not separate accounts). TIM's and TAM's brief at 6. This Court rejected that same argument in Goldenberg, F.Supp.2d at 632-33. See also Haddock I 419 F.Supp.2d at 170; Hartford at *5; and the authorities discussed above, which hold that PTs occur when fees are received from mutual funds. Hecker, did not involve a PT, and had it, it would be inconsistent with Goldenberg and the authorities cited above.

TIM and TAM argue that Plaintiffs' claims fail because Great West Life v. Knudson, 534 U.S. 204 (2002) imposes a tracing requirement. Knudson, and the other cases relied upon by TIM/TAM, did not involve a PT. Additionally, in Sereboff v. Mid Atlantic Medical Serv., 547 U.S. 356 (2006), the Supreme Court stated:

> [Plaintiffs] assume that Knudson endorsed application of ...the tracing rules to
> every action...under §502(a)(3). This assumption is inaccurate.

Id. at 365. TIM's and TAM's position is inconsistent with Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250 (2000), where the Court held that under ERISA §502(a)(3) plaintiffs may recover from non-fiduciaries for PTs, and never alluded to a tracing requirement.

A tracing requirement, as a condition of a PT claim, would eviscerate the protections of ERISA §406. Affiliates of a fiduciary could prevent tracing by transferring fees, as occurred here, when TIM ceased operations after it was sued. Regardless, Plaintiffs have adequately traced the fees to TIM/TAM's possession (C¶¶338-41). If more extensive tracing is required, discovery is needed. Braden, 588 F.3d at 602 ("It would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts ...in the sole control of the parties who stand accused.....")

## C.    A Pre-Suit Demand Is Not Required Under ERISA

TLIC, relying on Santomenno v. John Hancock Life Ins. Co., No. 01655, 2011 WL 2038769 (D.N.J. May 23, 2011) *appeal docketed* No. 11-2525 (3rd Cir. June 3, 2011) ("Hancock")(App.J), argues for dismissal because "Plaintiffs...failed to make a pre-suit demand on the...plans' trustees" or "failed" to join the plan fiduciaries responsible for retaining TLIC" (Db28).   Hancock was incorrectly decided.   In Hancock, as here, Plaintiffs sought relief for violations of ERISA §§404 and 406, under ERISA §§502(a)(2) and (3).  This statute provides:

> Persons empowered to bring...-A Civil Action may be brought-...(2) by the Secretary, or by a participant, beneficiary...**or** fiduciary...(3) by a participant, beneficiary, **or** fiduciary.... (emphasis added).

The Hancock Court acknowledged that, "Courts in other circuits have rejected the imposition of a pre-suit demand" and "[t]he Third Circuit has not spoken to this precise question." Hancock, *2-3.  Nevertheless, according to Hancock:

The Second Circuit has held that in relation to an ERISA § 502(g) claim, which is akin to the Section 502(a) claims here, '[a] participant in a fund governed by ERISA can sue derivatively on behalf of the fund only if the plaintiff first establishes that the trustees breached their fiduciary duty.' Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 916 (2d Cir. 1989)

Id at 4.

However, the Second Circuit, in a subsequent decision, rejected this reading:

It is true that in Diduck,..., we concluded that Rule 23.1 was applicable to a suit brought by participants on behalf of an ERISA plan. Diduck, 974 F.2d at 287. But Diduck involved an action brought under ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), not section 502(a)(2). Section 502(g)(2) authorizes fiduciaries, but no one else, to obtain unpaid contributions pursuant to ERISA § 515...which requires employers participating in multi-employer ERISA plans to make...contributions to the plans. Because section 502(g)(2) only applies to suits by fiduciaries, it is sensible to require plan participants, if they may assert the fiduciaries' right of action at all, to follow Rule 23.1, which applies when the appropriate plaintiff has "failed to enforce a right which may properly be asserted by it." Fed.R.Civ.P. 23.1. Section 502(a)(2), unlike section 502(g)(2), provides an express right of action for participants.... Because plan participants are expressly authorized to bring suit under section 502(a)(2), the situation here is not controlled by Diduck.

Coan v. Kaufman,  457 F.3d 250, 258 (2ᵈ Cir. 2006).

Consistent with  Coan, the Third Circuit has held:

1132(a)(3) [502(a)(3)], on the other hand, creates a remedy for "structural... violations of the ERISA scheme." Livolsi, at 602. This latter remedy is available **to beneficiaries as well as fiduciaries**..... In 1980, however, Congress added section 1132(g)(2) [502(g)(2)], which authorizes awards for unpaid employer contributions,... but only in actions '**by a fiduciary for or on behalf of a [multiemployer] plan ....**' (emphasis added)

Struble v. NJ Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 337 (3ʳᵈ Cir. 1984).  Thus,  Hancock is inconsistent with the text of ERISA because, while

502(g)(2) actions may only be brought by a plan fiduciary, ERISA §502(a)(2)(and 3), specifically provide participants with standing, without making a pre-suit demand.

Moreover, <u>Hancock</u> defies the Supreme Court's direction on statutory interpretation:

> We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.

<u>Jama v. Immigration & Customs Enforcement</u>, 543 U.S. 335, 341 (2005).

<u>Hancock</u>, suggests its holding is based on trust law. However, as the Supreme Court stated in <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 528 (1996):

> Though we have recognized that Congress borrowed from the common law of trusts in enacting ERISA, we must not forget that ERISA is a statute, and in every case involving construction of a statute, the starting point ... is the language itself. (Internal citations and quotations omitted).

Requiring a pre-suit is not only inconsistent with the text of 502(a)(2) and (3), it also contradicts ERISA's purpose. See <u>Varity Corp.</u>, 516 U.S. 489 at 513:

> ERISA's basic purposes favor a reading...that provides the plaintiffs with a remedy. The statute itself says that it seeks
>
> 'to protect ... the interests of participants ... and ... beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries ... and ... providing for appropriate remedies ... **and ready access to the Federal courts.**' ERISA § 2(b). (emphasis added)

<u>See also</u> <u>Braden</u>, 588 F.2d at 598. ("Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties....")

Hancock is also inconsistent with the DOL's amicus brief in Coan (App. K),
and the decision of all Circuit Courts that have examined this issue. See Kayes v.
Pacific Lumber Co. 51 F.3d 1449, 1462-1463 (9th 1995) and Brink v. DaLesio, 667
F.2d 420, 428 (4th Cir. 1981):

> Congress has not expressly adopted such a limitation on the right to sue under
> ERISA, the rationale of Rule 23.1 to prohibit champertous litigation ...is
> inapposite to suits under §1132(a)(2) [502(a)(2)], and the adoption of such a
> limitation would frustrate the broad remedial objectives of ERISA.

See also, Moeckel v. Caremark Rx. Inc., 385 F.Supp.2d 668, 685 (M.D. Tenn. 2005),
and In re AEP ERISA Litig., 327 F.Supp.2d 812, 820 (S.D. Ohio 2004).

## POINT III

### PLAINTIFFS HAVE PLEAD PLAUSIBLE CLAIMS UNDER THE IAA

It is a violation of IAA §203 to act as an investment adviser, without
registering with the SEC. Investment advisers are "companies that 'engage[] in the
business of advising **others**' with respect to their investments." IAA §202(a)(11)[10].
Counts VIII alleges TLIC violated IAA §203 by acting as an investment adviser to
Plaintiffs, without registering with the SEC.

TLIC concedes both that it rendered investment advice for a fee and that it did

---

[10] "Investment adviser" is defined in IAA §202(a)(11). Entities that manage
the funds of, and performs investment management services, for a fee, for others,
are investment advisers and are required to register with the SEC. See
Abrahamson v. Fleschner, 568 F.2d 862, 870-71 (2d Cir. 1977).

not register with the SEC. However, it alleges Count VIII fails since "TLIC Has Not Provided Investment Advice to 'Others' Within the Meaning of the IAA [§202(a)(11)]" (Db30) because (i) the separate accounts are "part of TLIC itself;" (ii) TLIC is exempt from registration under IAA §203(b)(2) and (iii) TLIC " provided advice to the fund not the investors" (Db30 to Db31).

### A. TLIC Advised "Others"

Without the benefit of case law, TLIC urges that it did not advise "others" because it advised the separate accounts, which were part of TLIC. In three respects, this argument belies the realities of the transaction. First, Plaintiffs paid the Investment Management fee, not TLIC. The receipt of compensation in return for investment advice falls within the IAA. Abrahamson 568 F.2d 862. Thus, when a firm provides advice about investment options and monitors investment accounts, it is providing investment advice under the IAA. S.E.C. v Wash. Inv. Network, 475 F.3d 392, 399-400 (C.A.D.C. 2007). If TLIC did not render investment advice to Plaintiffs, it should not have charged them a fee.

Second, Plaintiffs enjoyed the gains and bore the losses from these accounts; thus the separate accounts were not "part of TLIC itself" (Db30), but separate from TLIC. For this reason, the Third Circuit, in interpreting the similar Investment Company Act of 1940 ("ICA"), rejected TLIC's argument:

In substance, the variable annuity contracts which Prudential proposes to

sell...provide that the purchaser will make...payments.., the proceeds...will be invested in a portfolio of securities. The purchaser will be credited...with 'units' representing his proportionate interest in this fund. The value of these units will fluctuate...depending upon the investment results of the fund

*         *         *

[W]e reject Prudential's argument that...a fund refers only to recognizable business entities. ... [T]he Investment Fund is a completely segregated account devoted to investing in securities. ... **Thus, the fund is separable from the insurance company** which..., as the Supreme Court noted ...'guarantee(s) nothing...except an interest in...equities....(emphasis added)

Prudential Ins. Co. of Am. v. SEC, 326 F.2d 383, 384, 387 (3rd 1964) ("Prudential").

TLIC, like Prudential, invests in securities, and guarantees nothing (See DecRL¶9,Ex H; DE1258,1308), and "[t]he assets of each Separate Account are segregated from other assets of the Company." (DE 1269, 1319).

Third, TLIC cannot be advising the "separate accounts." They are not legal entities (Db32) and need no advice because they merely mimic the performance of mutual funds that have their own compensated advisors (C¶253). The only people whom TLIC advised are those who pay TLIC's fee: Plaintiffs.

## B.    TLIC Cannot Avail Itself Of the Insurance Company Exemption

According to TLIC: "[e]ven if the separate accounts were deemed to have a separate existence from TLIC...it would not matter" because investment advisers whose only clients are insurance companies are exempt from registration (Db31).

TLIC reliance on  IAA §203(b)(2), which exempts from registration "any investment adviser whose only clients are insurance companies," is misplaced. For

IAA purposes, TLIC is not an "insurance company." The IAA defines "insurance company," to mean "...an insurance company, whose primary and predominant business activity is the writing of insurance...." IAA §202(a)(12)/ ICA §2(a)(18). TLIC, through its retirement plan business, has "more than 15,000 retirement plans totaling more than $19.5 billion." (DecRL¶10,Ex I).  TLIC manages this money in its separate accounts whose "value fluctuates...in accordance with the ...value of its underlying investments." (DecRL¶9,Ex H). Thus, TLIC is selling a "variable annuity product" (Db30), which **is not an insurance product.**

TLIC's position is also inconsistent with the Supreme Court and the SEC. See SEC v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65, 67-74 (1959):

> Respondents are also exempt...if they are 'organized as an insurance company, whose primary business activity is the writing of insurance.... The question is whether respondents are issuing contracts of insurance. ...The holder of a variable annuity cannot look forward to fixed...amount.  It may be greater or less, depending on the wisdom of the investment policy. ... [W]e conclude that the concept of 'insurance' involves some investment risk-taking on the part of the company. ... In hard reality the issuer of a variable annuity...assumes no true risk in the insurance sense. ... [T]hey guarantee nothing.... There is no true underwriting of risks.

See also (SEC No. Action Letter PALIO Jan. 3, 1971) (App. L) "Since [variable annuity] contracts have been conclusively determined to be securities rather than insurance...it appears that PALIO is **not an insurance company** entitled to the exemption...."(emphasis added).  Further, in SEC No Action Letter Zenkyoren Asset Mgmt. of Am. Inc., (June 30, 2011) (App. M), the SEC stated this exemption only

applied to an investment adviser, that was a subsidiary of an insurance company, if the following conditions were met: (i) the insurance company "is the only investor" in the Funds, (ii) the "Funds...are established ...solely for the benefit of the Parent [insurer] in order to enable the Parent...to meet...claim obligations..." and (iii) the adviser "did not hold itself out to the general public as an investment adviser, and provides investment advice only to the Parent...." Id. at 1.[11] Here, TLIC held itself out to the general public as an adviser and the funds consist of Plaintiffs' assets.

### C.     Plaintiffs Are The Recipients of TLIC's Advice

According to TLIC, Count VIII fails because TLIC provides investment services to "the fund, not to the investors"(Db31). This contention is flawed.

TLIC only charged its investment management fee on separate account investment options that invest in independent mutual funds (C¶¶274;353). The only benefit Plaintiffs receive from this investment is the opportunity to participate in the performance of the underlying mutual fund(C¶¶251-53). These funds already have an investment adviser who is registered with the SEC, independent of TLIC (C¶¶274;353). As required by ICA §15, these advisors entered into investment management agreements with those funds. Through those agreements, the adviser

---

[11] See H.R. Rep. 111-686(I), 111th Cong. 2d Sess., 13 (2010), *14(App. N) ("registration would not be required for...subsidiary within an affiliated group of insurance companies...operated for the sole purpose of providing investment advisory services to the members of the affiliated group of insurance companies")

became a fiduciary to the mutual funds. ICA §36.  TLIC, who is unregistered, did not (and cannot) enter into investment advisory agreements with the independent mutual funds, and thus does not manage their assets.  Since TLIC does not render investment advice to the mutual funds that underlie the separate accounts, and the only benefit of investing in such separate accounts is an investment in the mutual fund, the alleged investment management services TLIC provides through the separate accounts, must be to Plaintiffs (see Count VIII ¶10).

Goldstein v. SEC, 451 F.3d 873 (D.C.Cir. 2006) is distinguishable, inconsistent with Prudential and the SEC's position, and was overturned by Congress. Prior to removal from the IAA, §203(b)(3) exempted from registration

> any investment adviser who during the course of the preceding twelve months has had fewer than fifteen clients and who neither holds himself out generally to the public as an investment adviser....For purposes of determining the number of clients of an investment adviser under this paragraph, no shareholder, partner... shall be deemed to be a client of such investment adviser unless such person is a client of such...adviser separate and apart from his status as a shareholder, partner....

Relying on this statute, Goldstein held that hedge fund is the client of the adviser's investment services, not the investors.

First, Goldstein was based on exemption §203(b)(3). This exemption was added since "Congress did not intend 'shareholders...of a **hedge fund** to be counted as 'clients'," id at 880, because they do not need the protections of the IAA since hedge funds are "investment vehicles that remain private and available only to highly

sophisticated investors...." Id. at 875. TLIC's clients are not highly sophisticated investors, they are participants in small 401(k) plans (C¶94). Further, TLIC has more than 15 investors and held itself out to the pubic as an adviser. Even if the TLIC "funds" are counted as the clients, TLIC charged its Investment Management Charge on well over 15 separate accounts. (DecRL¶5 Ex. D).

Third, Goldstein was based on the fact that a hedge fund is a legal entity ("form matters in this area of the law because it dictates to whom fiduciary duties are owed"). Id at 882. The separate accounts, as TLIC argues in its brief, are not "legal entities with enforceable rights" (Db32) . Rather, "a separate account is 'an account'-not a subsidiary...that could contract with the insurance company for the investment advice"(Db30, fn35). Given the operational aspects of the separate accounts, Plaintiffs were the recipients of TLIC's investment advice. Further, the conflicts that the Goldstein court perceived, when defining the investors of a hedge fund as the adviser's client, as opposed to the fund, are not present here:

> If the investors are owed a fiduciary duty and the entity is also owed a fiduciary duty, than the advisers will inevitably face conflicts....Consider an investment adviser to a hedge fund that is about to go bankrupt. His advice to the fund will likely include any and all measures to remain solvent. His advice to an investor...would likely be to sell. Id. at 881.

TLIC does not owe a fiduciary duty to the mutual funds which have their own, independent, registered advisers.

Applying Goldstein to TLIC's separate accounts that are available to the

616246.3

42

general public is inconsistent with the Third Circuit's decision in Prudential, 326 F.2d

at 386-388:

> [S]ecurities legislation must be broadly construed....
>
> \*     \*     \*     \*
>
> [I]t is asserted that the purchasers cannot be described as an 'organized group of persons';.... [T]he ...provisions of the Act 'are of particular relevance...where the investor is committing his funds to the hands of others...with the view that the funds will be invested...and his fortunes...depend on the success of the investment.' Furthermore, a study of the legislative history of the Act shows that Congress intentionally drafted the statutory definitions in general terms in order to control such situations regardless of the legal form or structure of the investment enterprise. ... The group of individual investors is not a legal entity but rather constitutes in essence a combination of distinct individual interests.
>
> \*     \*     \*     \*
>
> The...fact that the investment program...is under the aegis of an insurance company ought not to negate compliance....

Goldstein, is also inconsistent with Abrahamson, 568 F.2d at 865-876, and S.E.C. v.

Wash. Inv. Network,  475 F.3d 392 (D.C. Cir. 2007).

Further, for TLIC to argue that its advice is to the separate accounts, and then

posit that it is immune from liability because the accounts are not legal entities, is an

attempt to manipulate the IAA (Db32).[12]  IAA §208, prevents this: "[i]t shall be

---

[12]   TLIC concedes the separate accounts are not legal entities and thus are incapable of entering, did not enter, into contracts with TLIC (Db32, fn35; supra at 43 ). Count VIII ¶10 states that TLIC entered into contracts with the Plaintiffs, on account of their investments into the TLIC investment options, pursuant to which it rendered investment advice and charged Plaintiffs TLIC's investment management charge. As the separate accounts are not legal entities, and did not enter into contracts with TLIC, this also demonstrates that the investment advice was to Plaintiffs.

unlawful for any person indirectly...to do any act...which it would be unlawful for such person to do directly under...this title...." Cf SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195 (1963) (IAA should "be construed ...flexibly....") and Abrahmson, 568 F.2d at 872  ("The Supreme Court has recognized in a variety of contexts that private rights of action may be implied in favor of the intended beneficiaries...of a statute...to implement the statute's...purposes").

Since TLIC confirmed that the separate accounts are not registered (but they should be; see SEC No. Action Letter PALIO Jan. 3, 1971 (App. L)) and are not legal entities, Plaintiffs cannot dispute Defendants' motion to dismiss Count IX.[13]

---

[13]TLIC claims ERISA invalidates Plaintiffs' IAA claim. In the context of the IAA, it was Plaintiffs who were charged the investment management fee for TLIC's advisory services, and thus their claims are viable irrespective of ERISA. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc., 534 U.S. 124, 143 (2001) and In re Udell, 454 F.3d 180, 185 (3d Cir. 2006). TLIC incorrectly claims "the participants are not security holders in those separate accounts." (Db33). This Court, and the SEC, rejected that argument. Goldenberg 741 F.Supp.2d at 643.

## CONCLUSION

For the above reasons, Defendants' motions to dismiss should be denied.[14]

Respectfully submitted,

Dated: August 19, 2011          s/Robert Lakind
                                Robert Lakind

                                SZAFERMAN, LAKIND
                                BLUMSTEIN & BLADER, P.C.
                                101 Grovers Mill Road
                                Lawrenceville, New Jersey 08648
                                Phone: 609-275-0400
                                Fax: 609-779-6050

                                s/Moshe Maimon
                                Moshe Maimon
                                LEVY PHILLIPS & KONIGSBERG, LLC
                                800 Third Avenue, 13th Floor
                                New York, NY 1002
                                Phone: 212-605-6260
                                Fax: 212-605-6290

---

[14] In the event the Court grants any part of the Defendants' motions to dismiss, Plaintiffs respectfully request leave to amend their Complaint.