UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Jaclyn Santomenno, Karen Poley, and
Barbara Poley, et al.

       Plaintiffs,

vs.

Transamerica Life Insurance
Company, Transamerica Investment
Management, LLC, and Transamerica
Asset Management, Inc.,

       Defendants.

Civ. A. No. 2:11-cv-736 (ES)(CLW)

---

## PLAINTIFFS' AMENDED BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

---

SZAFERMAN, LAKIND
 BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrencevile, New Jersey 08648
Tel:  (609) 275-0400
Fax:  (609) 275-4511
Attorneys for Plaintiffs

LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrencevile, New Jersey 08648
Tel:  (212) 605-6200
Fax:  (212) 605-6290

Robert L. Lakind, Esquire
Arnold C. Lakind, Esquire
Moshe Maimon, Esquire
Danielle Disporto, Esquire
    On the Brief

617532.1

# TABLE OF CONTENTS

Preliminary Statement ............................................... 1

Statement of Facts ................................................. 1

    A.    Overview of ERISA Claims ............................. 3

    B.    Overview of IAA Claims ............................... 7

Argument ......................................................... 8

    Point I ..................................................... 8

    By Virtue of Maintaining Plan Assets in a Separate
    Account, Providing Investment Advice, and Exercising
    Discretion to Alter its Compensation, TLIC Is an ERISA
    Fiduciary with Regard to its Compensation

    A.    Fiduciary Status Should Not Be Decided on
        a Motion to Dismiss ................................. 8

    B.    TLIC is an ERISA Fiduciary ...................... 9

    Point II .................................................... 25

    TLIC Violated ERISA Duties Owed to Plaintiffs

    A.    TLIC Violated its ERISA Duties of
        Prudence and Loyalty ............................. 25

    B.    The Defendants Committed Prohibited
        Transactions ....................................... 30

    C.    A Pre-suit Demand is Not Required Under ERISA ................ 33

Point III ............................................................................ 37

      Plaintiffs Have Plead Plausible Claims under the IAA

      A.     TLIC Advised "Others" ......................................... 38

      B.     TLIC Cannot Avail Itself of the Insurance
              Company Exemption ............................................. 39

      C.     Plaintiffs Are The Recipients of TLIC's Advice ................... 41

Conclusion ....................................................................... 45

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abrahamson v. Fleschner, 568 F.2d 862 (2d Cir. 1977) ........................... 37, 38, 44

Adkins v. John Hancock Mutual Life Insurance Co.,
    957 F. Supp. 211 (M.D. Fl. 1997) .................................................. 11, 34, 36

Beye v. Horizon BC/BS of N.J., 568  F. Supp. 2d 556 (D. N. J. 2008) .................. 8

Board of Trs. of Bricklayers v. Wettlin Associate,
    237 F.3d 270 (3d Cir. 2001) ...................................................... 9, 10, 11, 19

Boeckman v. A.G. Edwards, Inc., 461 F. Supp. 2d 801 (S.D. Ill. 2006) ............... 25

Braden v. Walmart Stores  Inc.,
    588 F.3d 585 (8th Cir. 2009) .......................................... 8, 21, 24, 25, 33, 36

Brink v. DaLesio, 667 F.2d 420 (4th Cir. 1981) ....................................... 37

Charters v. John Hancock Life Ins. Co.
    534 F. Supp. 2d 168 (D. Mass. 2007)("Charters I") ..................................... 22

Charters v. John Hancock Life Ins. Co. ,
    583 F. Supp. 2d 189 (D. Mass. 2008) ("Charters II") ..................... 19, 20, 21

Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006) ...................................... 34, 35, 37

Diduck v. Kaszycki & Sons Contractors, Inc.,
    874 F.2d 912 (2d Cir. 1989) ......................................................... 34

Ed Miniat, Inc. v. Globe Life Insurance Grp.,
    805 F.2d 732 (7th Cir. 1986) ........................................... 18, 19, 20

F.H. Krear & Co. v. Nineteen Named Trustees,
    810 F.2d 1250 (2d Cir. 1987) .......................................... 17, 18, 20

Goldenberg v. Indel Inc., 741 F.Supp.2d 618 (D.N.J. 2010) .............. 25, 30, 32, 45

Goldstein v. SEC, 451 F.3d 873 (D.C. Cir. 2006) ..................................... 42, 43, 44

Great West Life v. Knudson, 534 U.S. 204 (2002) .............................................. 32

Haddock v. Nationwide Fin. Svs. Inc.,
    419 F. Supp. 2d. 156 (D. Conn. 2006) ....................................... 22, 29, 31, 32

Haddock v. Nationwide Finance Services, Inc.,
    262 F.R.D. 97 (D. Conn. 2009) ......................................... 20, 22, 24

Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,
    530 U.S. 238 (2000) ..................................................................... 33

Hecker v. Deere Co., 556 F.3d 575 (7th Cir. 2009) .................... 19, 20, 22, 26, 32

In re AEP ERISA Litig., 327 F. Supp. 2d 812 (S.D. Ohio 2004) .......................... 37

In Re Regions Morgan Keegan ERISA Litigation,
    692 F. Supp. 2d 944 (W.D. Tenn. 2010) .......................................... 30

In re Udell, 454 F.3d 180 (3d Cir. 2006) ............................................................. 45

IT Corp. v. General America Life Insurance Co.,
    107 F.3d 1415 (9th Cir. 1997) ...................................................... 24

J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.,
    534 U.S. 124 (2001) ...................................................................... 45

Jama v. Immigration & Customs Enforcement,
    543 U.S. 335 (2005) ...................................................................... 35

John Hancock Mutual Life Insurance Co. v. Harris Trust and Savingss Bank,
510 U.S. 86 (1993) ................................................................. 10, 11

Kayes v. Pacific Lumber Co., 51 F.3d 1449 (9th Cir. 1995) ................................ 37

Lowen v. Tower Asset Mgmt., 829 F.2d 1209 (2d Cir. 1987) ............................ 30

Mack Boring & Parts v. Meeker, 930 F.2d 267 (3d Cir. 1991) ............................ 11

Marks v. Indep. Blue Cross, 71 F. Supp. 2d 432 (E.D. Pa 1999) ................... 19, 20

Midwest Cmty Health Service, Inc. v. America United Life Insurance Co.,
255 F.3d 375 (7th Cir.) ........................................................... 11, 20

Moeckel v. Caremark Rx. Inc., 385 F. Supp. 2d 668 (M.D. Tenn. 2005) ............. 37

Pension Fund Mid Jersey Trucking Industrial Local 701 v. Omni Funding Grp,
731 F. Supp. 161 (D.N.J. 1990) .................................................. 13

Pension Fund v. Nationwide Life Insurance Co.,
783 F. Supp. 899 (D. N.J. 1992) ................................................ 11

Phones Plus Inc. v. Hartford Finance Svs. Grp.,
2007 WL 3124733 (D.Conn. Oct. 23, 2007) ............................ 22, 29, 31, 32

Procacci v. Drexel Burnham Lambert, Inc.,
1989 WL 121984 (E.D. Pa. Oct. 16, 1989) ................................. 13

Prudential Life Insurance Co. v. SEC,
326 F.2d 383 (3d Cir. 1964) ...................................... 31, 39, 42, 43

Reich v. Compton, 57 F.3d 270 (3d Cir. 1995) ...................................... 30

Renfro v. Unisys Corp., ___ F.3d ___,
2011 WL 3630121 (3d Cir. Aug. 19, 2011) .......... 17, 26, 27, 28, 29, 32, 35

SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180 (1963) ..................... 44

SEC v. Variable Annuity Life Ins. Co. of Am.,
359 U.S. 65 (1959) ................................................................. 40

SEC v. Wash. Inv. Network, 475 F.3d 392 (D.C. Cir. 2007) .......................... 38, 44

Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983) ...................... 19, 20

Sereboff v. Mid Atlantic Medical Service, 547 U.S. 356 (2006) .......................... 32

Stanton v. Shearson Lehman/ America Express,
        631 F. Supp. 100 (N.D. Ga. 1986) .............................................................. 13

Struble v. NJ Brewery Emps. Welfare Trust Fund,
        732 F.2d 325 (3d Cir. 1984) ....................................................................... 35

In re Unisys Corp. Retiree Medical Ben. ERISA Litigation,
        57 F.3d 1255 (3d Cir. 1995) ....................................................................... 10

In re Unisys Corp. Retiree Medical Benefits ERISA Litigation,
        579 F.3d 220 (3d Cir. 2009) ......................................................................... 8

In re Unisys Savingss Plan Litigation, 74 F.3d 420 (3d Cir. 1996) ...................... 25

Varity Corp. v. Howe, 516 U.S. 489 (1996) ..................................................... 35, 36

Woods v. Sullivan. Co., 396 F. Supp. 2d 1351, 1365 (N. D. Ga. 2005) .................. 8

Wright v Or. Metallurgical Corp., 360 F.3d 1099 (9th Cir. 2004) ........................ 31

## DOCKETED CASES

Santomenno v. John Hancock Life Insurance Co.,
        C. A. No.2:10-cv-01655, 2011 WL 2038769 (D.N.J. May 23, 2011)
        *appeal docketed*, No. 11-2520 (3d Cir. June 3, 2011) ......... 33, 34, 35, 36, 37

## FEDERAL STATUTES

29 U.S.C. § 1132(ERISA § 502) .................................................... *passim*

## FEDERAL REGULATIONS

29 C.F.R. § 2509.96-1 .................................................................... 14, 16

29 C.F.R. § 2510.3-101(h)(iii) ............................................................ 11

29 C.F.R. § 2550.401c-1(d)(2)(c)) ........................................................... 10

29 C.F.R. § 2550.408b-2(c)(2) ................................................................ 32

ERISA §3(21)(A) ..................................................... 8, 9, 10, 12, 16, 21, 32

ERISA §401 ......................................................................................... 10, 32

ERISA § 404 ......................................................... 4, 5, 7, 11, 17, 25, 29, 34

ERISA § 406 ....................................... 4, 5, 6, 7, 11, 30, 31, 32, 33, 34

IAA § 202 ........................................................................................ 37, 38, 40

IAA § 203 ..................................................................... 7, 37, 38, 39, 42

IAA § 208 ............................................................................................ 44

IAA § 215 ........................................................................................... 7

## FEDERAL RULES

Fed.R.Civ.P. 23.1 ......................................................................... 34

## OTHER AUTHORITIES

75 Fed. Reg. 65263 (Oct. 22, 2010) ........................................ 12, 13, 15

Department of Labor Advisory Opinion 2005-22A ............................. 11

H.R. Conf. Rep. 93-1280 ...................................................................... 11

H.R. Rep. 111-686(I) ........................................................................... 40

George T. Bogert, <u>Trusts</u> (6th ed. 1987) ............................................ 37

Restatement (Second) of Trusts (1959) ............................................. 36

## PRELIMINARY STATEMENT

This brief is submitted in response to the motions of Defendants, Transamerica Life Insurance Company ("TLIC"), and its affiliates, Transamerica Investment Management, LLC ("TIM") and Transamerica Asset Management, Inc. ("TAM") to Dismiss the Complaint filed by Plaintiffs, Jaclyn Santomenno ("Santomenno"), Karen Poley ("K. Poley") and Barbara Poley ("B. Poley").

Plaintiffs' Complaint ("C") advances claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA") and alleges that Defendants extracted impermissible fees from group annuity contracts ("GACs") issued by TLIC to 401(k) plans of small and medium sized businesses (Counts I to VII); and alleges claims arising under the Investment Advisers Act of 1940 ("IAA"), which relate to TLIC's practice of rendering investment advice to the public for a fee without registering with the Securities and Exchange Commission ("SEC") (Counts VIII and IX).

## STATEMENT OF FACTS

TLIC operates 401(k) plans through its GACs for small and medium-size employers (the "Plaintiff Plans" or "Plans"). C¶¶2,94. Plaintiffs, K. and B. Poley, are participants in the QualCare Alliance Networks Inc., Retirement Plan ("Qualcare Plan"), a Plaintiff Plan. C¶¶4, 56. Prior to December 2010, Plaintiff Santomenno was a participant in the Gain Capital Group, LLC 401(k) Plan ("Gain Plan"), also a

Plaintiff Plan. C¶¶5, 57. As participants in these Plans, Plaintiffs acquired interests in "investment options" offered and administered by TLIC.

TLIC employs a two-step process to construct the menu of investment options for all Plaintiff Plans. C¶¶11-13. First, TLIC constructs an investment menu with 170 investment options, which it refers to as its Partner Series III Menu. C¶¶12-13; 240-2. From the Partner Series III Menu, the sponsor selects a smaller menu of investment options for each Plan. C ¶242. TLIC advises each sponsor on how to construct the smaller menu by providing its "Transamerica Investment Monitor" which it describes as "our [TLIC's] proprietary comprehensive due diligence process for selecting...the investment choices offered for your retirement plan." C ¶181. TLIC encourages employers to select certain portfolios of investment options, known as "Transamerica's models." C¶157, Declaration of Robert Lakind (DecRL) ¶2Ex A. Employers who select one of the model portfolios receive a "Fiduciary Warranty." C¶158.

TLIC refers to each investment option as a "separate account" investment option. C¶19. Each separate account has an "Expense Ratio" ("ER"), which is used to compute the fees which participants pay for investing in a particular investment option. C¶229. TLIC has acknowledged that "the lower the expense ratio [of an investment option] the better." C¶304. Once a Plan's investment menu is established, TLIC assumes responsibility for all material activities related to the separate account

2

investment options, including rendering investment advice regarding the characteristics of the investment options; adding and deleting investment options; and amending the fees of the investment options. C¶¶152-53,169,181-82.

Although Plaintiffs are charged a variety of other fees, including an annual contract asset charge, <u>see</u> Defense Exhibits ("DE")[1] at 1187, 1225, 1306, 1323, DecRL¶3, Ex.B p.2, record keeping, distribution, enrollment, consulting, de-conversion (i.e., termination) fees, and contract discontinuation fees, DE at 1181-82, 1186-87, 1226, DecRL¶3, Ex.B p2, Plaintiffs' claims are limited to the fees they were charged for investments into TLIC's separate accounts.

## A.     Overview of ERISA Claims

***Counts I and II***:  The first type of separate account investment option (which represents a majority of the separate account investment options) is simply a pass-through vehicle that invests in an underlying mutual fund. C¶21. TLIC acknowledges the performance of each separate account mimics that of the underlying mutual fund:

> The separate account...invest[s] in another underlying fund to make up your investment.  Therefore the units of the separate account function and perform in the same way shares would in a mutual fund. C¶253.

The ER for this pass-through category equals the sum of the fees of the "underlying mutual fund" plus an additional fee that totals "approximately 75 basis points ["bps"],

---

[1]  Defendants exhibit pages are not numbered. All page references are to the page numbers inserted by the ECF system on the top right corner.

or .75% of Plan assets invested in those options." Defendants' Brief ("Db") at 8; C¶272. TLIC does not disclose the fees charged by the underlying mutual fund, C¶247, and, as a result, the investor is unaware that the separate account fee exceeds the fee of the underlying fund. Since they only receive an investment in the underlying mutual fund and no other benefit, C¶260, Plaintiffs contend that their fee should not exceed the fee charged by the underlying fund, a contention which is consistent with the SEC's position. C ¶258.

Count II differs from Count I insofar as it pertains to the subset of investment options in Count I where TLIC identifies the portion of the separate account's fee that exceeds the underlying mutual funds' fees as its "Investment Management Charge."

Since (i) TLIC is not a registered investment adviser, (ii) the underlying mutual funds' advisers (who register with the SEC) render all of the necessary investment advice to the mutual fund (Plaintiffs also pay for these services) and (iii)Plaintiffs' investments only result in an investment in a mutual fund, TLIC's investment management services at the separate account level are unnecessary. C¶¶266-80. TLIC's receipt of fees that are in excess of the fees charged by the underlying mutual fund violate ERISA §§ 404(a)(1)(A) and (B) and 406(b)(1) and (3).

***Count III:*** TLIC requires the mutual funds' investment advisers, which are independent of TLIC, to remit a portion of the participants' investments back to

TLIC. C¶¶281-88. This fee income is referred to as a "Revenue-Sharing Payment" and must, as a matter of law, be used for the benefit of Plan participants. C¶281. In order to "satisfy" that obligation, TLIC has manufactured a largely illusory "Investment Management and Administrative Charge," C¶¶281-94, which it claims to satisfy by its retention of the Revenue Sharing Payments.

As noted above, the sponsors pay a number of fees characterized as administrative. TLIC also assesses an Administrative Charge. In addition, participants pay the underlying mutual funds fees, which include an "Other Expense"[2] charge, which covers all of the fees for the provision of administrative services for the mutual fund. Since the sole benefit of an investment in the separate account is an investment in a mutual fund, the underlying fund's "Other Expense" covers all of the necessary administrative services needed on account of that investment. C¶291.

Thus, the Investment Management Charge and the Administrative Charge are largely fictions created by TLIC so that it appears to Plaintiffs that they are receiving a reduction in fees as a consequence of TLIC's receipt of the Revenue-Sharing Payments. C¶294. TLIC's receipt of the Revenue-Sharing Payments violates ERISA §§ 404(a)(1)(A) and (B) and 406(b)(1) and (3).

---

[2] According to the SEC, the "Other Expense" fee of a mutual fund pays for "shareholder service expenses...; custodial expenses; legal expenses; accounting expenses; ...and other administrative expenses." DecRL¶4ExC p5.

***Count IV and VII:*** Several of the funds underlying the separate accounts are affiliated with TLIC and employ TIM or TAM as their adviser (TLIC affiliates). C¶¶296-97. By paying advisory fees to these affiliated entities, TLIC committed a prohibited transaction under ERISA § 406(b). Count IV and VII seek relief under ERISA § 502(a)(3) against TIM and TAM for participating in TLIC's violations.

***Count V:*** Mutual funds generally have several share classes with each share class charging a different fee. C¶¶302-303. Since each share class invests in the same pool of securities, the share class with the lowest fees provides the greatest return. C¶305. TLIC had the ability to invest in the lowest priced share class of the underlying mutual fund (generally referred to as the institutional share class) but, in most instances, elected not to do so. C¶¶302-19. Instead, it purchased a more expensive share class, to facilitate its receipt of the Revenue-Sharing Payments. TLIC's failure to invest in the lowest priced mutual fund share class violates ERISA § 404(a)(1)(A) and (B).

***Counts VI:*** While most of the separate account investment options invest in mutual funds, some are used as pass through vehicles to invest in collective investment trusts. C¶321. Other separate accounts function as the ultimate investment (i.e., the separate account acts like a mutual fund), and are called "Traditional Separate Accounts." C¶¶322-3. Collective investment trusts and Traditional Separate Accounts generally charge lower fees than comparable mutual

funds, including the institutional share class. C¶326. However, for its collective investment trusts and Traditional Separate Accounts, TLIC charged fees that exceeded the institutional share class of comparable mutual funds. C¶¶330-35.

Count VI alleges that TLIC either (i) failed to use its economic leverage to obtain fees that are typical in the open market for these investment products or (ii) TLIC did in fact obtain these lower fees from the advisers to these investment products, but failed to pass these savings along to Plan participants. C ¶¶318-40. Thus, TLIC violated ERISA §§404 and 406.

### B.    Overview of IAA Claims

TLIC entered into a contract with Plaintiffs pursuant to which it provided investment advice to Plaintiffs and charged them an "Investment Management Charge" for these advisory services . C¶353; see supra at pp 4-5. (For examples of how TLIC reported this fee/service see DecRL Ex.¶5 Ex D (see "Notes" section of each exhibit page)). Count VIII alleges that TLIC provided investment advice to Plaintiffs for a fee without registering with the SEC, thereby violating IAA § 203(a) – the predicate violation for Plaintiffs' IAA § 215(b) claim.

## ARGUMENT

### Point I

**BY VIRTUE OF MAINTAINING PLAN ASSETS IN A SEPARATE ACCOUNT, PROVIDING INVESTMENT ADVICE, AND EXERCISING DISCRETION TO ALTER ITS COMPENSATION, TLIC IS AN ERISA FIDUCIARY WITH REGARD TO ITS COMPENSATION**

### A.    Fiduciary Status Should Not Be Decided on a Motion to Dismiss

When assessing fiduciary status, courts employ a functional test that examines whether the entity has performed the tasks listed in ERISA § 3(21)(A). See In re Unisys Corp. Retiree Medical Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009). Given the fact intensive nature of this inquiry, a determination of fiduciary status should await the completion of discovery:

> [T]he determination of whether a party is an ERISA fiduciary is a 'functional one', the determination will not typically be resolved at the motion to dismiss stage . . . the Court will be able to undertake the fiduciary duty inquiry only after full discovery.

Beye v. Horizon BC/BS of N.J., 568 F. Supp. 2d 556, 576 (D. N. J. 2008); see also, cases collected at Woods v. Sullivan. Co., 396 F. Supp. 2d 1351, 1365 (N. D. Ga. 2005).

Resolution of fiduciary status should not be made prior to discovery because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." Braden v. Walmart Stores Inc., 588 F.3d 585, 598 (8th Cir. 2009). Unless this Court can conclude as a matter

8

of law that TLIC is not an ERISA fiduciary, TLIC's motion to dismiss should be

denied. See Board of Trs. of Bricklayers v. Wettlin Assoc., 237 F.3d 270, 273 (3d Cir.

2001).

### B.    TLIC is an ERISA Fiduciary

#### 1.    Introduction

Under ERISA § 3(21)(A), an entity is an ERISA fiduciary to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or **exercises any authority or control respecting management or disposition of its assets**, (ii) he **renders investment advice for a fee**..., direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he **has any discretionary authority** or discretionary responsibility **in the administration of such plan**. (Emphasis added).

This definition sets forth four bases upon which a court may find fiduciary

status.   Under ERISA §3(21)(A)(i), one may be a fiduciary, first, by exercising

discretion over plan management or, second, by "exercising any authority or control"

over plan assets:

> A significant difference between the two clauses [of ERISA §3(21)(A)(i)] is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets.  This distinction is not accidental-it reflects the high standard of care trust law imposes upon those who handle money or assets on behalf of another.... [T]he statute treats control over the cash differently from control over administration...any control over disposition of plan money makes the person who has the control a fiduciary.

Bd. of Trs. of Bricklayers, 237 F.3d at 273 (internal citations and quotations omitted)

Third, under ERISA §3(21)(A)(ii), one who renders investment advice is a fiduciary, and under ERISA §3(21)(A)(iii), the retention of discretion to administer a plan, confers fiduciary status.

An assessment of fiduciary status should be informed by the Supreme Court's recognition of Congress' desire to impose "fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive," John Hancock Mut. Life Ins. Co. v. Harris Trust and Savs. Bank, 510 U.S. 86, 96 (1993), and the requirement that the term "fiduciary" be broadly construed. In re Unisys Corp. Retiree Medical Ben. ERISA Litig. 57 F.3d 1255, 1261 n. 10 (3d Cir. 1995).

TLIC is a fiduciary to the Plaintiff Plans with regard to its compensation on three independent grounds: (1) TLIC placed Plan assets in separate accounts and assumed fiduciary responsibilities with regard to those assets; (2) TLIC provided investment advice to Plaintiffs regarding its fees; and (3) TLIC retained and exercised discretion to increase its compensation earned on Plan assets.

### 2. TLIC is an ERISA Fiduciary With Regard to its Compensation Because the Plaintiffs Plans' Assets Are Held In Separate Accounts

TLIC is a fiduciary with respect to the fees which it charges on Plaintiffs' investments because TLIC holds Plaintiffs' assets in separate accounts. C¶149-51. (See ERISA §401(c)(5) and 29 C.F.R. §2550.401c-1(d)(2)(c)). When it enacted

ERISA, Congress mandated that "insurance companies are to be responsible under the general fiduciary rules with respect to assets held under separate account[s]...and the assets of these contracts are to be considered as plan assets." H.R. Conf. Rep. 93-1280, 5077 (Appendix ("App.") A). See Tr. of Laborers Local No. 72 Pension Fund v. Nationwide Life Ins. Co., 783 F. Supp. 899, 905 (D. N.J. 1992) (Plan funds deposited in separate account are subject to ERISA fiduciary duty) ;(Mack Boring & Parts v. Meeker, 930 F.2d 267, 275 (3d Cir. 1991); Midwest Cmty Health Serv., Inc. v. Am. United Life Ins. Co. 255 F.3d 375, 377-78 (7th Cir.); Adkins v. John Hancock Mut. Life Ins. Co., 957 F.Supp. 211, 214-15 (M.D. Fl. 1997); 29 C.F.R. §2510.3-101(h)(iii)(assets in insurer's separate account are plan assets); and Department of Labor ("DOL") Advisory Opinion (DOL Adv. Op.) 2005-22A (App. B). Cf. Bd. of Trs. of Bricklayers, 237 F.3d at 273 and John Hancock Mut. Life Ins. Co., 510 U.S. at 96 (insurer is a fiduciary for funds in GACs because it retains the authority to set prices and the participant bore the risk of fluctuations in value).

Once participants' funds were deposited into separate accounts, TLIC became a fiduciary with regard to the use of those funds and was responsible for ensuring that the fees paid from those funds did not violate ERISA §§ 404 or 406. See H.R. Conf. Rep. 93-1280, 5077 (App. A) and Mack Boring, 930 F.2d at 275 (insurer responsible under "general fiduciary rules with respect to assets held under separate account").

### 3.   TLIC Is a Fiduciary Because It Provides Investment Advice for a Fee

TLIC ignores the significance of its investment advice, relegating it to a single reference in a footnote 21 at Db15. Under ERISA §3(21)(A)(ii), an entity is a fiduciary if it "renders investment advice for a fee..., direct or indirect..."

At the selection stage, TLIC provides investment advice on the choice of investment options using its Transamerica Investment Monitor, which it describes as its "proprietary, comprehensive due diligence process for selecting and monitoring the investment choices offered for **your** retirement plan." C¶181. TLIC promises to "seek to identify managers...that have the resources, processes and potential to deliver consistent performance over time." C¶181. Additionally, a TLIC "financial advisor can help...select the investments...that meet the client's specific needs...." DecRL¶6Ex.E. TLIC represents that it "maintains the highest standards in selecting and continually monitoring the investment choices offered for your retirement plan line-up." C¶181. By providing particularized advice on investment selection, TLIC is a fiduciary. 75 Fed. Reg. 65263, 65268, 65270-71 (Oct. 22, 2010)(App. C).

TLIC is also a fiduciary because it supplies a Fiduciary Warranty. In order to receive the fiduciary warranty, a plan sponsor

> [m]ust select from Transamerica's models or...the investment choices [selected]...must at a minimum and at all times include at least one investment choice from each of the following....(DecRL¶2, Ex.A; C¶157)

If a TLIC model is selected, TLIC "warrants...the Transamerica investment line-up...will meet the prudence requirement of section 404(a)(1)(B) of ERISA...."DE 1373.  By advising Plans that its investment menus satisfy ERISA's requirements, TLIC is rendering investment advice.  Moreover, an employer has an overwhelming incentive to obtain the protection offered by the warranty and to include funds from the TLIC models, irrespective of whether they are superior to other funds. TLIC's recommendations are therefore rubber stamped by employers and, for that additional reason, TLIC is a fiduciary.  C¶155-63.  By virtue of providing these investment advisory services, TLIC is a fiduciary.  See, eg. 75 Fed. Reg. 65263, 65268, 65270-71 (Oct. 22, 2010) (App. C);  Pension Fund Mid Jersey Trucking Indus.  Local 701 v. Omni Funding Grp, 731 F. Supp. 161 (D.N.J. 1990); Stanton  v. Shearson Lehman/ Am. Express, 631 F. Supp. 100 (N.D. Ga. 1986) and Procacci v. Drexel Burnham Lambert, Inc., No. 89-0555, 1989 WL 121984 (E.D. Pa. Oct. 16, 1989) (App. D).

After a Plan's investment menu is established, TLIC provides investment advice via its "Fiduciary Management Program." (A copy of this program is attached to the DecRL ¶7 Ex F).  Through this program, TLIC renders investment advice on, among other things, the fees it charges Plaintiffs on its investment options.  According to TLIC:

**Investment Choice Review and Selection Process**

Transamerica considers reviewing performance a critical component of the selection and monitoring process....   TIM [the TLIC Investment Monitor] examines six different criteria: ...

- Fees & Expenses... C¶181

Using this program, TLIC renders investment advice, regarding a plan's investment options, for a fee.[3]  It does so by assigning a numerical score to six attributes of each investment option and then assigning an overall score. Id. at 2. An investment option's "Quantitative Analysis Score" can range from 1 to 5, with 5 being the highest score. Id. at 2, 17.   One of the attributes evaluated by TLIC is the separate account investment option's "Fees & Expense." Id.   This evaluation entails comparing the investment option's fees to the " total operating expenses of the separate account and respective peer group...." Id. at 19.   Thus, TLIC renders investment advice on its own fees. TLIC performs this service quarterly and, for every investment option on a plan's menu.  TLIC then communicates its results to each plan in an "Investment Scorecard." Id. at 1.   This service commences, **after** TLIC is retained by a plan.

_____

[3]   See 29 C.F.R. § 2509.96–1, Interpretive Bulletin; fn. 3 (App. E) (fees "should...include all fees or other compensation incident to the transaction...."); see also 40 Fed. Reg. 50842 (Oct. 31, 1975)(App. F) (the fees may "include, for example, brokerage commissions, mutual fund sales commissions, and insurance sales commissions").

By way of example, TLIC awarded the fees and expenses charged by its Vanguard Total Stock Market Index Ret Opt separate account investment option a top score of "5", id. at 7, even though an investment in that separate account results in a participant charge of 93bps, while the identical underlying mutual fund charges the public a fee of 18bps. C¶246.

According to the Department of Labor, programs such as TLIC's do not render investment advice under ERISA 3(21)(A)(ii), only if certain criteria are satisfied:

> [T]he provision of certain information and data to assist a plan fiduciary's selection or **monitoring** of such plan investment alternatives will not be treated as rendering investment advice [i.e., a fiduciary under ERISA 3(21)(A)(ii)] **if the person providing such information or data discloses in writing to the plan fiduciary that the person is not undertaking to provide impartial investment advice.**
>
>      \*              \*              \*
>
> In some cases, consultants receive compensation from the investment companies whose products they recommend to the plan, which could lead them to steer plans towards products for which they receive additional compensation. These arrangements can be harmful to...participants, because the plan may pay excessive fees for the...services which could lower returns. Participants in...401(k) plans are especially vulnerable ....(Emphasis added)

75 Fed. Reg. 65263, 65268, 65270-71 (Oct. 22, 2010) (App. C).

TLIC's Fiduciary Management Program is "not undertaking to provide impartial investment advice." Rather, it provides "comprehensive...process for...monitoring the investment choices offered for your...plan," C¶181, upon which Plaintiffs can rely ("our expertise enables you to focus on your business"). C¶96.

TLIC also renders investment advice directly to the Plan's participants through its "AdviceSolutions" program. C¶¶185-202. Once logged into this website, a participant inputs specific data, including whether the participant smokes, their expected retirement age and salary. C¶¶186-91. The program processes the data and advises the participant which TLIC investment options to choose and the amount that should be invested in each. C¶¶195-98.

TLIC does not dispute that this program constitutes the rendering of investment advice for a fee, which makes it a fiduciary under ERISA §3(21)(A)(ii). Rather it claims that the program is exempt under 29 C.F.R. §2509.96-1(d)(3) (Db 15 n. 21). TLIC errs. That regulation states:

> Asset Allocation Models. Information and materials (e.g. pie charts, graphs) that provide a participant...of asset allocation models of **hypothetical individuals...**where [the regulation then lists four requirements a program must satisfy to be exempt from ERISA 3(21)(A)(ii).]

TLIC is not providing charts of asset models of hypothetical individuals. TLIC's interactive program advises the specific investments a participant should make, in light of their particularized needs. The regulation also lists other requirements, which implicate factual inquiries, none of which TLIC claims to have satisfied.

Most telling, TLIC charges an Investment Management Charge (DecRL ¶¶5 Ex. D; C¶¶266-80). Investment managers are fiduciaries, ERISA §3(21)(A)(ii); TLIC is a fiduciary.

The several advisory services TLIC provides distinguishes it from the Fidelity defendant in <u>Renfro v. Unisys Corp.</u>, __F.3d__, 2011 WL 3630121 (3d Cir. Aug. 19, 2011) ("<u>Renfro</u>") (App. G). In <u>Renfro</u>, "Fidelity's limited role as directed trustee, delineated in the trust agreement, does not encompass the activities alleged as a breach of fiduciary duty - the selection...of investment options...." <u>Id</u>. at *6. Here, in contrast, TLIC advised Plan sponsors on the selection of investment options and regularly rendered investment advice to participants regarding the reasonableness of each investment options' fees C¶181. <u>Renfro</u>, is also distinguishable because it did not involve an insurer who: (1) held plan assets in separate accounts; (2) retained authority to unilaterally change the investment options' fees; (3) could delete investment options; (4) and change the share class of the mutual fund in which plan assets were invested. Unlike Fidelity, TLIC represented, through its fiduciary warranty, that its investment options satisfied the prudence requirement of ERISA § 404(a)(1)(B); it employed a Fiduciary Management Program; and it negotiated for Revenue Sharing Payments credited to illusory and unjustified fees.

### 4. TLIC is an ERISA Fiduciary Because it Exercised its Authority in Ways That Increased Its Compensation

The terms of TLIC's retention by the Plaintiff Plans afford TLIC authority over factors which affected its compensation. By virtue of this authority, TLIC assumed fiduciary status with regard to that compensation. <u>F.H. Krear & Co. v. Nineteen</u>

Named Trustees, 810 F.2d 1250, 1259 (2d Cir. 1987);   accord Ed Miniat, Inc. v. Globe Life Ins. Grp., 805 F.2d 732, 737 (7th Cir. 1986) ("when a contract . . . grants an insurer discretionary authority, even though the contract itself is the product an arms length bargain, the insurer may be a fiduciary").

Here, TLIC is a fiduciary because it has authority and discretion over factors that affect its compensation. For example, TLIC has the authority and discretion to: (1) adjust the fees charged on the investment options; (2) alter the investment menus available to the Plaintiff Plans; and (3) determine the amount and disposition of Revenue Sharing Payments.

### a.   TLIC's Authority to Adjust Fees

It is undisputed that TLIC has the authority to alter fees on investment options:

> We reserve the right to change the Investment Management Charge or the Administrative Charge, upon...at least 30 days [notice].  DE 1270, 1320.

> ...Transamerica reserves the right to:..Assessing a transfer fee or redemption fee for a particular Contract Account [i.e. investment option].... DE 1282.

As the Second Circuit stated in F.H. Krear & Co., 810 F.2d at 1259:

> When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him. Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation.
>
> *          *          *
>
> On the other hand, after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that

determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.

See also, Ed Miniat, Inc., 805 F.2d at 737 ("when a contract...grants an insurer discretionary authority, even though the contract itself is the product of an arms length bargain,[4] the insurer may be a fiduciary") and Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189, 198 (D. Mass. 2008) ("Charters II")[5]:

> [I]t is undisputed that Hancock retained sole discretion to change the maximum administrative maintenance charge at any time upon three-months prior written notice to Charters. That discretion was sufficient to make Hancock an ERISA fiduciary.

TLIC claims it does not have fiduciary responsibility over the fees Plaintiffs are charged because "a party does not act as an ERISA fiduciary in setting the terms of its own retention...," Db16, citing to Hecker v. Deere Co., 556 F.3d 575 (7th Cir. 2009), Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983) and Marks v. Indep. Blue Cross, 71 F. Supp. 2d 432 (E.D. Pa 1999), which relied on Schulist.

---

[4] The facts here do not suggest the GACs were the products of arms length bargaining. TLIC represented to its small sized clients the quality of its investment options when it knew, or should have known, it charged excessive fees.

[5] In Charters II, the Court declined to rule on the issue of whether insurance companies are fiduciaries with respect to assets held in a separate account because it found defendant to be a fiduciary on other grounds and noted that "discretion [is] the touchstone of fiduciary status." Id. at 197. In the Third Circuit, proof of discretion is not required under the second clause of ERISA 3(21)(A)(i). Bd. of Trs. of Bricklayers, 237 F.3d at 273. Further, it does not appear that the Court in Charters considered the cases cited in this brief.

19

These cases are all distinguishable.[6] In none of them did the defendant retain the authority to amend its fees, a fact which is dispositive of fiduciary status. See F.H. Krear & Co., 810 F.2d at 1259. The Seventh Circuit, which decided Schulist and Hecker, concurs with the view that the retention of the authority over a GAC confers fiduciary status. See Midwest Cmty Health Serv. Inc., 255 F.3d at 376 ("[w]e have twice held that an insurer's discretionary authority or control over group insurance contracts purchased by employee benefit plans subjects the insurer to ERISA fiduciary standards") and Ed Miniat, Inc., 805 F.2d at 738 (insurer a fiduciary because "[t]he power exercised by...[it] does not appear to be qualitatively different from the ability to choose investments"). See also Charters II, 583 F. Supp. 2d at 197 (Schulist inapplicable due to power to amend fee).

TLIC also argues that Plaintiffs are required to plead that TLIC actually exercised its authority. However, the retention of discretion alone is sufficient. Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 108 (D. Conn. 2009) ("Haddock II")("even if such authority was never exercised, by itself constitutes sufficient authority...to make it a fiduciary"). By maintaining impermissible fees when TLIC had the authority to amend them, and assuming the responsibility to monitor and advise on fees, TLIC became a fiduciary. Moreover, even, without the

---

[6] Marks is also distinguishable because there the plan "shifted the risk from itself to [the insurance company]," Marks, 71 F. Supp. 2d at 435, which is not the case here. TLIC bore none of the risk, Plaintiffs bore the entire investment risk.

benefit of discovery, Plaintiffs have uncovered evidence that TLIC has altered its fees. DecRL¶8Ex.G. Discovery will likely reveal other instances in which TLIC exercised this authority. See Braden, 588 F.3d at 598 ("ERISA plaintiffs...lack the inside information necessary to make...their claims...unless...discovery commences").

TLIC also claims that, because it provides thirty days notice of changes to its Investment Management and Administrative Charges, it is not a fiduciary. Db9. Charters II, involved a contract with a three month advance notice provision, and the Court still found the insurer to be a fiduciary. Id. at 198. Furthermore, here, if TLIC elected to change the transfer or redemption fees which it charged, no advance notice was required, DE1233,1282,1297, and were Plaintiffs to reject a change and opt out of the TLIC plan, they would be assessed a termination fee. DE 1226 and DecRL ¶3 Ex.Bp.2. Thus, Plaintiffs are compelled to pay either the increased fee or the termination fee when TLIC changes its fee structure.

### b. TLIC's Ability To Alter the Investment Menu

TLIC is a fiduciary because it retains the authority to add/delete investment options after a plan's menu has been established. C¶¶152-4. These deletions may occur in the context of TLIC's Fiduciary Management Program (i.e., the option fails TLIC's "stringent criteria") or "[f]or other reasons at its discretion." Dec RL ¶7, Ex.F p15 See also DE 1223,1248. This authority affords TLIC the ability to alter its compensation to the detriment of Plan participants.

An insurance company that retains the authority to delete investment options from a 401(k) menu is a fiduciary. See Charters v. John Hancock Life Ins. Co. 534 F. Supp. 2d 168, 171-73 (D. Mass. 2007)("Charters I"); Charters II, 583 F. Supp. 2d at 196-200; Haddock v. Nationwide Fin. Svs. Inc., 419 F. Supp. 2d. 156, 164-68 (D. Conn. 2006) ("Haddock I"); Haddock II, 262 F.R.D. at 106-9; and Phones Plus Inc. v. Hartford Fin. Svs. Grp., No.2:06-cv-01835, 2007 WL 3124733 *2-6 (D.Conn. Oct. 23, 2007) ("Hartford") (App. H). Plaintiffs fiduciary allegations are more compelling because here the additions/deletions were based on TLIC's investment advice.

TLIC claims Hecker absolves it of liability. However, Hecker distinguished its holding from Haddock I, because, as is the case here, "the service provider... had the authority to delete and substitute mutual funds from the plan without seeking approval...." Hecker, 556 F.3d at 584. In a subsequent decision, the Haddock Court reiterated this very distinction from Hecker. See Haddock II, 262 F.R.D. at 108, n. 6.

Nor is Renfro inconsistent with Plaintiffs' position. Renfro rejected a claim of ERISA fiduciary status, alleged only under ERISA §3(21)(A)(iii) and based upon plaintiff's assertion that Fidelity could veto proposed changes to the investment lineup. The Court held that the "veto power" was meaningless because Fidelity could only refuse to provide administrative services on any proposed additions to the investment menu and "Fidelity had no contractual authority to control the mix...of investment option," Id. at *6. Plaintiffs' fiduciary allegations here are not based on

a veto power, but on other factors, including, TLIC's authority to "control the mix" of investment options; decisions made as a consequence of TLIC's investment advice that it conveyed to Plaintiffs.

TLIC incorrectly relies on DOL Adv. Op. 97-16A ("97-16A"), in which the DOL opined that, if certain conditions are met, an insurer may retain the ability to delete investment options and not become a fiduciary. The requirements include that the insurer (a) not render any investment advice; (b) not assess contract termination fees; and (c) provide 120 days advance notice of any change. Id. at 1 and 5. As discussed above, TLIC fails to satisfy the first two criteria. TLIC renders investment advice regarding the investment options and charges contract termination fees.

Ignoring both of these criteria, TLIC argues that it satisfies the requirements of 97-16A because it provides "six months advance notice" of changes. Db19. Satisfaction of one of the three criteria is insufficient. Moreover, under the Gain Plan's GAC, a deletion can occur "with less notice than is otherwise required under the...Contract." DE 1282 (i.e., not 120 days notice). Also, for those separate account investment options that invest in a mutual fund, TLIC is free to replace the underlying mutual fund, without advance notice. DE 1291, 1325 ("[s]uch funds may...be invested in any securities..."). A change in the underlying mutual fund is identical to replacing the investment option.

Finally, TLIC argues that Plaintiffs have not plead that TLIC actually exercised its authority. Plaintiffs are not required to plead as much; the possession of authority alone suffices. Haddock II, 262 F.R.D at 104, n.3 ("Whatever authority Nationwide may or may not have exercised...the pertinent issue here relates to Nationwide's ability to shape the universe...funds"). Further, discovery will likely reveal menu changes. Braden 588 F.3d at 598. In sum, TLIC had the authority to delete investment options and replace them with lower or higher priced alternatives and thus is a fiduciary.

### c. TLIC's Authority Over Revenue Sharing Payments

TLIC is also a fiduciary because it effected its compensation by retaining Revenue Sharing Payments on the pretext that these payments defrayed Investment Management and Administrative Charges, – charges that were largely illusory. C¶¶266-78; 284-94. An insurance company (like TLIC) that "pool[s]...billions of dollar of retirement assets" and "leverages its position as...gatekeeper to those funds to extract revenue sharing payments...in exchange for giving the mutual funds the opportunity to be investment choices..." is a fiduciary. Haddock II, 262 F.R.D. at 107. See IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421(9th Cir. 1997) ("'Any' control over disposition of plan money makes the person who has the control a fiduciary....").

In sum, TLIC placed plan assets in separate accounts, it rendered investment advice, it exercised discretion to alter or maintain its fees, it had authority to change and the menu of investment options, and it diverted Revenue Sharing Payments. Plaintiffs have plausibly alleged that TLIC is a fiduciary.

## POINT II
## TLIC VIOLATED ERISA DUTIES OWED TO PLAINTIFFS

### A.    TLIC Violated its ERISA Duties of Prudence and Loyalty

ERISA's goals, "to protect...employees, [and] to enforce strict fiduciary standards," In re Unisys Savs. Plan Litig., 74 F.3d 420, 434 (3d Cir. 1996), are achieved by the imposition of the duties of loyalty and prudence.  ERISA § 404(a). Fiduciaries must act "solely in the interest of...participants;" ERISA fiduciary obligations "are the highest known to the law." Braden, 588 F.3d at 595, 598.

As discussed in Plaintiffs' Statement of Facts, Counts I, II, IV, V and VI allege that TLIC breached its fiduciary duties by charging Plaintiffs excessive fees on investments into TLIC investment options. Db13. Excessive fee claims are actionable under ERISA § 404(a). See, e.g, Braden, 588 F.3d at 595 ("retirement plans of such size...have the ability to obtain institutional class shares of mutual funds [cheapest share class]");  Boeckman v. A.G. Edwards, Inc., 461 F. Supp. 2d 801, 811 (S.D. Ill. 2006); and Goldenberg v. Indel Inc., 741 F.Supp.2d 618, 635 (D.N.J. 2010) ("two funds could be identical....this would not justify the use of one...inferior fund").

In Renfro, the Court ruled that the range in fees of the investment options offered to a plan should be considered in evaluating excessive fee claims Id. at 10. Thus, in Renfro, the Court found that "the expense ratios on the funds included in the Unisys plan ranged from 0.1% [10bps] to 1.21% [121bps]" and that "[e]valuating plaintiffs' complaint in light of a[]...plan having a reasonable range of investment options with a variety of risk profiles and fee rates, we believe plaintiffs have provided nothing more than conclusory allegations." Id. at *2 and *10. The Court reached its conclusion by relying on Hecker, where the investment options had "fee ratios rang[ing] from .07% [7bps] to just over 1% [100bps]." Id. at *9.

Unlike the defendants in Hecker and Renfro, TLIC provided non-market rate investment options with expense ratios ranging from .65% [65bps], up to 1.97% [197bps]. One hundred and eight of the investment options had fees in excess of 1.21% [121bps]. DecRL¶9 Ex.H. Thus, while TLIC allowed each Plan to have on its menu either 50 or 80 investment options, C¶14, it offered no low fee investments options.

Plaintiffs here, unlike those in Renfro, allege that the TLIC investment options included a large unjustified fee in excess of the market rate fee charged by the underlying mutual fund. (Counts I and II). C¶249. Based on a review of SEC filings, of the 140 TLIC separate account investment options that invest in a mutual fund, 110 of them charges fees that exceed those of the underlying mutual funds' fees. DecRL¶¶

10, 11 Ex. I and J.   With respect to 48 of these investment options that invest in the *retail* share class of a mutual fund, TLIC charged Plaintiffs fees in excess of the fees charged by that share class of the mutual fund. DecRL¶10 Ex.I.  This excess was as high as 9 times the fees charged by the underlying retail mutual fund. DecRL¶10 Ex.I. The remaining 62 investment options that charged fees in excess of the underlying mutual fund invest in either the mutual fund's *institutional* share class, or a similar type of share class. DecRL¶11 Ex.J.   Here the excess was more than 2.5 times the fees charged by the underlying fund. DecRL¶11 Ex.J. As the Court noted in Renfro, "plaintiffs take issue with the inclusion of an array of Fidelity retail mutual funds-funds that are available on the same terms to investors in the open market." Id. at *8. TLIC's investment options are significantly more expensive than those available on the "open market." Since an investment in a separate account investment option only results in the investment in a mutual fund, C¶253, any fees in excess of the underlying mutual funds' fees, especially unjustified fees,  are excessive.

Passing from their legal argument, TLIC raises a number of factual defenses to Plaintiffs' claims, none of which should be resolved on a motion to dismiss.  For example, TLIC contends that the Investment Management and Administrative charges, upon which it relies to justify its fees that  exceed the underlying mutual funds' fees, were not excessive.  According to TLIC, "Plaintiffs' argument ignores the services TLIC provides."  Db18.  However, Plaintiffs claim that, in addition to

the separate account Investment Management and Administrative charges (which Plaintiffs contend are for non-existent services, see supra at 4-6), TLIC charges Contract Asset Charges and other fees which are duplicative. See supra at p. 3.

Count V alleges that TLIC breached its fiduciary duties by not investing in the institutional share class of the underlying mutual funds. Unlike, the Renfro plaintiffs, Plaintiffs here are not claiming that TLIC should have offered different investment options, but the same investment options, just that TLIC should have used its leverage (examples of TLIC's leverage are listed in C¶318) to gain access, for Plaintiffs, to the institutional share class of the underlying mutual fund. TLIC had $19.5 billion in retirement assets under management and would readily qualify for the investment minimum of any institutional share class. DecRL¶12 Ex.K. Rather than using that leverage for Plaintiffs' benefit, TLIC used it to secure Revenue Sharing Payments for itself that it disguised by "crediting" those payments against illusory Investment Management and Administrative Charges. Compare Renfro at * 10 ("[P]laintiffs have not contended there was any sort of concealed kickback scheme"). Plaintiffs make that very contention here. Moreover, here TLIC mislead Plaintiffs that its fees were low, DecRL¶7 Ex.F., when a lower fee share class of the identical mutual fund was available.

Count III, which alleges that TLIC's receipt of revenue sharing payments violated ERISA § 404(a), states a claim. See Hartford, at *5(App. H) and Haddock I 419 F.Supp. 2d. at 162 (D.Conn. 2006):

> Although Nationwide contends that it contracted with the mutual funds to provide services to the funds, a fact finder...could conclude...the contracts, were a guise for making payments to Nationwide or that Nationwide provided only nominal services....

According to TLIC, "it used revenue sharing payments to offset the Investment Management....Charges. Those payments redounded to the...Plans...." Db22. Even if this assertion were true, it would still be inappropriate to consider on a motion to dismiss, given Plaintiffs' allegation that the charge was unnecessary; a fiction created by TLIC so that it appeared to Plaintiffs that they received a benefit on account of receipt of the Revenue Sharing Payments. C¶¶266-77;281-95. Compare Renfro at * 10. TLIC's disclosure of the Revenue Sharing Payments does not absolve it of liability. Db9. Justifying retention of the payments on a false premise, that these payments offset unnecessary fees, is the same as concealing them.

Thirty of the TLIC investment options did not invest in mutual funds, but rather were separate accounts that invested in a collective investment trust or were simply traditional separate accounts (the separate account acts like a mutual fund). These investment vehicles should charge lower fees than a comparable mutual fund. C¶326. Count VI alleges that the fees TLIC charged on these investment products were

excessive because they exceeded that of a comparable mutual fund. Collective investment trusts and traditional separate accounts are not subject to the SEC's disclosure requirements, C¶329, therefore limited information exists with respect to these investments. However, paragraphs 330-333 of the Complaint rely on the public information and demonstrate that Plaintiffs' claims are well-founded.

### B.     The Defendants Committed Prohibited Transactions

"Section 406(b) prohibits a plan fiduciary from engaging in... self -dealing." Reich v. Compton, 57 F.3d 270, 287 (3d Cir. 1995). ERISA requires that § 406(b) be "broadly construed and...liability be imposed.... even where there is no taint of scandal, no hint of self-dealing...." Id. at 288 (internal quotations omitted).

Counts I, II, III, IV, VI and VII allege that TLIC committed prohibited transactions ("PT") under ERISA §§ 406(b)(1) and (3), by charging fees to separate account investment options over which TLIC exercised control. Counts IV and VII are brought against TIM and TAM, and arise under the same general theory.

The DOL and Courts have held that an investment in an entity in which a fiduciary has an interest is a PT under ERISA §§ 406(b)(1) and (3). See Goldenberg, 741 F. Supp. 2d at 633; Lowen v. Tower Asset Mgmt., 829 F.2d 1209, 1212 (2d Cir. 1987) and In Re Regions Morgan Keegan ERISA Litig., 692 F. Supp. 2d 944, 959-60 (W.D. Tenn. 2010). See also, Prohibited Transaction Exemption ("PTE") 77-4 (App. I) (unless waived, payment of "investment management ...fee" to investment manager

of a mutual fund, where the advisor to the fund is a plan fiduciary, is a PT.); DOL Adv. Op. 94-35A (App. J) (The PTE 77-4 exemption only applies (i) where plan was given a credit for fees it would otherwise pay in an amount equal to the fund's investment management fee and (ii) made disclosures, not provided here); see DOL. Adv. Op. 93-13A (App. K ). Count III, which alleges TLIC's receipt of Revenue Sharing Payments was a PT, states a claim under ERISA § 406(b)(1) and (3). Haddock I, 419 F. Supp. 2d at 171 and Hartford *2-5.

TLIC argues that Plaintiffs have failed to identify a "specific" transaction that is a PT.  Db23.  Clearly the payment of Revenue Sharing Payments to TLIC by the mutual funds is a specific transaction.  Moreover, since the investment options offered by TLIC are considered independent of TLIC (See Prudential Life Ins. Co. v. SEC, 326 F.2d 383, 387 (3d Cir. 1964) ("the fund is separable from the insurance company")), a prohibited transaction occurs when TLIC charges fees on the investment options.

Wright v Or. Metallurgical Corp., 360 F.3d 1099 (9th Cir. 2004), on which TLIC relies, is distinguishable. There, plaintiffs alleged a PT based on the fiduciary's failure to sell lawfully owned company stock.  Id. at 1101.  Thus, no transaction occurred.  Here, transactions occurred on which TLIC charged fees to Plaintiffs.

Next TLIC argues that it had no fiduciary responsibilities because the Plan sponsors constructed the investment menu.  However, TLIC offered investment

options that, if chosen, precipitated a PT. In addition, after a menu was established, TLIC was a fiduciary for the reasons set forth above.

Relying on, 29 C.F.R. § 2550.408b-2(c)(2), TLIC claims it did not commit a PT under ERISA § 406(b)(1), because it did not use any of the authority or responsibility which made it a fiduciary to commit a PT. Db24 to Db25. TLIC ignores the fact that it is a fiduciary under ERISA § 3(21)(A), with regard to assets in its separate account and because it rendered investment advice.

TIM and TAM argue that Plaintiffs' claims fail under ERISA § 401(b)(1) because the Defendants received their fees from mutual funds (not separate accounts). TIM's and TAM's brief at 6. This Court rejected that same argument in Goldenberg, F.Supp.2d at 632-33. See also Haddock I, 419 F.Supp.2d at 170; Hartford at *5; and the authorities discussed above, which hold that PTs occur when fees are received from mutual funds. Hecker, did not involve a PT.

TIM and TAM also argue that Plaintiffs' claims fail because Great West Life v. Knudson, 534 U.S. 204 (2002) imposes a tracing requirement. Knudson, and the other cases relied upon by TIM/TAM, did not involve a PT. Additionally, in Sereboff v. Mid Atlantic Medical Serv., 547 U.S. 356 (2006),[7] the Supreme Court stated:

---

[7] Renfro, in *dicta*, states "[ERISA 502(a)(3)] does not "authorize suit against 'nonfiduciaries' charged solely with participating in a fiduciary breach." Id. at 8. TIM/TAM are nonfiduciaries, but, their liability arises from participating in PTs (not fiduciary breaches). In Sereboff, recovery was allowed against nonfiduciaries.

> [Plaintiffs] assume that <u>Knudson</u> endorsed application of ...the tracing rules to every action...under § 502(a)(3).  This assumption is inaccurate.

<u>Id</u>. at 365.   Moreover, TIM's and TAM's position is inconsistent with <u>Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.</u>, 530 U.S. 238, 250 (2000), where the Court held that under ERISA §502(a)(3), plaintiffs may recover from non-fiduciaries for PTs, and never alluded to a tracing requirement.

A tracing requirement, as a condition of a PT claim, would eviscerate the protections of ERISA § 406. Affiliates of a fiduciary could prevent tracing by transferring fees, as occurred here when TIM ceased operations after it was sued. Regardless,  Plaintiffs have adequately traced the fees to TIM/TAM's  possession. C¶¶338-41. If more extensive tracing is required, discovery is needed. <u>Braden</u>, 588 F.3d at 602 ("It would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts ...in the sole control of the parties who stand accused....")

### C.    A Pre-Suit Demand Is Not Required Under ERISA

Relying on <u>Santomenno v. John Hancock Life Ins. Co.</u>, C. A. No.2:10-cv-01655, 2011 WL 2038769 (D.N.J. May 23, 2011) *appeal docketed* No. 11-2520 (3d Cir. June 3, 2011) ("<u>Hancock</u>")(App. L), TLIC argues for dismissal because "Plaintiffs...failed to make a pre-suit demand on the...plans' trustees" or "failed" to join the plan fiduciaries responsible for retaining TLIC." Db28.  <u>Hancock</u> was

incorrectly decided. In <u>Hancock,</u> as here, Plaintiffs sought relief for violations of

ERISA §§ 404 and 406, under ERISA §§ 502(a)(2) and (3). This statute provides:

> Persons empowered to bring...-A Civil Action may be brought-...(2) by the
> Secretary, or by a participant, beneficiary...**or** fiduciary...(3) by a participant,
> beneficiary, **or** fiduciary.... (emphasis added).

The <u>Hancock</u> Court acknowledged that, "Courts in other circuits have rejected the

imposition of a pre-suit demand" but "[t]he Third Circuit has not spoken to this

precise question." <u>Hancock,</u> *2-3. Nevertheless, according to <u>Hancock:</u>

> The Second Circuit has held that in relation to an ERISA § 502(g) claim,
> which is akin to the Section 502(a) claims here, '[a] participant in a fund
> governed by ERISA can sue derivatively on behalf of the fund only if the
> plaintiff first establishes that the trustees breached their fiduciary duty.' <u>Diduck</u>
> <u>v. Kaszycki & Sons Contractors, Inc.,</u> 874 F.2d 912, 916 (2d Cir. 1989)

<u>Id</u> at 4. However, the Second Circuit, in a subsequent decision, rejected this reading:

> It is true that in <u>Diduck</u>,..., we concluded that Rule 23.1 was applicable to a suit
> brought by participants on behalf of an ERISA plan. <u>Diduck</u>, 974 F.2d at 287.
> But <u>Diduck</u> involved an action brought under ERISA § 502(g)(2), 29 U.S.C.
> § 1132(g)(2), not section 502(a)(2). Section 502(g)(2) authorizes fiduciaries,
> but no one else, to obtain unpaid contributions pursuant to ERISA §
> 515...which requires employers participating in multi-employer ERISA plans
> to make...contributions to the plans. Because section 502(g)(2) only applies to
> suits by fiduciaries, it is sensible to require plan participants, if they may assert
> the fiduciaries' right of action at all, to follow Rule 23.1, which applies when
> the appropriate plaintiff has "failed to enforce a right which may properly be
> asserted by it." Fed.R.Civ.P. 23.1. Section 502(a)(2), unlike section 502(g)(2),
> provides an express right of action for participants.... Because plan participants
> are expressly authorized to bring suit under section 502(a)(2), the situation
> here is not controlled by <u>Diduck</u>.

<u>Coan v. Kaufman,</u> 457 F.3d 250, 258 (2d Cir. 2006).

Consistent with the logic of <u>Coan,</u> the Third Circuit has held:

> 1132(a)(3) [502(a)(3)], on the other hand, creates a remedy for "structural...
> violations of the ERISA scheme." <u>Livolsi</u>, at 602. This latter remedy is
> available **to beneficiaries as well as fiduciaries**..... In 1980, however,
> Congress added section 1132(g)(2) [502(g)(2)], which authorizes awards for
> unpaid employer contributions,... but only in actions '**by a fiduciary for or on
> behalf of a [multiemployer] plan ....**' (emphasis added)

<u>Struble v. NJ Brewery Emps. Welfare Trust Fund</u>, 732 F.2d 325, 337 (3d Cir. 1984).

Further, in <u>Renfro</u>, the Third Circuit implicitly overruled the dismissal of the

<u>Hancock</u> plaintiffs' claims under ERISA § 502(a)(3), confirming that "[ERISA §

502(a)(3)] authorizes direct suits against fiduciaries..." <u>Renfro</u> at *8. Here Plaintiffs

claims are made under both ERISA §§ 502(a)(2) and (3). Thus, to the extent the Court

is persuaded by <u>Hancock's</u> pre-suit demand requirement under ERISA § 502(a)(2),

that analysis is inapplicable to their claims under ERISA § 502(a)(3).

<u>Hancock</u> is inconsistent with the text of ERISA because, while 502(g)(2)

actions may only be brought by a plan fiduciary, ERISA §502(a)(2) and (3), expressly

afford standing to participants without the need to make a pre-suit demand.

Moreover, <u>Hancock</u> defies the Supreme Court's direction on statutory

interpretation:

> We do not lightly assume that Congress has omitted from its adopted text
> requirements that it nonetheless intends to apply, and our reluctance is even
> greater when Congress has shown elsewhere in the same statute that it knows
> how to make such a requirement manifest.

<u>Jama v. Immigration & Customs Enforcement</u>, 543 U.S. 335, 341 (2005).

The <u>Hancock</u> opinion suggests its holding is based on trust law.  However, as the Supreme Court stated in <u>Varity Corp. v. Howe</u>,  516 U.S. 489, 528 (1996):

> Though we have recognized that Congress borrowed from the common law of trusts in enacting ERISA, we must not forget that ERISA is a statute, and in every case involving construction of a statute, the starting point ... is the language itself. (Internal citations and quotations omitted).

Requiring a pre-suit demand is not only inconsistent with the text of § 502(a)(2), it also contradicts ERISA's purpose. <u>See</u> <u>Varity Corp.</u>, 516 U.S. at 513:

> ERISA's basic purposes favor a reading...that provides the plaintiffs with a remedy. The statute itself says that it seeks
>
> 'to protect ... the interests of participants ... and ... beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries ... and ... providing for appropriate remedies ... **and ready access to the Federal courts.**' ERISA § 2(b).   (emphasis added)

<u>See also</u> <u>Braden</u>, 588 F.2d at 598. ("Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties...").

Further, even if there was a reason to consider trust law, the Court in <u>Hancock</u> misapplied a proposition found in secondary authorities on trust law, which provides that "as long as the trustee is . . . willing to take . . . proceedings against . . . third persons . . .," the beneficiary is foreclosed from doing so. <u>Hancock</u> at *3 (citing George T. Bogert, <u>Trusts</u> 610 (6th ed. 1987) and Restatement (Second) of Trusts, § 282 cmt. a (1959)). However, both authorities refer to actions against **third persons**; not against fiduciaries.   In fact, Bogert and the Restatement provide that the law

which governs beneficiary actions against fiduciaries mandates that **only** the beneficiary can sue a fiduciary, and that a beneficiary has a direct cause of action against a fiduciary for damages sustained from a breach of trust. See Restatement (Second) of Trusts, §§ 199 and 200 (1959) and George T. Bogert, Trusts 558 (6th ed. 1987).

Hancock is also inconsistent with the DOL's amicus brief in Coan v. Kaufman (App. M), and the decisions of all Circuit Courts that have examined this issue. See Kayes v. Pacific Lumber Co. 51 F.3d 1449, 1462 -1463 (9th Cir. 1995) and Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir. 1981):

> Congress has not expressly adopted such a limitation on the right to sue under ERISA, the rationale of Rule 23.1 to prohibit champertous litigation ...is inapposite to suits under §1132(a)(2) [502(a)(2)], and the adoption of such a limitation would frustrate the broad remedial objectives of ERISA.

See also, Moeckel v. Caremark Rx. Inc., 385 F. Supp. 2d 668, 685 (M.D. Tenn. 2005) and In re AEP ERISA Litig., 327 F. Supp. 2d 812, 820 (S.D. Ohio 2004).

# POINT III
## PLAINTIFFS HAVE PLEAD PLAUSIBLE CLAIMS UNDER THE IAA

It is a violation of IAA § 203 to act as an investment adviser, without registering with the SEC.  Investment advisers are "companies that 'engage[] in the business of advising **others**' with respect to their investments." IAA § 202(a)(11)[8]

---

[8]  "Investment adviser" is defined in IAA § 202(a)(11). Entities that manage the funds of, and perform investment management services, for a fee, for others, are investment advisers and are required to register with the SEC. See

(Emphasis added). Counts VIII alleges TLIC violated IAA § 203 by acting as an investment adviser to Plaintiffs, without registering with the SEC.

TLIC concedes both that it rendered investment advice for a fee and that it did not register with the SEC. However, it alleges Count VIII fails since "TLIC has not provided investment advice to 'others' within the meaning of the IAA [§ 202(a)(11)]" (Db30) because (i) the separate accounts are "part of TLIC itself;" (ii) TLIC is exempt from registration under IAA § 203(b)(2) and (iii) TLIC " provided advice to the fund not the investors." Db30 to Db31.

## A.    TLIC Advised "Others"

Without the benefit of case law, TLIC urges that it did not advise "others" because it advised the separate accounts, which were part of TLIC. In three respects, this argument belies the realities of the transaction. First, Plaintiffs paid the Investment Management fee, not TLIC. The receipt of compensation in return for investment advice falls within the IAA. Abrahamson 568 F.2d 862, 870. Thus, when a firm provides advice about investment options and monitors investment accounts, it is providing investment advice under the IAA. SEC v. Wash. Inv. Network, 475 F.3d 392, 399-400 (D.C. Cir. 2007). If TLIC did not render investment advice to Plaintiffs, it should not have charged them a fee.

---

Abrahamson v. Fleschner, 568 F.2d 862, 870-71 (2d Cir. 1977).

Second, Plaintiffs enjoyed the gains and bore the losses from these accounts; thus the separate accounts were not "part of TLIC itself," Db30, but separate from TLIC.   For this reason, the Third Circuit, in interpreting the similar Investment Company Act of 1940 ("ICA"), rejected TLIC's argument:

> In substance, the variable annuity contracts which Prudential proposes to sell...provide that the purchaser will make...payments.., the proceeds...will be invested in a portfolio of securities. The purchaser will be credited...with 'units' representing his proportionate interest in this fund. The value of these units will fluctuate...depending upon the investment results of the fund
>
>     *                *                *
>
> [W]e reject Prudential's argument that...a fund refers only to recognizable business entities. ... [T]he Investment Fund is a completely segregated account devoted to investing in securities. ... **Thus, the fund is separable from the insurance company** which..., as the Supreme Court noted ...'guarantee(s) nothing...except an interest in...equities....(emphasis added)

Prudential, 326 F.2d at 384, 387.   TLIC, likewise invests in securities, and guarantees nothing (DecRL¶13,Ex L; DE at 1258 and 1308), and "[t]he assets of each Separate Account are segregated from other assets of the Company" DE at 1269 and 1319.

Third, TLIC cannot be advising the "separate accounts."   They are not legal entities, Db32, and need no advice because they merely mimic the performance of mutual funds that have their own compensated advisors. C¶253.   The only people whom TLIC advised are those paying TLIC's fee:   Plaintiffs.

**B.**    **TLIC Cannot Avail Itself Of the Insurance Company Exemption**

According to TLIC: "[e]ven if the separate accounts were deemed to have a separate existence from TLIC...it would not matter" because investment advisers whose only clients are insurance companies are exempt from registration.  Db31.

TLIC's reliance on  IAA § 203(b)(2), which exempts from registration "any investment adviser whose only clients are insurance companies," is misplaced.  For IAA purposes, TLIC is not an "insurance company." The IAA defines "insurance company," to mean "...an insurance company, whose primary and predominant business activity is the writing of insurance...." IAA § 202(a)(12)/ ICA § 2(a)(18). TLIC has "more than 15,000 retirement plans totaling more than $19.5 billion." DecRL¶12,Ex K.  TLIC manages this money in its separate accounts whose "value fluctuates...in accordance with the ...value of its underlying investments." DecRL¶13,Ex L. Thus, TLIC is selling a "variable annuity product"  (Db30), which is not an insurance product.

TLIC's position is also inconsistent with the position of the Supreme Court. See SEC v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65, 67-73 (1959):

> Respondents are also exempt...if they are 'organized as an insurance company, whose primary business activity is the writing of insurance.... ... The question... is whether respondents are issuing contracts of insurance.
> \*        \*        \*        \*
> The holder of a variable annuity cannot look forward to a fixed...amount....
> \*        \*        \*        \*
> [W]e conclude that the concept of 'insurance' involves some investment risk-taking on the part of the company. ... In hard reality the issuer of a variable

annuity...assumes no true risk in the insurance sense. ... [T]hey guarantee nothing.... There is no true underwriting of risks....

See also SEC No. Action Letter PALIO Jan. 3, 1971 (App. N) ("Since [variable annuity] contracts have been conclusively determined to be securities rather than insurance...it appears that PALIO is **not an insurance company** entitled to the exemption...."(emphasis added) and H.R. Rep. 111-686(I), 111th Cong. 2d Sess., 13 (2010), *14(App. O). Further, in SEC No Action Letter Zenkyoren Asset Mgmt., (June 30, 2011) (App. P), the SEC stated the insurance company exemption only applied to an investment adviser, that was a subsidiary of an insurance company, if the following conditions were met: (i) the insurance company "is the only investor" in the Funds, (ii) the "Funds...are established ...solely for the benefit of the Parent [insurer] in order to enable the Parent...to meet...claim obligations...," and (iii) the adviser "did not hold itself out to the general public as an investment adviser, and provides investment advice only to the Parent...." Id. at 1. Here, TLIC held itself out to the general public as an adviser and the funds consist of Plaintiffs' assets.

### C.    Plaintiffs Are The Recipients of TLIC's Advice

According to TLIC, Count VIII fails because TLIC provides investment services to "the fund, not to the investors." Db31. This contention is flawed. TLIC only charged its investment management fee on separate account investment options that invest in independent mutual funds . DecRL¶5 Ex. D. The only benefit Plaintiffs

receive from this investment is the opportunity to participate in the performance of the underlying mutual fund. C¶¶251-53. These funds already have an investment adviser who is registered with the SEC, independent of TLIC C¶¶274 and 353. As required by ICA §15, these advisors entered into investment management agreements with those funds and by virtue of these agreements, these advisors became a fiduciary to the mutual funds. ICA § 36. TLIC, who is unregistered, did not (and cannot) enter into investment advisory agreements with the independent mutual funds, and thus does not manage their assets. Since TLIC does not render investment advice to the mutual funds that underlie the separate accounts and the only benefit of investing in a separate account is an investment in a mutual fund, investment management services TLIC provides through the separate accounts must be to Plaintiffs. See Count VIII ¶10.

Goldstein v. SEC, 451 F.3d 873 (D.C. Cir. 2006) is distinguishable, inconsistent with Prudential and the SEC's position, and was overturned by Congress. Prior to its removal from the IAA, § 203(b)(3) exempted from registration:

> any investment adviser who during the course of the preceding twelve months has had fewer than fifteen clients and who neither holds himself out generally to the public as an investment adviser....For purposes of determining the number of clients of an investment adviser under this paragraph, no shareholder, partner... shall be deemed to be a client of such investment adviser unless such person is a client... of such...adviser separate and apart from his status as a shareholder, partner....

Relying on this statute, <u>Goldstein</u> held that a hedge fund is the client of the adviser's investment services, not the investors.

First, <u>Goldstein</u> was based on exemption § 203(b)(3). This exemption was added since "Congress did not intend 'shareholders...of a **hedge fund** to be counted as 'clients'," <u>id</u>. at 880, because they do not need the protections of the IAA since hedge funds are "investment vehicles that remain private and available only to highly sophisticated investors...." <u>Id</u>. at 875. TLIC's clients are not highly sophisticated investors, they are participants in small 401(k) plans. C¶94. Further, TLIC has more than 15 investors and held itself out to the pubic as an adviser. Even if the TLIC "funds" (separate accounts) are counted as the clients, TLIC charged its Investment Management Charge on well over 15 separate accounts. DecRL¶5 Ex. D.

Third, <u>Goldstein</u> was based on the fact that a hedge fund is a legal entity ("form matters in this area of the law because it dictates to whom fiduciary duties are owed"). <u>Id</u>. at 882. The separate accounts, as TLIC argues in its brief, are not "legal entities with enforceable rights." Db32. Given the operational aspects of the separate accounts, Plaintiffs were the recipients of TLIC's investment advice. Further, the conflicts that the <u>Goldstein</u> court perceived, when defining the investors of a hedge fund as the adviser's client, as opposed to the fund, are not present here:

> If the investors are owed a fiduciary duty and the entity is also owed a fiduciary duty, than the advisers will inevitably face conflicts....Consider an investment adviser to a hedge fund that is about to go bankrupt. His advice to

the fund will likely include any and all measures to remain solvent. His advice to an investor...would likely be to sell. Id. at 881.

Unlike Goldstein, given the operational aspects of the separate account (i.e., they invest in an independent mutual fund), TLIC's only obligation is to Plaintiffs.

Applying Goldstein to TLIC's separate accounts that are available to the general public is inconsistent with the Third Circuit's decision in Prudential, 326 F.2d at 386-388:

> [S]ecurities legislation must be broadly construed....
>
> *       *       *       *
>
> [I]t is asserted that the purchasers cannot be described as an 'organized group of persons';.... [T]he...provisions of the Act 'are of particular relevance...where the investor is committing his funds to the hands of others...with the view that the funds will be invested...and his fortunes...depend on the success of the investment.' Furthermore, a study of the legislative history of the Act shows that Congress intentionally drafted the statutory definitions in general terms in order to control such situations regardless of the legal form or structure of the investment enterprise. ... The group of individual investors is not a legal entity but rather constitutes in essence a combination of distinct individual interests.
>
> *       *       *       *
>
> The...fact that the investment program...is under the aegis of an insurance company ought not to negate compliance....

Defendants' reading of Goldstein, is also inconsistent with Abrahamson, 568 F.2d at 865-876, and S.E.C. v. Wash. Inv. Network, 475 F.3d 392 (D.C. Cir. 2007).

Further, for TLIC to argue that its advice is to the separate accounts and then posit that it is immune from liability because the accounts are not legal entities is an

attempt to manipulate the IAA. Db32.[9] IAA § 208, prevents this: "[i]t shall be unlawful for any person indirectly...to do any act...which it would be unlawful for such person to do directly under...this title...." Cf SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195 (1963) (IAA should "be construed ...flexibly....") and Abrahmson, 568 F.2d at 872.

Since TLIC confirmed that the separate accounts are not registered (but they should be; see SEC No. Action Letter PALIO Jan. 3, 1971 (App. N)) and are not legal entities, Plaintiffs do not oppose Defendants' motion to dismiss Count IX.[10]

## CONCLUSION

For the above reasons, Defendants' motions to dismiss should be denied.[11]

---

[9] TLIC concedes the separate accounts are not legal entities and thus are incapable of entering, did not enter, into contracts with TLIC (Db32, n. 35). Count VIII ¶10 states that TLIC entered into contracts with the Plaintiffs, on account of their investments into the TLIC investment options, pursuant to which it rendered investment advice and charged Plaintiffs an investment management charge. As the separate accounts are not legal entities and did not enter into contracts with TLIC, TLIC's investment advice had to be to Plaintiffs.

[10] TLIC claims ERISA invalidates Plaintiffs' IAA claim. In the context of the IAA, it was Plaintiffs who were charged the investment management fee for TLIC's advisory services, and thus their claims are viable irrespective of ERISA. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc., 534 U.S. 124, 143 (2001) and In re Udell, 454 F.3d 180, 185 (3d Cir. 2006). TLIC incorrectly claims "the participants are not security holders in those separate accounts." (Db33). This Court, and the SEC, rejected that argument. Goldenberg 741 F.Supp.2d at 643.

[11] In the event the Court grants any part of the Defendants' motions to dismiss, Plaintiffs respectfully request leave to amend their Complaint.

Respectfully submitted,

Dated: September 1, 2011

s/Robert Lakind
Robert Lakind
SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road
Lawrenceville, New Jersey 08648

s/Moshe Maimon
Moshe Maimon
LEVY PHILLIPS & KONIGSBERG, LLC
800 Third Avenue, 13th Floor
New York, NY 10022