Case 2:11-cv-00736-ES -CLW   Document 44   Filed 09/02/11   Page 1 of 19 PageID: 2965

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC.,<br><br>Defendants. | Civil Action No. 11-736 (ES) (CLW)<br><br><br><br>**Motion Returnable:  Sept. 19, 2011**<br>**Oral Argument Requested** |

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR TRANSFER OF VENUE

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Robert N. Eccles *(pro hac vice)*
Gary S. Tell *(pro hac vice)*
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
(202) 383-5300

*Attorneys for Defendants*
*Transamerica Life Insurance Company,*
*Transamerica Investment Management, LLC*
*and Transamerica Asset Management, Inc.*

1317191_1

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT......................................................................................................3

    A.   Plaintiffs Are Nominal Plaintiffs Whose Choice of Forum Deserves No Deference........................................................................4

    B.   ERISA's Venue Provision Does Not Mandate Plaintiffs' Choice of Forum ..............................................................................................6

    C.   The Convenience of the Witnesses Favors Transfer............................8

    D.   The Convenience of the Parties Favors Transfer ...............................11

    E.   Los Angeles Is The Center of Gravity For This Matter .....................12

III. CONCLUSION .................................................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                                       **Page**

*Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988) .........................................7

*David v. Alphin,*
No. 06-4763 (WHA), 2007 WL 39400 (N.D. Cal. Jan. 4, 2007) .......................7, 8

*Days Inns Worldwide, Inc. v. RAM Lodging, LLC,*
No. 09-2275 (SDW), 2010 WL 1540926 (D.N.J. April 14, 2010) .......................12

*Job Haines Home for the Aged v. Young,*
936 F. Supp. 223 (D.N.J. 1996) .........................................................................5

*Johnson v. Nextel Commc'ns , Inc.,*
No. 06-CV-5547 (DMC), 2007 WL 2814649 (D.N.J. Sept. 21, 2007) .................6

*Koster v. Lumbermens Mut. Cas. Co.,*
330 U.S. 518 (1947) ...........................................................................................5

*NPR, Inc. v. Am. Int'l Ins. Co. of Puerto Rico,*
No. CIV 00-0242 (WGB), 2001 WL 294077 (D.N.J. March 28, 2001) .......12, 14

*In re Consolidated Parlodel Litig.,*
22 F. Supp. 2d 320 (D.N.J. 1998) ....................................................................11

*Peikin v. Kimmel & Silverman, P.C.,*
576 F. Supp. 2d 654 (D.N.J. 2008) ..................................................................13

*Renfro v. Unisys Corp.,*
--- F.3d ----, No. 10-2447, 2011 WL 3630121 (3d Cir. Aug. 19, 2011) ................1

*Ricoh Co., Ltd. v. Honeywell, Inc.,*
817 F. Supp. 473 (D.N.J. 1993) .......................................................................12

*Thorlabs, Inc. v. Townsend Commc'ns , LLC,*
No. 03-4550 (JCL), 2004 WL 1630488 (D.N.J. June 30, 2004) .......................12

*Winnett v. Caterpillar Inc.,*
No. 3:06-CV-00235, 2006 WL 1722434 (M.D. Tenn. June 20, 2006) ................7

1317191_1

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

28 U.S.C. § 1404(a) ...............................................................................................3, 14
29 U.S.C. § 1132(e)(2), ERISA § 502(e)(2) ........................................................3, 7
29 U.S.C. § 1144(d), ERISA § 514(d) ......................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 30(b)(6) ....................................................................................9

I.  INTRODUCTION.

On July 29, 2011, Defendants filed their motion to transfer venue simultaneously with their motions to dismiss.[1] (ECF Nos. 33, 34, 35.) Plaintiffs filed a single opposition to both motions on August 19, 2011. (ECF No. 41.) On the same day, the Third Circuit issued its decision in *Renfro v. Unisys Corp.*, --- F.3d ----, No. 10-2447, 2011 WL 3630121 (3d Cir. Aug. 19, 2011), affirming the dismissal of claims similar to those asserted here for alleged breaches of fiduciary duty under ERISA. On August 22, 2011, Plaintiffs requested that they be allowed to revise and re-file their opposition to the motions to dismiss on September 1, 2011 "to address the Third Circuit's opinion and its impact on several of their arguments." (ECF No. 42.) In view of the *Renfro* decision and in the interest of judicial economy, Defendants request that the Court exercise its discretion to decide the motions to dismiss first.

Assuming the Court reaches the venue issue, Plaintiffs' Brief in Opposition to Defendants' Motion for Transfer of Venue ("Opp.") confirms that this action belongs in Los Angeles. The allegations in the Complaint are not focused on the named Plaintiffs, their employers or their retirement plans. Rather, the Complaint

---

[1] Defendants are Transamerica Life Insurance Company ("TLIC") and two affiliates, Transamerica Investment Management ("TIM") and Transamerica Asset Management ("TAM"). TLIC's motion to dismiss was briefed and filed separately from the motion filed collectively by TIM and TAM.

targets TLIC's retirement plan business, which is centered in Los Angeles. The Complaint challenges TLIC's investment option platforms and the associated fees offered to retirement plans across the country. TLIC makes all decisions concerning these investment options and associated fees in its retirement plan products in Los Angeles and the vast majority of the individuals with knowledge of those products are located there.

Plaintiffs do not contest that the Central District of California is a proper venue. Their sole argument is that it would be less convenient. Unable to challenge the facts set forth in Defendants' moving papers and Memorandum in Support of Motion to Transfer Venue ("Memo."), Plaintiffs rely on flawed legal reasoning and illusory "crucial non-party witnesses" to seek to prevent transfer of this case to the Central District of California. For multiple reasons, as discussed below, Plaintiffs' efforts are unavailing.

First, Plaintiffs' "home forum" is not "paramount." The named Plaintiffs bring this action on behalf of a putative nationwide class of all 401(k) retirement plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") and their participants and beneficiaries. In that capacity, the named Plaintiffs are nominal parties whose choice of forum is not entitled to deference.

Second, it is not true that "the ERISA 'special venue' provision . . . enhances the weight of Plaintiffs' already-paramount preference". (Opp. at 1.) Nowhere

does ERISA § 502(e)(2) require that an action be brought only where the plaintiff resides. Indeed, a plaintiff's residence, by itself, is not expressly designated as an appropriate venue, and nothing in ERISA precludes a transfer to a more convenient forum.

Third, the convenience of the parties and witnesses and the Court's connection to the operative facts of the lawsuit -- the "center of gravity" of this matter -- all weigh decisively in favor of transfer. As Defendants established in their moving papers, every act underlying the issues raised in Plaintiffs' Complaint was centered in Los Angeles, 19 of the 23 current employees with relevant knowledge are located in Los Angeles, and 3 of the 4 relevant former employees are in the Los Angeles area. (Memo. at 16-17; Declaration of Darcy Hatton ("Hatton Decl.") (ECF No. 33-2).) None are in New Jersey. Although Plaintiffs argue that there are "crucial non-party witnesses" elsewhere, they give no suggestion of what testimony these individuals would provide, much less why they are crucial.

Since the Central District of California is a more appropriate forum, the motion to transfer pursuant to 28 U.S.C. § 1404(a) should be granted.

## II.   ARGUMENT

Plaintiffs' Complaint challenges how TLIC designs and prices investment products for its retirement plan business, which is based in California. Plaintiffs do

not dispute that this case could have been brought in California. During the period covered in the complaint, two of the three defendants were located in Los Angeles.[2] Plaintiffs' claims arose principally in Los Angeles. The most likely witnesses -- those responsible for assembling, marketing and administering TLIC's retirement products, including a broad range of available investment options -- are located in Los Angeles. Plaintiffs largely ignore these facts in their opposition brief. Instead, their primary arguments against transferring the case to the Central District of California rest on mistaken assertions that their choice of forum is "paramount" (Opp. at 2) and that ERISA's "special venue" section requires greater deference to their venue selection. (Opp at 2-3). Plaintiffs also protest that litigating in a California court would impose greater burdens on them and that non-party witnesses may be beyond the court's subpoena power. These arguments crumble upon closer inspection.

### A. Plaintiffs Are Nominal Plaintiffs Whose Choice of Forum Deserves No Deference.

Plaintiffs' position that their choice of forum "should not be lightly disturbed" (Opp. at 8) is unsupportable. A plaintiff's selection of a forum is not entitled to any particular deference where the plaintiff brings the action on behalf

---

[2] TLIC's retirement plan business is centered in Los Angeles, with 342 employees, including the vast majority of that business' managers and executives. (Memo. at 6.) Before closing its operations on June 30, 2011, TIM was headquartered in Los Angeles and most of its former employees were located there. (*Id.*) TAM is based in Florida. (*Id.*)

4

of a nationwide class. *Job Haines Home for the Aged v. Young,* 936 F. Supp. 223, 230-31 and n.8 (D.N.J. 1996). This principle acknowledges that parties who bring an action on behalf of a class may be nominal plaintiffs without the specific personal knowledge "of the underlying actions making it 'requisite or at least expedient for him personally to be present at the trial.'" *Job Haines,* 936 F. Supp. at 230 n.8 *quoting Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947).

The named Plaintiffs here fit that description exactly. Their brief asserts that "[r]elevant evidence will come from [the named] Plaintiffs and their Plan sponsors, all of which are located in New Jersey." (Opp. at 4.) But neither the brief nor the supporting declaration provides any inkling of what that evidence will be. Nor is there any reason to think that the named Plaintiffs or their Plan sponsors have any knowledge about TLIC's retirement plan product development or construction of investment platforms, or whether TLIC charged excessive fees and violated duties under ERISA related to those products or investment platforms, allegations that are fundamental to the Complaint. Their choice of forum therefore warrants no deference.

Moreover, the named Plaintiffs bring this suit on behalf of a nationwide class of ***all*** ERISA defined contribution plans, along with their participants and beneficiaries, that hold group annuity contracts issued or sold by TLIC in all 50 states, except New York. (Compl. ¶¶ 2, 3, 24, 25, 54, 55, 62.) Indeed, TLIC

5

issued group annuity contracts for 7,763 active retirement plans nationwide, as well as Puerto Rico and the U.S. Virgin Islands. (Hatton Decl. ¶ 8.) The state with the greatest number of these plans is California, where TLIC services 1,364 ERISA plans, or about 17.5 percent of its retirement plan business. By comparison, TLIC services 469 plans in New Jersey, or roughly 6 percent of its retirement plan business.

The fact that the named Plaintiffs reside in New Jersey may be a consideration, but far from "paramount" in this Court's decision of the most appropriate venue. Since the vast majority of the putative class resides outside of New Jersey, with the largest concentration located in California, the nominal Plaintiffs' choice of forum should be discounted even further. S*ee Johnson v. Nextel Commc'ns , Inc.,* No. 06-CV-5547 (DMC), 2007 WL 2814649, at *4 (D.N.J. Sept. 21, 2007) (noting that in a putative class action "where there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight").

### B.  ERISA's Venue Provision Does Not Mandate Plaintiffs' Choice of Forum.

Plaintiffs argue that ERISA's "'special venue' provision" entitles their choice of forum "even greater deference." (Opp. at 2.) They are mistaken. ERISA § 502(e)(2) provides that venue is appropriate in three locations: 1) where the plan is administered, 2) where the breach took place, or 3) where a ***defendant***

6

resides or may be found. 29 U.S.C. § 1132(e)(2). Nothing in that section ties venue to a plaintiff's place of residence. And nothing in ERISA trumps the federal law governing transfer of venue. Indeed, with limited exceptions not relevant here, ERISA does not "alter, amend, modify, invalidate, impair, or supersede any law of the United States". ERISA § 514(d), 29 U.S.C. § 1144(d).

"[C]ontrary to [P]laintiffs' suggestion here, ERISA's special venue provisions do not operate to preclude transfer" to a more convenient forum. *See Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 n.13 (E.D. Va. 1988). That case, and others cited by Plaintiffs, confirm that courts have engaged in a robust analysis of whether a transfer of venue would benefit "the convenience of parties and witnesses, in the interest of justice", even where plaintiffs' choice of forum in an ERISA action is their home district. *See e.g., David v. Alphin,* No. 06-4763 (WHA), 2007 WL 39400, at *5 (N.D. Cal. Jan. 4, 2007) (granting motion to transfer ERISA action where majority of defendants resided in transferee forum). Not surprisingly, where courts have declined to transfer venue, the convenience of witnesses or interest of justice factors were neutral or not heavily in favor of either forum. *See Winnett v. Caterpillar Inc.,* No. 3:06-CV-00235, 2006 WL 1722434, at *5 (M.D. Tenn. June 20, 2006); *Bd of Trustees, Sheet Metal Workers*, 702 F. Supp. at 1260.

### C. The Convenience of the Witnesses Favors Transfer.

Even if the named Plaintiffs' choice of forum were to be afforded any deference, "it cannot outweigh the convenience factor." *See David*, 2007 WL 39400, at *5. In *David,* another case on which Plaintiffs rely, a California district court transferred venue of an ERISA action to North Carolina. Although the named plaintiff in that case was a California resident, the convenience of the parties and witnesses and the interest of justice supported transfer. 2007 WL 39400, at *5. In addition, 18 of the 34 individual defendants lived in North Carolina, a fact which the court found convincing. *Id.*

As explained in Defendants' moving papers, 19 of the 23 current TLIC employees with knowledge of the facts underlying the Complaint -- *i.e.*, how TLIC designed, marketed and managed its investment product platforms for retirement plans -- are located in Los Angeles. (Memo. at 6-12, 16.) Each of these individuals was specifically identified by name, and, as listed below, by the department in which he or she works:

- Current and former members of the Investment Committee, which is responsible for designing the product platforms, and including the investment options to be offered to plan sponsors and plans, and the investment management and administrative fees associated with such investment options (Memo. at 8-9; Hatton Decl., ¶ 21; Declaration of Mark A. Fisher in support of Opp. ("Fisher Decl."), (ECF No. 40-1) Ex. A, Tr. 115:11-16),

- Specific individuals within the Retirement Product Pricing Department, which is responsible for general pricing guidelines and decisions,

8

recordkeeping fees, and contract asset charges, including such fees for the QualCare and Gain Capital Plans in which the named Plaintiffs participated (Memo. at 11; Hatton Decl., ¶ 24),

- Individuals within the Product Development Group, which is responsible for management of relationships with mutual fund complexes, review of investment option performance and performance review reports, and negotiation of revenue sharing agreements with mutual fund complexes (Memo. at 9-10; Hatton Decl., ¶ 27),

- Individuals in the Marketing Department, which is responsible for designing, drafting, reviewing and approving marketing strategies and materials, including those distributed to the Gain Capital and QualCare Plans. The marketing materials include the Fiduciary Warranty Program (Memo. at 10; Hatton Decl., ¶¶ 25-26),

- Individuals in the Document Operations Department, which generates and distributes group annuity contracts issued to retirement plans (Memo. at 11-12; Hatton Decl., ¶ 29 ),

- Individuals in the Plan Compliance Department, which is responsible for assisting plan sponsors in drafting plan documents and summary plan descriptions, including those for the QualCare and Gain Capital Plans (Memo. at 11; Hatton Decl., ¶ 29), and

- Individuals in the Operations Solutions and Installation Services groups, which manage and coordinate TLIC's plan installation services, plan sponsor and participant call centers, and participant enrollment services (Memo. at 12; Hatton Decl., ¶ 31).

Plaintiffs also took two Rule 30(b)(6) depositions to further examine the location of potential witnesses and evidence. Those depositions confirmed that the witnesses with relevant knowledge are located in Los Angeles, where TLIC's decisionmaking occurs.

Plaintiffs attempt to manufacture an argument that two groups of "crucial

9

non-party witnesses" would be outside of a California court's subpoena authority. (Opp. at 25.) The first group consists of employees of Gain Capital Group, LLC and QualCare Alliance Networks, Inc., the named Plaintiffs' employers, who dealt with TLIC or its representatives in establishing their 401(k) plans or entering into their group annuity contracts. (*Id.*) Plaintiffs do not identify these individuals, much less provide any evidence that they are "crucial" or have any knowledge of TLIC's practices in designing and pricing investment option platforms. Moreover, to the extent that any plan sponsors or their employees might be witnesses, they are located nationwide, and roughly three times as many are located in California than in New Jersey.

Plaintiffs also portray a second group of "crucial non-party witnesses" consisting of "representatives from the various investment management companies and investment advisors that managed and advised the mutual funds underlying the separate account investment options" offered by TLIC. (Opp. at 26.) Again, Plaintiffs offer no explanation of what testimony these representatives will provide or why it is "crucial". There is no reason to believe that mutual fund representatives knew anything about TLIC's decision-making process. To the extent mutual fund or other investment fees are relevant, they will be contained in prospectuses and similar documents, or will be referenced in investment option-related documentation maintained by TLIC (all of which is located in Los

Angeles).

In contrast, as explained in Defendants' moving papers, four former TLIC employees who were members of the TLIC Investment Committee and the Plan Compliance Department during the relevant period are beyond this Court's subpoena power. (Memo. at 17; Hatton Decl., ¶¶ 23, 30.) Due to their former positions, all four have knowledge of the central facts in this dispute. (Hatton Decl., ¶¶ 23, 30.) Three of them are located in Los Angeles and the fourth lives in Chicago. (*Id.*) Three of these four individuals could be compelled to testify if trial were held in California, but none if trial were held in New Jersey. Accordingly, the convenience of the witnesses weighs in favor of transfer to the Central District of California. *See In re Consolidated Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998) (granting transfer of venue where "critical witnesses" were outside court's subpoena power) (cited by Plaintiffs).

### D. The Convenience of the Parties Favors Transfer.

Plaintiffs argue that they will be inconvenienced if the case is transferred to Los Angeles because they "will need to attend the entire trial" and be away from home, take time off from work, and incur costs. (Opp. at 21.) Whether the named Plaintiffs "will need to attend the entire trial" is debatable. As noted above, there is no reason to think that the named Plaintiffs have knowledge relevant to TLIC's retirement plan investment product decisions. Nevertheless, if they were to attend

11

trial, even in New Jersey, they would still miss work.  And, in bringing this lawsuit, Plaintiffs must have expected that a certain amount of time and effort on their part would be required; any inconvenience is of their own making.  Further, any inconvenience to them pales in comparison to the disruption that TLIC will face if multiple groups of officers, senior managers and key employees must travel to New Jersey for days or weeks at a time.  Unlike Plaintiffs, some substantial number of these critical TLIC employees will certainly be required to testify at trial.

> E. **Los Angeles Is The Center of Gravity For This Matter.**

Plaintiffs recognize that "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." (Opp. at 14, *quoting Ricoh Co., Ltd. v. Honeywell, Inc.,* 817 F. Supp. 473, 481 (D.N.J. 1993).)  Yet, they attempt to argue that the center of gravity principle or an examination of where the claim arose should not apply "where there is no physical scene to inspect."  (Opp. at 15.)  Their view is unsupported by any legal authority and is contrary to decisions in this district.  *See NPR, Inc. v. Am. Int'l Ins. Co. of Puerto Rico*, No. CIV 00-0242 (WGB), 2001 WL 294077, at *4 (D.N.J. March 28, 2001); *Days Inns Worldwide, Inc. v. RAM Lodging, LLC,* No. 09-2275 (SDW), 2010 WL 1540926, at *6 (D.N.J. April 14, 2010); *Thorlabs, Inc. v. Townsend Commc'ns , LLC,* No. 03-4550 (JCL), 2004 WL 1630488, at *4 (D.N.J. June 30,

2004).

Further, Plaintiffs' suggestion that this factor duplicates the consideration given to the location of the witnesses or documents misses the mark. (Opp. at 15.) Where the operative facts giving rise to the complaint take place outside of the forum, no nexus exists between the forum and the cause of action. Without such a nexus, witnesses and documents are not likely to be found within the forum, tipping the scales in favor of transfer. *Peikin v. Kimmel & Silverman, P.C.,* 576 F. Supp. 2d 654, 660 (D.N.J. 2008) (granting transfer to forum in which alleged acts giving rise to violations occurred) (cited by Plaintiffs).

Here, Los Angeles was the center of the conduct at issue in the Complaint. TLIC's retirement plan business is centered in Los Angeles -- all product development, construction of investment platforms, pricing, marketing, supervision of plan document development and new client implementation took place there. (Memo. at 6-7.) None of this work is done in New Jersey. The most appropriate venue is therefore the Central District of California.

Plaintiffs' argument that the claims arose from acts taking place in New Jersey falls flat. They cite to the fact that New Jersey is where the plans contracted with TLIC, and where Plaintiffs made plan contributions, received plan communications, made investment decisions, and allegedly were injured. (Opp. at 16.) However, the Complaint contends that TLIC violated ERISA and the

13

Investment Advisers Act in constructing and delivering its retirement plan investment products. As noted, all the work involved in developing, pricing, marketing and managing these products was done in California, not New Jersey. Plaintiffs' statement that TLIC's retirement business has "significant operations in New York" is misleading. (Opp. at 17.) The investment options and associated fees which are at the heart of Plaintiffs' Complaint are provided predominantly from Los Angeles, not any other offices. (Memo. at 21 n.15.) Other offices provide recordkeeping and administrative service, but not investment services. (Fisher Decl., Exh. A, Tr. 18:5-19:21.)

Finally, the alleged injury is not considered in determining where the center of gravity is. *NPR,* 2001 WL 294077 at *4. In this case, it is the alleged breach of fiduciary duty or other alleged violation, which would have taken place in Los Angeles, not New Jersey, that determines the location of the center of gravity. *Id.* Accordingly, the center of gravity for this case weighs heavily in favor of transfer.

### III.   CONCLUSION

For the reasons stated above, Defendants request that the Court transfer the case to the United States District Court for the Central District of California in accordance with 28 U.S.C. § 1404(a).

Dated: September 2, 2011

*s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
Telephone:  (973) 292-1700
Facsimile:  (973) 292-1767

Robert N. Eccles (*Pro Hac Vice*)
Gary S. Tell (*Pro Hac Vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C.  20006-4001
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

*Attorneys for Defendants
Transamerica Life Insurance Company,
Transamerica Investment Management, LLC,
and Transamerica Asset Management, Inc.*