# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al., | : Civil Action No. 11-736 (ES) (CLW) |
| Plaintiffs, | : |
| v. | : |
| TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC., | : **Motion Returnable:  Oct. 3, 2011** : **Oral Argument Requested** |
| Defendants. | : |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Robert N. Eccles (*pro hac vice*)
Gary S. Tell (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
(202) 383-5300

*Attorneys for Defendants*
*Transamerica Life Insurance Company,*
*Transamerica Investment Management, LLC*
*and Transamerica Asset Management, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

I.      PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED .............................2

     A.      Counts I and II Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation....................................4

     B.      Count III Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Receipt of Revenue Sharing Payments .....................9

     C.      Counts IV and VII Should Be Dismissed Because TLIC Is Not A Fiduciary As To The Selection of Affiliates Who Advise Its Separate Account Products......................................................................................10

     D.      Counts V And VI Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Obtain Lower Fees For The Underlying Investments Within The Separate Account Investment Options................11

     E.      Count I Through VII Should Be Dismissed Because Plaintiffs Have Neither Made a Demand on the Plan's Named Fiduciaries Nor Joined Those Fiduciaries As Parties............................................................12

II.      PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM UNDER THE INVESTMENT ADVISERS ACT .............................................................13

CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Charters v. John Hancock Life Ins. Co.*,
  583 F. Supp. 2d 189 (D. Mass. 2008) ....................................................................7

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*,
  2008 WL 4457861 (D. Mass. Sept. 30, 2008) .......................................................1

*DeBlasio v. Merrill Lynch &Co., Inc.*,
  No 07-CIV-318(RJS), 2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009)...................13

*Frank Russell Co. v. Wellington Mgmt. Co*.,
  154 F.3d 97 (3d Cir. Pa. 1998)............................................................................13

*Goldenberg v. Indel, Inc.*,
  741 F. Supp. 2d 618 (D.N.J. 2010) ......................................................................11

*Goldstein v. SEC*,
  451 F.3d 873 (D.C. Cir. 2006) .............................................................................14

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009)..................................................................................1

*In re Honda of America Mfg., Inc, ERISA Fee Litig.*,
  661 F. Supp. 2d 861 (S.D. Ohio 2009)...................................................................1

*In re Regions Morgan Keegan ERISA Litig.*,
  692 F. Supp. 2d 944 (W.D.Tenn. 2010)................................................................11

*Loomis v. Exelon Corp.*,
  -- F.3d -- 2011 WL 3890453 (7th Cir. Sept. 6, 2011)............................................1

*Mack Boring and Parts v. Meeker*,
  930 F.2d 267 (3rd Cir. 1991)................................................................................15

*McMahon v. McDowell*,
  794 F.2d 100 (3rd Cir. 2006)................................................................................12

*Renfro v. Unisys Corp.*,
  -- F.3d --, No. 10-2447, 2011 WL 3630121 (3rd Cir. Aug. 19, 2011)..........passim

*Santomenno v. John Hancock Life Ins. Co.*,
  No. 2:10-cv-01655, 2011 WL 2038769 (D.N.J. May 23, 2011), *appeal docketed* No. 11-2520 (3rd Cir. June 3, 2011)....................................................12

## TABLE OF AUTHORITIES
### (*continued*)

Page(s)

*Seaway Food Town, Inc. v. Med. Mut. of Ohio*,
   347 F.3d 610 (6th Cir. 2003)................................................................5

*SEC v. Mannion*,
   2011 U.S. Dist. LEXIS 63621 (N.D. Ga. June 1, 2011) .......................15

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) ...........................................................................13

*Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*,
   783 F. Supp. 899 (D.N.J. 1992) ........................................................15

*Young v. G.M. Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009)...........................................................5

*Zang v. Paychex*,
   728 F. Supp. 2d 261 (W.D.N.Y. 2010) ...........................................1, 7

STATUTES

29 U.S.C. § 1106(b) ..............................................................................10

RULES AND REGULATIONS

29 C.F.R. § 2550.408b-2(e)(2) ...............................................................11

42 Fed. Reg. 18,732 (April 8, 1997).......................................................11

75 Fed. Reg. 65263 (Oct. 22, 2010) .........................................................3

Fed. R. Civ. P. 12(b)(6) .........................................................................15

OTHER AUTHORITIES

DOL Adv. Op. 99-03A (Jan. 25, 1999), 1999 WL 64919.........................11

DOL Adv. Op. No. 2003-09A, 2003 WL 215470......................................11

DOL Advisory Op. 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997).....................7

## INTRODUCTION

Plaintiffs' Amended Brief in Opposition to Defendants' Motion to Dismiss [Dkt. # 43-1] ("Op.") supplies no valid reason to allow Plaintiffs' claims against TLIC to proceed. Contrary to Plaintiffs' contention, the Court need not wait until the parties have incurred the burden and expense of extended discovery before examining the sufficiency of Plaintiffs' ERISA fiduciary duty claims. Indeed, just last month, the Third Circuit affirmed dismissal of ERISA claims substantially similar to those asserted against TLIC on the very grounds that TLIC now presents: namely, that the defendant service provider, while a fiduciary in some respects, was not a fiduciary as to the excessive fee claims asserted by plaintiffs. *Renfro v. Unisys Corp.*, -- F.3d --, No. 10-2447, 2011 WL 3630121, *4-6 (3rd Cir. Aug. 19, 2011).[1] Plaintiffs offer a laundry list of reasons why they believe TLIC is a fiduciary. But they do not, and cannot, tie those theories to their claims for relief or reconcile them with their overall attack on TLIC's entire range of investment products. Placed in context, all of Plaintiffs' fiduciary status arguments are either irrelevant or invalid, and their ERISA claims should be dismissed.

---

[1] Many other courts have also granted motions to dismiss excessive fee claims similar to the ones asserted here. *See, e.g., Loomis v. Exelon Corp.*, -- F.3d -- 2011 WL 3890453 (7th Cir. Sept. 6, 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009); *Zang v. Paychex*, 728 F. Supp. 2d 261 (W.D.N.Y. 2010); *In re Honda of America Mfg., Inc, ERISA Fee Litig.*, 661 F. Supp. 2d 861 (S.D. Ohio 2009); *Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.*, 2008 WL 4457861 (D. Mass. Sept. 30, 2008).

Plaintiffs' Investment Advisers Act ("IAA") claims fare no better. Plaintiffs concede that Count IX should be dismissed, and their theory under Count VIII does not meet the core requirements for a private action under the IAA.

## ARGUMENT

## I.  PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED.

Plaintiffs' ERISA fiduciary breach claims (Counts I-VII) fail as to TLIC because TLIC does not act as a fiduciary with respect to the conduct challenged in Plaintiffs' Complaint. TLIC has some, limited fiduciary responsibilities to the Plans. But, as the courts have made clear, it is not enough to say that a defendant has some fiduciary role. Rather, the threshold inquiry is whether the defendant has fiduciary duties relevant to the plaintiffs' claims. *Renfro* 2011 WL 3630121, at *4 ("[W]e must ask whether [the entity] is a fiduciary with respect to the particular activity in question.") (internal citation and quotation omitted). Plaintiffs' Complaint does not withstand that inquiry. Tellingly, nowhere in their Complaint or Opposition do Plaintiffs tie their theories of TLIC's fiduciary status to their individual claims or reconcile those theories with their overall contention that all, or virtually all, of the investment options on TLIC's platform were improper.

As addressed in TLIC's initial brief,[2] this disconnect is exemplified by Plaintiffs' various theories that TLIC was a fiduciary by virtue of having discretion

---

[2]  Mem. in Support of Def. Transamerica Life Insurance Company's Mot. to Dismiss Class Action Compl. [Dkt. # 35-1] ("Mem.").

to steer plan sponsors or participants into selecting particular investments from the options available on TLIC's platform. Those theories include Plaintiffs' assertions that TLIC provides investment advice through "AdviceSolutions," the "Fiduciary Management Program," or the "Transamerica Investment Monitor." Op. at 12-17. Even putting aside their particular flaws,[3] those fiduciary status theories could only conceivably be relevant to Plaintiffs' theories of relief if Plaintiffs were attacking one portion of TLIC's product menu and arguing that TLIC improperly steered the Plans into that portion. But that is not this case.

Plaintiffs do not assert that they were harmed by the selection of any particular investment option over another for their Plans' investment lineups. Rather, Plaintiffs challenge essentially the entire range of investment options on TLIC's platform. *See, e.g.,* Compl. ¶¶ 10, 23, 142. Under this theory, Plaintiffs

---

[3]  The Fiduciary Management Program refers generally to a group of products and services TLIC provides its plan clients, including an "Investment Scorecard" (which Plaintiffs misdescribe as the "program" Op. at 30; Dkt. # 43-7) and the Transamerica Investment Monitor. Those products, along with AdviceSolutions, provide investment tools and information to plan fiduciaries or participants to assist in their plan-related decision-making, but they do not constitute "investment advice" as that term is defined under current regulations. Tellingly, Plaintiffs attempt to argue that TLIC's programs constitute "investment advice" under the Department of Labor's ***proposed*** regulation. Op. at 15 (quoting "Definition of the Term 'Fiduciary,'" 75 Fed. Reg. 65263, 65268, 65270-71 (Oct. 22, 2010) (attached as App. C to Op.). As the proposed regulation itself indicates, it does ***not*** reflect current law. Indeed, the Department proposed the new rule because it believes the existing "5-part test" for a person to be treated as rendering "investment advice" is too restrictive. 75 Fed. Reg. at 65264-65. The Complaint does not plead the elements of investment advice under the existing test, and Plaintiffs do not argue that it does.

were not harmed by being invested in a particular lineup of TLIC products

because, according to Plaintiffs, *any* investment lineup of TLIC products would

have been improper. Plaintiffs seek to certify a class of thousands of plans on that

very basis. *Id.* ¶¶ 8, 370, 374. By Plaintiffs' own allegations, the alleged harm was

assured by the decision to use the TLIC platform *at all*. And that fiduciary decision

was solely in the hands of the individual plan sponsors. Mem. at 15-16.

Plaintiffs do not dispute this reading of their claims, and they fail to explain

how their theories that go only to the selection of particular funds on TLIC's

platform are at all relevant in light of it. Plaintiffs' remaining fiduciary status

arguments are likewise flawed, for reasons that become evident in analyzing

Plaintiffs' individual claims.

### A.    Counts I and II Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Own Compensation.

Counts I and II allege that TLIC breached fiduciary duties by charging

Administrative and Investment Management fees in connection with Transamerica

separate accounts containing underlying mutual fund investments. But even if

TLIC's Administrative and Investment Management charges could be deemed

improper,[4] TLIC was not the fiduciary responsible for the Plans' decision to pay

---

[4]  Plaintiffs' generalized attack on TLIC's right to receive Administrative and Investment Management fees ignores the host of services TLIC provides the Plans. Mem. at 18-19. Plaintiffs contend that because TLIC charges other types of fees, the Investment Management and Administrative fees are "duplicative." Op. at 28.

those fees. Rather, as addressed in TLIC's initial brief, the fees were fully disclosed to Plan sponsors, and it was those sponsors who made the fiduciary decision to cause their Plans to incur such fees when they selected the investment options to be included in their Plan investment lineups. Mem. at 17-19.

Plaintiffs argue, in effect, that it does not matter who made the relevant fiduciary decision. Rather, according to Plaintiffs, so long as TLIC had *some* fiduciary responsibilities to the Plan, it had an affirmative duty to ensure that plan fees, including its own, were not excessive. Op. at 10-11, 16. But their position is contrary to well-settled law. As the Third Circuit recently confirmed in *Renfro*, a party "does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms." 2011 WL 3630121 at *7 (citation omitted). A necessary corollary to this is that a party does not act as a fiduciary by adhering to the agreed-upon terms of its retention, including terms of compensation. *See, e.g., Seaway Food Town, Inc. v. Med. Mut. of Ohio,* 347 F.3d 610, 618-19 (6th Cir. 2003) (holding that HMO's

---

But Plaintiffs do not point to any authority precluding the compensation of service providers through a blend of different fees. Nor do Plaintiffs allege any facts to suggest that TLIC's total fees for Plan services were unreasonable in comparison to the total Plan services it provided. *See Young v. G.M. Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming dismissal where complaint failed to allege facts showing that "fees were excessive relative to the services rendered"). Rather, Plaintiffs have sought to establish excessiveness by improperly attributing all of TLIC's services to one aspect of TLIC's integrated fee structure. That myopic approach fails to state a plausible claim for excessive fees.

adherence to contractual term allowing it to retain funds resulting from provider discounts did not render HMO a fiduciary under ERISA). Thus, TLIC had no fiduciary duty to refuse the Administrative and Investment Management charges that the Plans' sponsors contractually approved.

The Third Circuit's recent decision in *Renfro* speaks directly to this point. In *Renfro*, the plaintiffs alleged that the plan's trustee breached fiduciary duties by collecting excessive fees through the plan's investment options. 2011 WL 3630121 at * 2, 5. The Third Circuit rejected the theory, stating that because the challenged fees were the result of a fee structure negotiated with the plan sponsor, the trustee "owes no fiduciary duty with respect to the negotiation of its fee compensation[.]" *Id.* at *7. The same reasoning precludes Plaintiffs' argument here.

Plaintiffs next argue that TLIC had fiduciary control over its compensation because it had authority to adjust its fees or to alter the range of investment products it offers the Plan. Op. at 18-24. But TLIC could neither adjust the Administrative or Investment Management fees Plaintiffs challenge nor alter its lineup of available investment products without advance written notice to the Plans. Op. at 18 (recognizing notice requirement for change in fees); Mem. at 18-19 (discussing notice requirement for change in investment menu).[5] Thus, Plans

---

[5]  Plaintiffs assert two arguments that TLIC could change the Plans' investment options without advance notice. First, Plaintiffs argue that, under one Plan's contract, deletions could occur upon less than the standard six months' notice. Op.

could avoid any adjustment by terminating TLIC. As such, in both circumstances, the Plan sponsors retained fiduciary control over TLIC's fees. *See* DOL Advisory Op. 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997) (advising that service provider's ability to alter funds available for plan's lineup did not make service provider a fiduciary where sponsor could avoid changes by terminating service relationship); *Zang*, 728 F. Supp. 2d at 271.[6]

Plaintiffs point to *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008), which held that advance notice of changes did not preclude a service provider from having fiduciary status over the changes where the retaining

---

at 23. Plaintiffs refer, however, to a narrow exception that only applies if changes in an investment product's underlying investments make continued operation of the investment product "impossible or impracticable," such as when a TLIC separate account invests in a mutual fund that terminates. Dkt. #35-7 at 1282. Moreover, the provision does not remove the notice requirement; it just allows for a shorter notice period. Second, Plaintiffs contend that TLIC did not have to provide notice before changing the mutual funds within its separate accounts. Op. at 23. But, even accepting that as true, the ability to change the underlying mutual funds did not enable TLIC to affect its own compensation because, as Plaintiffs allege, TLIC's Investment Management and Administrative fees were separate charges that TLIC imposed in addition to the mutual funds' fees and so did not depend on the mutual fund selected. Compl., Count I ¶¶ 3-7; Count II ¶ 3.

[6] Plaintiffs argue that the advisory opinion imposed "requirements" that the insurer not render investment advice and not impose termination fees. The advisory opinion does no such thing. The DOL simply recited representations made by the party seeking the DOL's advice without indicating that the representations were material to its opinion. 1997 ERISA LEXIS 17, at *3, 15. As discussed above, Plaintiffs' theories that TLIC provided investment advice, even if valid, are irrelevant to Plaintiffs' claims. And, as discussed more fully below, the mere presence of a termination fee in a service agreement does not confer fiduciary authority on a service provider.

fiduciary could only terminate the service provider by paying a termination fee. *Id.* at 199. *Charters*, however, is inconsistent with the principles expressed by the Third Circuit in *Renfro*. Negotiated termination fees are just a mechanism for service providers to ensure reasonable compensation, including the recovery of initial costs in the event of an early termination. They may add a factor to a plan sponsor's deliberative process, but the mere fact that termination would entail costs or inconvenience does not give a service provider control over the sponsor's decisions. For example, in *Renfro*, plaintiffs argued that a contract term requiring a trustee's consent to the addition of new funds to a trust gave the trustee fiduciary control over investment selection. The Third Circuit rejected the argument on grounds that the plan sponsor could add investment options to the plan without the trustee's consent by creating a separate trust—even though creating a separate trust would obviously entail added burden and expense. 2011 WL 3630121 at * 6.

Finally, Plaintiffs contend that, by offering plan sponsors the protection of a "fiduciary warranty," TLIC caused plan sponsors to "rubber stamp[]" TLIC's "recommendations" as to which of its products to include in their plans' lineups. Op. at 12-13. The argument fails on multiple levels. First, as discussed above, theories that TLIC steered plans into particular TLIC investment options make no sense in the context of Plaintiffs' general attack on TLIC's entire platform. Second, Plaintiffs' conclusory assertion that the fiduciary warranty has caused thousands of

-8-

plan sponsors to "rubber stamp[]" TLIC's recommendations is illogical speculation unsupported by any factual allegations. The fiduciary warranty does not in fact provide the Plans' sponsors protection for the very harms alleged in this action; it expressly excludes any claims challenging whether the "fees paid directly or indirectly by the plan are reasonable." Dkt. # 35-12. Thus, the fiduciary warranty gives plan sponsors **no** incentive to select allegedly overpriced investment options.

## B. Count III Should Be Dismissed Because TLIC Is Not A Fiduciary With Respect To Its Receipt of Revenue Sharing Payments.

Count III fails for essentially the same reasons as Counts I and II. Count III alleges that TLIC breached fiduciary duties by receiving revenue sharing payments from mutual funds contained in the plan's separate account investment options. Compl. § V.G, ¶¶ 178-79. This theory of liability also acts as a theory of fiduciary status, as Plaintiffs contend that "by retaining Revenue Sharing Payments," TLIC exercised fiduciary authority over its own compensation. Op. at 24.

At its heart, however, Plaintiffs' theory is not an attack on the revenue sharing payments at all. Plaintiffs do not dispute in their Complaint that the revenue sharing payments TLIC receives are applied to offset TLIC's Administrative and Investment Management charges. Compl. ¶¶ 288, 294, Count III ¶ 3.[7]  Plaintiffs contend instead

---

[7]  Plaintiffs argue in the Opposition that issues of fact exist as to how the revenue sharing payments were actually applied. The focus of a motion to dismiss, however, is on the sufficiency of the pleadings, and Plaintiffs cannot create factual issues by disputing facts that their Complaint accepts as true.

that offsetting the Administrative and Investment Management charges did not

benefit the Plans because those charges were themselves improper. But, regardless

of the legitimacy of the charges, the revenue sharing payments served a valid Plan

purpose—they defrayed expenses the Plans would have otherwise incurred through

other means. And control over the revenue sharing payments did not give TLIC

control over its compensation—it just altered the way the same compensation was

collected. Thus, Plaintiffs' real criticism in Count III, as in Counts I and II, is of the

Administrative and Investment Management charges themselves. And, as discussed

in Section I. A. above, TLIC was not a fiduciary responsible for those charges.

### C.   Counts IV and VII Should Be Dismissed Because TLIC Is Not A Fiduciary As To The Selection of Affiliates Who Advise Its Separate Account Products.

Counts IV and VII allege that TLIC "caused" the Plans to engage in

prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by

allowing the Plans to invest in TLIC-affiliated funds contained in TLIC's separate

accounts. Both counts fail, however, because Plaintiffs have not identified any

transaction that TLIC "caused" in a fiduciary capacity. Mem. at 23-26. While

TLIC offered the Plans investment products containing affiliated funds, it was the

Plans' sponsors, not TLIC, who made the fiduciary decisions to include those

options in their Plans. And Plaintiffs do not allege that TLIC ever changed the

investments in its separate accounts from non-affiliated to affiliated funds.

Plaintiffs argue that if a fiduciary or its affiliates receive fees from a fund in which a plan invests, "the fiduciary has committed a [prohibited transaction] under ERISA §§ 406(b)(1) and (3)." Op. at 30. But that is wrong. As the Department of Labor ("DOL") has stated as to both ERISA § 406(b)(1) and (3), a fiduciary does not engage in a prohibited transaction if it "does not use any of the authority, control or responsibility which makes such person a fiduciary to cause a plan to" pay the fee at issue. 29 C.F.R. § 2550.408b-2(e)(2); DOL Adv. Op. 99-03A (Jan. 25, 1999), 1999 WL 64919.[8] It is not enough that a party "was a fiduciary." Op. at 32. The authorities Plaintiffs cite do not hold differently.[9]

### D. Counts V And VI Should Be Dismissed Because TLIC Has No Fiduciary Obligation To Obtain Lower Fees For The Underlying Investments Within The Separate Account Investment Options.

Count V and VI allege that TLIC breached fiduciary duties by not seeking the cheapest possible rates for the investments contained within its separate account products. As explained in TLIC's initial brief, these counts go nowhere

---

[8] *See also* DOL Adv. Op. No. 2003-09A, 2003 WL 215470 at *6 (trustee's receipt of fees from mutual funds in connection with benefit plans' investment in those mutual funds" "would not violate section 406(b)(1) or 406(b)(3) of ERISA when the decision to invest in such funds is made by a fiduciary who is independent of [the trustee] and its affiliates, or by participants of such employee benefit plans.").
[9] In *Goldenberg v. Indel, Inc.,* 741 F. Supp. 2d 618 (D.N.J. 2010) and *In re Regions Morgan Keegan ERISA Litig.,* 692 F. Supp. 2d 944 (W.D.Tenn. 2010), plaintiffs alleged that defendants caused prohibition transactions by causing plans to invest in affiliated funds, not by merely receiving fees from plan investments. Prohibited Transaction Exemption 77-4, 42 Fed. Reg. 18,732 (April 8, 1997) merely provides an exemption for the "purchase or sale" of mutual fund shares.

because the expenses associated with those underlying investments are merely components of the total disclosed expense ratios for TLIC's separate accounts. And it is the Plans' sponsors, not TLIC, who make the fiduciary decisions to select the separate accounts as Plan investment options at the disclosed rates. Mem. at 25-26. Plaintiffs offer no response to this argument.

### E. Count I Through VII Should Be Dismissed Because Plaintiffs Have Neither Made a Demand on the Plan's Named Fiduciaries Nor Joined Those Fiduciaries As Parties.

Plaintiffs' ERISA claims should also be dismissed because Plaintiffs do not claim to have made a pre-suit demand on the Plans' named fiduciaries and have not joined those fiduciaries in this action. Mem. at 27-28. As this Court held in a case alleging virtually identical claims to those here, a pre-suit demand is a necessary prerequisite to an ERISA § 502(a)(2) suit, unless it would be futile. *Santomenno v. John Hancock Life Ins. Co.,* No. 2:10-cv-01655, 2011 WL 2038769, *2-4 (D.N.J. May 23, 2011), *appeal docketed* No. 11-2520 (3rd Cir. June 3, 2011). The Court also held that, even if demand were not required, plaintiffs would still be required to name the plan's trustees as necessary parties. *Id.* at *4 (citing *McMahon v. McDowell,* 794 F.2d 100, 110 (3rd Cir. 2006).

Plaintiffs do not respond to *Hancock*'s requirement that a plan's trustees be joined, which alone is sufficient to dismiss their ERISA claims. And their attacks on the requirement of a pre-suit demand largely repeat the same issues addressed

in Judge Martini's decision. Counts I through VII should be dismissed for the reasons expressed in *Hancock*.[10]

## II. PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM UNDER THE INVESTMENT ADVISERS ACT.

Plaintiffs' claims under the IAA should likewise be dismissed. Plaintiffs have conceded as much as to Count IX, which purported to state a derivative claim under the IAA. Op. at 45. And Plaintiffs' remaining IAA claim, Count VIII, does not meet the basic requirements for a private IAA claim.

Count VIII unavoidably depends on Plaintiffs' assertion that their "investments in the TLIC investment options" "resulted in the formation of contracts between [them] and TLIC." Compl., Count VIII, ¶¶ 10, 12. That legal conclusion is critical to their claim because the IAA authorizes only one private cause of action—a limited private right to void an improper investment advisory contract and recoup fees paid under that contract (net of investment profits). *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979); *Frank Russell Co. v. Wellington Mgmt. Co.*, 154 F.3d 97, 102 (3d Cir. Pa. 1998). To state a claim for rescission, a private plaintiff must identify an investment advisory contract to which he or she is a party. *See DeBlasio v. Merrill Lynch &Co., Inc.*, No 07-CIV-318(RJS), 2009 WL 2242605 at *16 (S.D.N.Y. Jul. 27, 2009).

---

[10]  The Court, of course, need not reach this issue in light of the independent grounds for dismissal addressed in Section I.A-E above.

But, as addressed in TLIC's initial brief, Plaintiffs have not supported, and cannot support, that legal assertion. Mem. at 31. Plaintiffs' factual allegations go solely to TLIC's decision-making with respect to the separate account products it offers to the Plans, and that decision-making does not establish a contract for investment advice between TLIC and Plaintiffs. *Id.*

Plaintiffs respond by: stating, without support, that TLIC conceded it provided unspecified investment advice; reasoning that TLIC does not advise independent mutual funds or its own separate accounts; and concluding that Plaintiffs must thus be the recipients of the (supposed) advice. Op. at 38-39, 42.

Plaintiffs' response ignores the basic requirement of a contract between them and TLIC. Their conclusory assertion that their "investments in the TLIC investment options" "resulted in the formation of contracts between [them] and TLIC" does not suffice. As the Complaint makes clear, the investments to which Plaintiffs refer are investments made through the Plans. Compl. ¶ 32. But the only contracts at all related to those investments were the group annuity contracts ("GACs") between TLIC and the Plans' trustees, which required TLIC to provide investment options for the Plans.[11] Dkt. ## 34-6 at 953; 34-7 at 1015; 35-8 at 1308,

---

[11]   This is not to say that TLIC contracted to provide investment advice to the Plans or their trustees. A manager of separate accounts does not thereby provide investment advice to investors in those accounts. Mem. at 36 (*citing Goldstein v. SEC*, 451 F.3d 873, 879-80 (D.C. Cir. 2006) ("The adviser [to a fund] does not tell the investor how to spend his money; the investor made that decision when he

1322. Plaintiffs were not parties to those contracts. Plaintiffs' decisions to have their participant accounts invested in the investment options made available to the Plans as the result of the GACs did not create a separate contract between Plaintiffs and TLIC, nor does it make Plaintiffs parties to the GAC.[12] Plaintiffs cannot seek to rescind a contract between themselves and TLIC to provide investment advice because they have not plausibly alleged that any such contract exists. That alone warrants dismissal of Count VIII and renders Plaintiffs' remaining arguments inconsequential.

## CONCLUSION

For the foregoing reasons, TLIC respectfully requests that the Class Action Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

invested in the fund."). Plaintiffs take issue with *Goldstein's* analysis of an exemption that Congress has since removed from the IAA. Op. at 41. But they offer no response to the reasoning that a fund adviser provides advice to the fund, not the investors in the fund, logic courts continue to adopt. *See, e.g., SEC v. Mannion*, 2011 U.S. Dist. LEXIS 63621 (N.D. Ga. June 1, 2011) (citing *Goldstein* for the proposition that "a hedge fund's investors are not clients of the . . . adviser, even though they benefit indirectly" from the adviser's advice).

[12] The GACs also refute Plaintiffs' unsupported assertion that they paid TLIC's fees. The GACs provides that the Investment Management fees Plaintiffs challenge are paid out of the separate accounts in which the Plans invest. Dkt. ## 34-7 at 1012; 35-8 at 1319. As a matter of law, those Plans are distinct legal entities, separate from their participants. Mem. at 33. Thus, when the Plans invested in separate accounts, they invested their assets, not Plaintiffs', and paid the challenged fees out of those assets. *See Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 904 (D.N.J. 1992); *Mack Boring and Parts v. Meeker*, 930 F.2d 267, 275 (3rd Cir. 1991).

-15-

Dated: September 19, 2011      Respectfully submitted,

*s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-
1991
Telephone: (973) 292-1700
Facsimile: (973) 292-1767

Robert N. Eccles (*Pro Hac
Vice*)
Gary S. Tell (*Pro Hac Vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants
Transamerica Life Insurance
Company, Transamerica
Investment Management, LLC,
and Transamerica Asset
Management, Inc.*

OMM_US:3832575.10