# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACLYN SANTOMENNO, KAREN POLEY, and BARBARA POLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRANSAMERICA LIFE INSURANCE COMPANY, TRANSAMERICA INVESTMENT MANAGEMENT, LLC, and TRANSAMERICA ASSET MANAGEMENT, INC., <br><br> Defendants. | Civil Action No. 11-736 (ES) (CLW) <br><br><br> **Motion Returnable:  Oct. 3, 2011** <br> **Oral Argument Requested** |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS TRANSAMERICA INVESTMENT MANAGEMENT, LLC AND TRANSAMERICA ASSET MANAGEMENT, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Robert N. Eccles (*pro hac vice*)
Gary S. Tell (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
(202) 383-5300

*Attorneys for Defendants*
*Transamerica Life Insurance Company,*
*Transamerica Investment Management, LLC*
*and Transamerica Asset Management, Inc.*

1325004_1

## TABLE OF CONTENTS

                                                  **Page**

ARGUMENT ............................................................................................................ 2
CONCLUSION ..................................................................................................... 10

1325004_1

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Calhoon v. TWA,*
  400 F.3d 593 (8th Cir. 2005) ................................................................................3

*Goldenberg v. Indel, Inc.,*
  741 F. Supp. 2d 618 (D.N.J. 2010) ...................................................................8, 9

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002) ..................................................................................2, 3, 4, 5

*Haddock v. Nationwide Fin. Servs.,*
  419 F. Supp. 2d 156 (D. Conn. 2006) ...................................................................9

*Harris Trust & Savings Bank v. Salomon Smith Barney,*
  530 U.S. 238 (2000) ............................................................................................4, 5

*Hecker v. Deere & Co.,*
  No. 07-3605 (7th Cir. April 2, 2008) ....................................................................9

*Hecker v. Deere & Company,*
  556 F.3d 575 (7th Cir. 2009) ................................................................................8

*In re Unisys Corp. Retiree Med. Benefits,*
  MDL Docket No. 969, 2007 WL 2071876 (E.D. Pa. July 16, 2007) ....................3

*Nechis v. Oxford Health Plans, Inc.,*
  421 F.3d 96 (2d Cir. 2005) ...................................................................................3

*Phones Plus, Inc. v. The Hartford Fin. Servs. Group, Inc.,*
  Civ. NO. 3:06CV01835, 2007 WL 3124733 (Oct. 23, 2007) ..............................9

*Sereboff v. Mid Atlantic Medical Services,*
  547 U.S. 356 (2006) ..........................................................................................5, 6

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan,*
  317 F. App'x 169 (3rd Cir. 2009) .........................................................................2

**STATUTES**

29 U.S.C. § 1101(b)(1) ..............................................................................................7, 8
29 U.S.C. § 1132(a)(3) ..........................................................................................1, 2, 4

Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss ("Pls'. Op.") does nothing to salvage their claims against Defendants Transamerica Investment Management, LLC ("TIM") and Transamerica Asset Management, Inc. ("TAM").  As an initial matter, Plaintiffs do not dispute that their claims against Transamerica Investment Management, LLC ("TIM") and Transamerica Asset Management, Inc. ("TAM") are entirely derivative of Plaintiffs' prohibited transaction claims against Transamerica Life Insurance Company ("TLIC").  *See* TIM/TAM Mem.[1] at 3-4.  Accordingly, Plaintiffs' prohibited transaction claims against TIM and TAM fail for the same reasons that they fail against TLIC, which has filed its own motion to dismiss.  *See* Mem. in Supp. of Defendant Transamerica Life Insurance Company's Mot. to Dismiss Class Action Compl. [Dkt. # 35-1].

Further, even if Plaintiffs' claims against TLIC were to survive dismissal, their claims against TIM and TAM for non-fiduciary liability would still fail because, as Plaintiffs' Opposition confirms, Plaintiffs cannot establish a right to "appropriate equitable relief," the only relief permitted against non-fiduciaries under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The only equitable remedy Plaintiffs even identify is equitable restitution, which the Supreme Court has

---

[1] Mem. in Supp. of Defs' Transamerica Investment Management, LLC and Transamerica Asset Management, Inc.'s Mot. to Dismiss Class Action Complaint [Dkt. #34-1].

1325004_1

expressly held requires both the specific identification and traceability of recoverable assets in a defendant's possession.  Plaintiffs make no attempt to address the former requirement, and their efforts to argue traceability conflict with both established law and their own allegations.

Accordingly, Plaintiffs' claims against TIM and TAM should be dismissed in their entirety.

## ARGUMENT

Because Plaintiffs do not contest that their claims against TIM and TAM are wholly dependent on their prohibited transaction claims against TLIC, TIM and TAM will confine their Reply to the unavailability of a claim under ERISA § 502(a)(3).

As addressed in TIM and TAM's initial brief, ERISA § 502(a)(3) only permits suits for "appropriate equitable relief."  *See* TIM/TAM Mem. at 4-8.  Plaintiffs, in contrast, seek monetary damages, which the Supreme Court has described as the "classic form of **legal** relief."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citations omitted); *see also Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 F. App'x 169, 171 (3rd Cir. 2009) ("[D]emands for monetary compensation that are not addressed to a particular fund cannot be brought pursuant to [ERISA § 502(a)(3)].  Such demands constitute legal, rather than equitable, remedies.").

Although there are some forms of equitable remedies that provide monetary relief under limited circumstances, Plaintiffs have not identified (and cannot identify) any such remedies that apply here.  Plaintiffs are not, for example, entitled to equitable restitution because, as the Supreme Court made clear in *Great-West*, that remedy is only available where plaintiffs seek to recover monies that are both (1) specifically identifiable; and (2) traceable to the plaintiffs' plan.  534 U.S. at 213 (equitable restitution available only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the [non-fiduciary's] possession").[2]  The monies Plaintiffs seek meet neither requirement.  See TIM/TAM Mem. at 5-8.

In response, Plaintiffs conspicuously ignore one of *Great-West*'s two requirements, making no argument whatsoever that they are seeking "particular funds or property" in TIM's or TAM's possession.[3]  Instead, Plaintiffs confine their response solely to *Great-West*'s separate requirement that the monies sought

---

[2] *See also*; *Calhoon v. TWA,* 400 F.3d 593, 597 (8th Cir. 2005) (monetary relief is equitable only where the money sought is "specifically identifiable" and can "clearly be traced to particular funds or property in the defendant's possession")

[3] *See In re Unisys Corp. Retiree Med. Benefits*, MDL Docket No. 969, 2007 WL 2071876, at *14 (E.D. Pa. July 16, 2007) ("[S]ince they cannot identify the particular property that belongs to them, [plaintiffs] are seeking the same relief as every claimant who seeks monetary damages: money that they believe belongs to them.") (emphasis in original) (quoting *Great-West*, 534 U.S. at 213); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005)  (affirming dismissal and explaining that insurance premiums paid to an HMO were not subject to equitable restitution because they were placed into the insurer's general accounts, not segregated).

be traceable to a plan's assets.  As to that requirement, Plaintiffs contend that it does not apply in cases involving prohibited transactions.

But there is no logical or legal support for Plaintiffs' position.  While *Great-West* itself did not involve alleged prohibited transactions, nothing in the Supreme Court's discussion suggests that the existence of a prohibited transaction would have at all mattered.  The analysis in *Great-West* did not turn in any way on the nature of the alleged ERISA violation but instead focused on the ERISA § 502(a)(3)'s express limitation to "appropriate equitable relief" and the traditional requirements for equitable restitution.  534 U.S. at 209-15.  Plaintiffs provide no substantive reason that that limitation and those requirements would apply any differently in a case that involves prohibited transactions than in one that does not.

Nor does Plaintiffs' citation to *Harris Trust & Savings Bank v. Salomon Smith Barney*, 530 U.S. 238, 250 (2000), help their cause.  Plaintiffs contend that the *Harris Trust* Court "held that under ERISA § 502(a)(3) plaintiffs may recover from non-fiduciaries for PTs, and never alluded to a tracing requirement."  Pls.' Op. at 33.  But, while *Harris Trust* (which predated *Great-West*) does not specifically use the term "tracing," it expresses the same principles that underlie the analysis in *Great-West*.  In holding that plaintiffs could maintain a claim against a non-fiduciary under § 502(a)(3), the *Harris Trust* Court explained that there are significant restrictions on a non-fiduciary's potential liability.  Noting the

- 4 -

statutory requirement that § 502(a)(3) relief be "appropriate equitable relief", the Court invoked trust law principles which set:

> limits on restitution actions against defendants other than the principal 'wrongdoer.' Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust.

530 U.S. at 251. As the *Harris Trust* Court made clear, those same restrictions apply to an ERISA § 502(a)(3) claim for non-fiduciary liability. *Id.* And it is those same traditional restrictions that drove the Court's analysis in *Great-West*. Indeed, the Supreme Court in *Great-West* reconciled *Harris Trust* not by stating that *Harris Trust* involved prohibited transactions but by explaining that "the nature of the relief we described in *Harris Trust*—a claim to specific property (or its proceeds) held by the defendant -- accords with the restitution we describe as equitable today." 534 U.S. at 215. *Harris Trust* thus goes **against** Plaintiffs' proposed distinction.

Plaintiffs likewise find no support in *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006)—the other Supreme Court decision on which they rely for their argument. Plaintiffs offer a partial quote from *Sereboff* to suggest that tracing only applies to certain causes of action. Pls.' Op. at 32-33. Plaintiffs' selective quotation, however, grossly distorts the *Sereboff* Court's meaning. Read in full, the quoted sentence did not draw distinctions among different theories of

liability but instead made the point that the requirements for an equitable lien by restitution do not necessarily apply to other types of equitable liens. 547 U.S. at 365 ("The Sereboffs appear to assume that *Knudson* endorsed application of all the restitutionary conditions--including restitutionary tracing rules--to every action for an equitable lien under § 502(a)(3)."). That unremarkable point does nothing to help Plaintiffs because Plaintiffs have failed to identify *any* type of equitable lien or other equitable remedy that would give them the monetary relief they seek and whose elements they have adequately pled.[4]

Understandably unwilling to rest on their argument that tracing is unnecessary, Plaintiffs also assert in conclusory fashion that they have "adequately traced the fees to TIM/TAM's possession." Pls.' Op. at 33. But the allegations they cite do not address traceability at all. Of the four cited paragraphs, the first two merely identify TIM and TAM as investment advisor or subadvisor of certain investment options; the third states that they are affiliates of TLIC; and the last

---

[4] Plaintiffs plainly cannot establish the necessary elements for the equitable lien recognized in *Sereboff*, and they do not contend that they can. *Sereboff* involved a claim by a plan administrator seeking reimbursement of medical benefits provided to plan beneficiaries based on the beneficiaries' recovery in a lawsuit against third parties. 547 U.S. at 360. The Supreme Court reasoned that because the plan document specifically provided a right to reimbursement from a particular fund (defined in the plan document as "[a]ll recoveries from a third party (whether by lawsuit, settlement or otherwise)") and such fund was in the beneficiaries' hands, the plan administrator had proven the necessary conditions for an equitable lien "by agreement." *Id.* at 363-64. In contrast to those cases, Plaintiffs cite no language in a plan document or elsewhere giving client plans a right to the compensation received by TIM or TAM.

alleges that they received fees "from Plaintiffs['] investments into these investment options."  Compl. ¶¶ 338-41.  None of the paragraphs asserts any facts to show that any fees TIM or TAM received are traceable to particular investors, much less particular plans.

Plaintiffs' other allegations refute that proposition.  Plaintiffs themselves assert that the plans invested their assets in mutual funds and other "pooled investment vehicles," where their respective Plans' assets are commingled with the assets of other investors.  *See, e.g.,* Compl. ¶ 133 ("Each of the separate accounts receives investments from many different 401(k) plans operated by TLIC and therefore TLIC is pooling assets together from the multiple different 401(k) plans operated by TLIC."); *id.* ¶¶ 119, 299-300; *see also* TIM/TAM Mem. at 5-7.  And, in the case of mutual funds, the monies invested ceased to be the Plans' assets at all but instead became the assets of the mutual funds themselves.  *See* ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1) (providing that when an ERISA plan invests in a security issued by a mutual fund, or "investment company," "the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company."); *see also* TIM/TAM Mem. at 5-6.  Thus, any fees that TIM and TAM may have received "from Plaintiffs['] investments into these investment options" (Compl. ¶ 341), are inherently untraceable according to Plaintiffs' own allegations.

Plaintiffs' sole response to this argument is narrowly addressed to TIM and TAM's point regarding the significance of ERISA § 401(b).  Plaintiffs contend that this Court "rejected the same argument" in *Goldenberg v. Indel, Inc.,* 741 F. Supp. 2d 618 (D.N.J. 2010).  But, if anything, the Court's discussion—which does not even mention ERISA § 401(b)—***supports*** TIM and TAM's position.  The plaintiffs in *Goldenberg* alleged that certain defendants engaged in prohibited transactions by causing the plan to invest in a money market fund that paid fees to those defendants' affiliates.  *Id.* at 632.  The defendants argued in response that the fund's payment of fees to the defendants' affiliate "does not constitute the spending of Plan assets . . . ."  *Id.*  The Court ***agreed*** with defendants' assertion.  *Id.* at 632 ("Both premises are true . . . .").

In doing so, this Court aligned with the Seventh Circuit (the only circuit court to address the issue) and the Department of Labor (the government agency primarily responsible for enforcing ERISA), both of which have concluded that so-called "revenue sharing payments" paid for mutual funds are not plan assets.  *See Hecker v. Deere & Company,* 556 F.3d 575, 584 (7th Cir. 2009) ("The fees were drawn from the assets of the mutual funds in question, which, as the statute provides, are not assets of the Plans . . . Once the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans."); Brief Of The Secretary of

- 8 -

Labor, Elaine L. Chao, As Amicus Curiae In Support Of Plaintiffs-Appellants at 22, *Hecker v. Deere & Co.*, No. 07-3605 (7th Cir. April 2, 2008) (attached as Ex. 1), ("The Secretary does not believe that [the 'revenue sharing' allegation], even if proven, would establish the fiduciary status of Fidelity Research, because the sums paid do not constitute plan assets.").[5]

The court in *Goldenberg* rejected the defendants' dismissal argument not because their point was wrong but because it was not relevant to the issue before the Court at that time: whether "buying shares of the Fund . . . was itself a prohibited transaction." *Id.* at 632-33. The point is, however, relevant to the issue here. Because the fees that TIM and TAM received were not themselves plan assets, Plaintiffs cannot establish traceability by merely asserting that TIM and TAM received those fees—which is, of course, the most that Plaintiffs allege. Compl. ¶¶ 338-41.[6]

---

[5] Plaintiffs attempt to distinguish *Hecker* on grounds that it did not involve prohibited transaction claims but, again, offer no explanation as to why that distinction matters.

[6] In addition to relying on *Goldenberg*, Plaintiffs also cite to the district court decisions in *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156 (D. Conn. 2006) and *Phones Plus, Inc. v. The Hartford Fin. Servs. Group, Inc.*, Civ. NO. 3:06CV01835, 2007 WL 3124733 (Oct. 23, 2007). Neither case advances Plaintiffs' position. The *Haddock* court held that payments received by a defendant from a fund may constitute plan assets but only if the defendant receives such assets "(1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries." *Id.* at 170. Not only is *Haddock* at odds with *Goldenberg*, it actually hurts Plaintiffs' position in this case because Plaintiffs do not allege that TIM and TAM

- 9 -

In sum, Plaintiffs: (1) have not plausibly alleged the elements of traceability and specifically identifiable assets necessary for equitable restitution; and (2) have not identified any other equitable remedy that could provide the monetary relief they seek. Accordingly, Counts IV and VII against them should be dismissed.

## CONCLUSION

For the foregoing reasons, TIM and TAM respectfully request that the Class Action Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

---

had or used any fiduciary status or authority to obtain their fees. The court in *Phones Plus* in turn, held that the plaintiffs had alleged "a detailed set of facts" to support their position that the "revenue sharing payments" at issue were plan assets. *Id.* at *5. While the *Phones Plus* court did not identify what those facts were, the decision cannot help Plaintiffs because Plaintiffs identify *no* alleged facts to support a similar legal conclusion here.

- 10 -

| | |
|---|---|
| Dated:  September 19, 2011 | Respectfully submitted, |
| | *s/ Thomas R. Curtin*<br>Thomas R. Curtin<br>George C. Jones<br>GRAHAM CURTIN<br>A Professional Association<br>4 Headquarters Plaza<br>P.O. Box 1991<br>Morristown, New Jersey 07962-1991<br>Telephone:  (973) 292-1700<br>Facsimile:   (973) 292-1767<br><br>Robert N. Eccles (*Pro Hac Vice*)<br>Gary S. Tell (*Pro Hac Vice*)<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, D.C.  20006-4001<br>Telephone:  (202) 383-5300<br>Facsimile:   (202) 383-5414<br><br>*Attorneys for Defendants Transamerica Life Insurance Company, Transamerica Investment Management, LLC, and Transamerica Asset Management, Inc.* |